No. 23-1163

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

RACHEL CREAGER IRELAND, RAEVENE ADAMS, AND DARCEAL TOBEY,

on behalf of themselves and all other similarly situated individuals,

Plaintiffs-Appellants

v.

UNITED STATES OF AMERICA,

Defendant-Appellee

Appeal from the United States District Court for the Western District of Texas in 1:21-CV-1049-LY

Judge Lee Yeakel

**APPELLANTS' SECOND CORRECTED OPENING BRIEF AND APPENDIX**

Joshua A. Segal
Leon Dayan
Bredhoff & Kaiser PLLC
805 15th Street NW, Suite 1000
Washington, DC 20005
(202) 842-2600
jsegal@bredhoff.com
ldayan@bredhoff.com

Christopher J. Williams
National Legal Advocacy Network
1 N LaSalle Street, Suite 1275
Chicago, IL 60602
(312) 795-9121
cwilliams@n-lan.org

Daniel M. Rosenthal
Ryan E. Griffin
Charlotte H. Schwartz
James & Hoffman, P.C.
1629 K Street NW, Suite 1050
Washington, DC 20006
Tel: (202) 496-0500
Fax: (202) 496-0555
dmrosenthal@jamhoff.com
regriffin@jamhoff.com
chschwartz@jamhoff.com

*Attorneys for Plaintiffs-Appellants*

March 10, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-1163

**Short Case Caption** Creager Ireland v. United States

**Filing Party/Entity** Plaintiffs/Appellants

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/10/2023

Signature: /s/ Daniel M. Rosenthal

Name: Daniel M. Rosenthal

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Rachel Creager Ireland | | |
| Raevene Adams | | |
| Darceal Tobey | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Anna Bocchini<br>Equal Justice Center | | |
| Michael P. Persoon<br>Despres, Schwartz, & Geoghegan, Ltd. | | |
| Sheila Maddali<br>National Legal Advocacy Network | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Brandon Beaty v. United States,<br>No. 21-2195 (Fed. Cl.) | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

STATEMENT OF RELATED CASES ........ 1

STATEMENT REGARDING ORAL ARGUMENT ........ 1

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUE ........ 2

INTRODUCTION ........ 2

STATEMENT OF THE CASE ........ 5

I. The Pandemic Unemployment Assistance (PUA) program ........ 5

II. Premature termination of PUA benefits for Texas residents ........ 10

III. Procedural history ........ 10

SUMMARY OF THE ARGUMENT ........ 11

ARGUMENT ........ 15

I. Standard of review ........ 15

II. The PUA statute required the Secretary to provide PUA to all covered individuals through September 6, 2021 ........ 16

A. The plain language of Section 9021 creates a mandatory payment obligation ........ 16

B. Congress deliberately differentiated PUA from related programs implemented only at the request of a state ........ 20

III. Nothing in Section 9021 limits or qualifies the mandate of Section 9021(b) ........ 24

A. Subsection (f) does not limit the payment mandate ........ 24

1. The plain text of the statute does not support the district court's interpretation ........ 25

2. Texas's withdrawal from the PUA program did not prevent the Secretary from fulfilling his obligation to Plaintiffs......................29

B. The payment mandate is not limited by the statute's partial incorporation of regulations implementing the DUA program .........35

IV. The purpose and historical context of the PUA program confirm that the statute requires the Secretary to provide PUA to all covered individuals ..........................................................................................38

CONCLUSION.........................................................................................40

# TABLE OF AUTHORITIES

## Cases

*Allied Tube & Conduit Corp. v. United States*, 898 F.2d 780 (Fed. Cir. 1990) ......19

*Andrus v. Glover Constr. Co.*, 446 U.S. 608(1980) ......19

*Babb v. Wilkie*, 140 S. Ct. 1168 (2020) ......21, 23, 24

*Barnhart v. Peabody Coal Co.*, 537 U.S. 149 (2003) ......26, 27, 28

*Brock v. Pierce County*, 476 U.S. 253 (1986) ......28

*Bullock v. United States*, 10 F.4th 1317 (Fed. Cir. 2021) ......28

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) ......15

*Gilda Indus., Inc. v. United States*, 622 F.3d 1358 (Fed. Cir. 2010) ......17, 28, 35

*Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016) ......15

*Hibbs v. Winn*, 542 U.S. 88 (2004) ......30

*IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339 (5th Cir. 2020) ......16

*King v. Burwell*, 576 U.S. 473 (2015) ...... 13, 26, 27, 29, 26, 40

*Kingdomware Techs. v. United States*, 579 U.S. 162 (2016) ......16

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ......16–17

*Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308 (2020) ......4, 15, 17, 26

*Russello v. United States*, 464 U.S. 16 (1983) ......12, 20

*Salinas v. U.S. R.R. Ret. Bd.*, 141 S. Ct. 691 (2021) ......12, 20

*SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348 (2018) ......11, 17, 18

*Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005) ......28

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019) ......16

*Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U. S. 457 (2001) .................... 13, 26, 27

*Wooden v. United States*, 142 S. Ct. 1063 (2022) .................................................. 38

**Statutes**

15 U.S.C. § 636(a)(36) ................................................................................ 5

15 U.S.C. § 9021
15 U.S.C. § 9021(a)(1)(3) ................................................................ 2–3
15 U.S.C. § 9021(a)(3) ................................................... 3, 11, 18, 22
15 U.S.C. § 9021(a)(3)(A)(i) ............................................................. 11
15 U.S.C. § 9021(a)(3)(A)(ii) ......................................................... 7, 33
15 U.S.C. § 9021(a)(3)(A)(ii)(I) ......................................................... 33
15 U.S.C. § 9021(a)(3)(A)(ii)(I)(dd) ..................................................... 37
15 U.S.C. § 9021(a)(3)(B) ................................................................. 19
15 U.S.C. § 9021(b) ...................................................................... *passim*
15 U.S.C. § 9021(c) ...................................................................... *passim*
15 U.S.C. § 9021(c)(1) .................................................... 8, 11, 16, 19
15 U.S.C. § 9021(c)(2) ..................................................................... 34
15 U.S.C. § 9021(c)(5)(A) ................................................................. 30
15 U.S.C. § 9021(c)(5)(B)(i) .............................................................. 30
15 U.S.C. § 9021(c)(5)(C)(iii) ............................................................. 33
15 U.S.C. § 9021(d)(1)(A)(i) .............................................................. 33
15 U.S.C. § 9021(f)(1) ............................................... 8, 13, 24, 29, 30
15 U.S.C. § 9021(f)(2) .................................................................... 9, 32
15 U.S.C. § 9021(h) ........................................... 9, 14, 23, 24, 35, 36

15 U.S.C. § 9023 ........................................................................................ 6
15 U.S.C. § 9023(a) ..................................................... 6, 12, 20, 21
15 U.S.C. § 9023(b) ..................................................................... 12, 21
15 U.S.C. § 9023(b)(1) ..................................................................... 22
15 U.S.C. § 9023(d)(1)(A) .................................................................. 21

15 U.S.C. § 9024 ........................................................................................ 6
15 U.S.C. § 9024(a) ..................................................... 6, 12, 20, 21
15 U.S.C. § 9024(c)(1) ..................................................................... 22
15 U.S.C. § 9024(c)(1)(A) .................................................................. 22

15 U.S.C. § 9025 ........................................................................................ 6
15 U.S.C. § 9025(a) ........................................................................... 6

15 U.S.C. § 9025(a)(1) ....................12, 20, 21
15 U.S.C. § 9025(a)(2) ....................12, 22
15 U.S.C. § 9025(c)(1) ....................22

15 U.S.C. § 9027 ....................6
15 U.S.C. § 9027(a) ....................6, 20, 21
15 U.S.C. § 9027(b)(1) ....................22
15 U.S.C. § 9027(c)(1) ....................22

15 U.S.C. § 9034
15 U.S.C. § 9034(a) ....................9, 13, 34
15 U.S.C. § 9034(b) ....................9, 13
15 U.S.C. § 9034(b)(1) ....................10, 34
15 U.S.C. § 9034(b)(2) ....................10, 34

15 U.S.C. § 9071 ....................5

26 U.S.C. § 6428 ....................5

26 U.S.C. § 3304 ....................23

26 U.S.C. § 3304(a) ....................23

28 U.S.C. § 1295(a)(2) ....................2

28 U.S.C. § 1346(a)(2) ....................1, 15

28 U.S.C. § 1491(a)(1) ....................15

35 U.S.C. § 318(a) ....................17

42 U.S.C. § 1103 ....................23

42 U.S.C. § 5122(2) ....................37

42 U.S.C. § 5170(a) ....................22, 37

42 U.S.C. § 5177(a) ....................22, 37

Pub. L. No. 116-136 (2020) ....................5
Pub. L. No. 116-136 § 2102(c)(1)(A)(ii) ....................9

Pub. L. No. 116-260 (2020)
Pub. L. No. 116-260, Div. N § 201 ....................9, 39

Pub. L. No. 116-260, Div. N § 203 ........................................................9, 39
Pub. L. No. 116-260, Div. N § 204 ........................................................9, 39
Pub. L. No. 116-260, Div. N § 206 ........................................................9, 39

Pub. L. No. 117-2 (2021)
Pub. L. No. 117-2 § 9011 ........................................................9, 13, 34, 39
Pub. L. No. 117-2 § 9013 ........................................................9, 13, 34, 39
Pub. L. No. 117-2 § 9014 ........................................................9, 12, 34, 39
Pub. L. No. 117-2 § 9016 ........................................................9, 12, 34, 39
Pub. L. No. 117-2 § 9032 ........................................................9, 10, 13, 34

Tex. Lab. Code § 201
Tex. Lab. Code § 201.041 ........................................................7
Tex. Lab. Code § 201.066 ........................................................7
Tex. Lab. Code § 201.070 ........................................................7
Tex. Lab. Code § 201.073 ........................................................7
Tex. Lab. Code § 201.075 ........................................................7
Tex. Lab. Code § 201.078 ........................................................7

Tex. Lab. Code § 207.21........................................................7

**Regulations**

20 C.F.R. § 603.6........................................................34

20 C.F.R. § 603.6(b)(1)(v)........................................................34

20 C.F.R. § 625.4(b) ........................................................37

20 C.F.R. § 625.5(a)........................................................37

**Legislative Materials**

166 Cong. Rec. S2021 (daily ed. Mar. 25, 2022) (statement of Sen. Mitch McConnell)........................................................39

166 Cong. Rec. S2025 (statement of Sen. Maria Cantwell)........................................................39

166 Cong. Rec. S2025–26 (daily ed. Mar. 25, 2020) (statement of Sen. Chuck Schumer)........................................................5, 39

166 Cong. Rec. S2056 (daily ed. Mar. 25, 2020) (statement of Sen. Susan Collins) ........................................................5

H.R. Rept. No. 117-7, 52–53 (2021).....................................................................40

**Executive Materials**

Proclamation 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020) .................................5, 38

**Other Authorities**

Ben Casselman, *Cutoff of Jobless Benefits Is Found to Get Few Back to Work*, N.Y. Times (Aug. 20, 2021)...........................................................................40

Declared Disasters, FEMA, https://www.fema.gov/disaster/declarations (last visited Jan. 23, 2023).............................................................................38

Michigan State Agency Status Report #9, September 13, 2005, https://www.michigan.gov/documents/SituationReport09MiKatrina_136655_7.pdf ...........................................................................................31

*Texas Helping Process Louisiana Unemployment Benefits*, Houston Business Journal, Sept. 6, 2005, https://www.bizjournals.com/houston/stories/2005/09/05/daily2.html ........31

Timothy Roberts, *California Offers Help to Louisiana Jobless*, Silicon Valley Business Journal, Sept. 8, 2000, https://www.bizjournals.com/sanjose/stories/2005/09/05/daily25.html .......31

Unemployment Insurance Program Letter 16-20 ..................................................30

## STATEMENT OF RELATED CASES

This appeal was previously docketed in the Fifth Circuit Court of Appeals in error. The title and number in the Fifth Circuit was Ireland v. United States, No. 22-50980. The appeal was dismissed on November 14, 2022 by the clerk of the court on the basis that it was erroneously docketed in the Fifth Circuit, the appeal having been addressed to the Federal Circuit. The dismissal order does not appear in the Federal Reporter.

Beaty v. United States, No. 21-2195, currently pending in the Court of Federal Claims, may be affected by this court's decision in the pending appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants ask the Court to hold oral argument because this case raises an important issue of first impression regarding the Pandemic Unemployment Assistance provisions of the Coronavirus Aid, Relief and Economic Security Act, 15 U.S.C. § 9021 et seq.

## JURISDICTIONAL STATEMENT

Plaintiffs brought this suit under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). The district court had jurisdiction under 28 U.S.C. § 1346(a)(2), which grants United States District Courts jurisdiction over Little Tucker Act claims in civil actions not exceeding $10,000. This Court has exclusive jurisdiction over appeals where the district court's jurisdiction was based in whole or in part on

the Little Tucker Act, subject to certain exceptions not relevant here, and therefore has exclusive jurisdiction over this appeal. 28 U.S.C. § 1295(a)(2). The district court issued a Rule 12(b)(6) dismissal on September 6, 2022. Appx1–3. Plaintiffs-Appellants filed a timely notice of appeal on November 4, 2022. Appx43.

## STATEMENT OF THE ISSUE

Section 9021(b) of Title 15 provides that the "Secretary [of Labor] shall provide to any covered individual unemployment benefit assistance . . . ." Plaintiffs allege that they were "covered individual[s]" under this provision and that the Secretary failed to "provide . . . unemployment benefit assistance" to them. Taking these allegations as true for the purposes of Rule 12(b)(6), have Plaintiffs stated a claim for damages under the Little Tucker Act?

## INTRODUCTION

In the early days of the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief and Economic Security (CARES) Act. To address the economic crisis caused by the pandemic, the Act established a series of financial assistance programs for unemployed workers.

One of these programs, Pandemic Unemployment Assistance (PUA), created a new federal benefit for individuals unable to work due to COVID-19 yet ineligible for unemployment compensation from their states. *See* 15 U.S.C.

§ 9021(a)(1)(3). The PUA program thus filled the gaps in state programs, ensuring that all affected workers would have access to unemployment compensation.

The statute established that the Secretary of Labor "shall provide . . . unemployment benefit assistance" to those workers. 15 U.S.C. § 9021(b). Congress twice extended this mandate, which ultimately expired on September 6, 2021.

The core question in this appeal is whether the statute mandated payments to all workers who met the statutory criteria—or whether, as the district court held, the statute only required payments to workers whose states decided to participate in administering the program. The district court's interpretation should be rejected. The statute requires that "the Secretary *shall* provide" PUA to "*any* covered individual." 15 U.S.C. § 9021(b) (emphasis added). That mandatory and unconditional language is not subject to a state veto. Likewise, the definition of "covered individual" does not depend on state participation in the administration of assistance. *See* 15 U.S.C. § 9021(a)(3). And while Congress expressly made other unemployment compensation program in the CARES Act subject to a state's "desire[]" to participate, *see, e.g.*, 15 U.S.C. § 9023(a), it included no such language in the PUA provision.

This Court should therefore reverse the dismissal of Plaintiffs' complaint. Plaintiffs invoke the Little Tucker Act, which creates a cause of action and waives sovereign immunity when a statute "can fairly be interpreted as mandating

compensation by the Federal Government." *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1328 (2020). The PUA statute mandates such compensation. Plaintiffs are Texas residents who allege that they met the statutory definition of "covered individuals" but were denied PUA payments starting in June 2021, when Texas announced that it would no longer participate in administering the program.

The district court dismissed the case because it construed the PUA statute to create a benefit contingent on state participation. But that interpretation contradicts the plain text of the statute and ignores Congress's deliberate choice to differentiate PUA from the other unemployment compensation programs in the CARES Act. Moreover, it negates the core promise of the PUA program: that workers would have access to unemployment compensation even when their states turned them down. Finally, the district court wrongly assumed that an agreement with Texas was the only way to deliver benefits to the residents of the state. The statutory scheme creates other options, such as an agreement with another state to process payments for Texans.

In sum, this Court should reverse the district court and hold that the Government's violation of 15 U.S.C. § 9021(b)'s mandate that the "Secretary shall provide . . . unemployment benefit assistance" gives rise to a Tucker Act claim.

## STATEMENT OF THE CASE

### I. The Pandemic Unemployment Assistance (PUA) program.

On March 13, 2020, the President declared a "national emergency concerning the coronavirus disease (COVID-19)." *See* Proclamation 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020). Congress quickly responded to the twin medical and economic crises the pandemic caused. Just two weeks after the President's emergency declaration, it passed the Coronavirus Aid, Relief and Economic Security (CARES) Act. *See* Pub. L. No. 116-136. Recognizing the need to assist individuals and businesses suffering from the devastating economic effects of the pandemic, Congress created numerous financial relief programs in the Act. *See, e.g.*, 15 U.S.C. § 636(a)(36) (Paycheck Protection program); 26 U.S.C. § 6428 (tax credits); 15 U.S.C. § 9071 (Air Carrier Worker Support).

Congress focused in particular on supporting the millions of workers being laid off as entire sectors of the economy shut down. *See* 166 Cong. Rec. S2056 (daily ed. Mar. 25, 2020) (statement of Sen. Susan Collins) ("Without this package, we face an unemployment tsunami that could reach as high as 20 percent, according to the Secretary of the Treasury."); *id.* at S2025–26 (daily ed. Mar. 25, 2020) (statement of Sen. Chuck Schumer) ("Millions of workers, through no fault of their own, are losing their paychecks, with no way to cover their daily expenses and monthly bills.").

To address this sudden surge in unemployment, Congress crafted several unemployment compensation programs. Most of these programs provided additional benefits to workers already receiving unemployment benefits under existing state programs. For instance, Federal Pandemic Unemployment Compensation (FPUC) permitted states to elect to increase the amount of unemployment payments to recipients under existing state systems. 15 U.S.C. § 9023. The Pandemic Emergency Unemployment Compensation (PEUC) program permitted states to elect to extend the number of weeks workers could be eligible to receive unemployment compensation under state law. 15 U.S.C. § 9025. Another program provided funding to permit states to increase benefits for the first week of unemployment, previously deemed a "waiting period" in some states. 15 U.S.C. § 9024. Yet another offered states the opportunity to grant benefits, under existing unemployment compensation programs, to workers suffering a reduction in hours. 15 U.S.C. § 9027.

Each of these programs explicitly let states decide whether their residents would receive benefits, stating that "[a]ny state which desires to do so may enter into, and participate in, an agreement under this section with the Secretary." *See* 15 U.S.C. § 9023(a); 15 U.S.C. § 9025(a) (same); 15 U.S.C. § 9024(a) (same); § 9027(a) (same). Each of them also expressly permitted the states to terminate their participation in the program on 30-days' notice. *Id.* Conversely, none of these

other programs mandated that the Federal Government pay benefits to individual recipients.

Pandemic Unemployment Assistance (PUA) is different. Rather than augmenting benefits for workers already eligible for unemployment compensation under existing state programs, PUA provided a new benefit to workers who were excluded from their states' unemployment programs.[1] *See* 15 U.S.C. § 9021(a)(3)(A)(i)-(ii). To ensure support for these uniquely vulnerable workers, Congress wrote the PUA provisions differently from the other unemployment programs in the Act.

Congress began by defining "covered individual" as someone who (1) is ineligible for unemployment compensation under preexisting programs, and (2) certifies that he or she is unemployed or partially unemployed due to the COVID-19 pandemic, such as a person sick with COVID-19. *See id.*

Subsection (b) then provides a mandate to the Secretary of Labor: "the Secretary *shall provide to any covered individual* unemployment benefit assistance while such individual is unemployed, partially unemployed, or unable to work for

[1] For example, in Texas, unemployment compensation is not available to workers until they have earned a particular amount of wages over at least two recent calendar quarters. *See* Tex. Lab. Code § 207.21. And the Texas program excludes various other workers, such as independent contractors, employees of churches and religious organizations, and some insurance agents, salespeople, delivery workers, crew of fishing vessels, and nonresident noncitizen agricultural workers. Tex. Lab. Code §§ 201.041, 201.066, 201.070, 201.073, 201.075, 201.078.

the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation." 15 U.S.C. § 9021(b) (emphasis added). No other unemployment provision in the CARES Act contains such a mandate.

Subsection (b) explicitly states that it is "[s]ubject" to only one provision, codified at subsection (c). *Id.* That subsection in turns provides another mandate, this one concerning the duration of PUA benefits: "the assistance authorized under subsection (b) *shall be available* to a covered individual" for all weeks of eligibility ending on or before September 6, 2021. 15 U.S.C. § 9021(c)(1) (emphasis added).

Nothing in the eligibility criteria of subsection (a), the payment mandate of subsection (b), or the temporal mandate of subsection (c) suggests that a worker's entitlement to PUA is contingent on their state's agreement to participate in the program.

Subsection (f)(1)—on which the district court relied in dismissing Plaintiffs' claim—describes a mechanism for delivering PUA benefits. It states that "[t]he Secretary shall provide the assistance authorized under subsection (b) through agreements with States which, in the judgment of the Secretary, have an adequate system for administering such assistance through existing State agencies, including procedures for identity verification or validation and for timely payment, to the

extent reasonable and practicable." 15 U.S.C. § 9021(f)(1). This subsection also requires the federal government to reimburse states for 100 percent of any amounts paid to recipients, as well as 100 percent of the administrative costs associated with the program. 15 U.S.C. § 9021(f)(2).

Finally, the statute provides that, "[e]xcept as otherwise provided in this section or to the extent there is a conflict," the PUA program will proceed under regulations issued at Title 20, Part 265 of the Code of Federal Regulations. 15 U.S.C. § 9021(h). Those regulations implement a separate, preexisting program called Disaster Unemployment Assistance (DUA), discussed further below.

PUA was originally scheduled to end in December 2020. *See* Pub. L. No. 116-136 § 2102(c)(1)(A)(ii). But as the pandemic persisted, Congress twice extended its duration, along with the CARES Act's other unemployment compensation programs. First, in December 2020, as part of the 2021 appropriations bill, the programs were extended to March 14, 2021. *See* Pub. L. No. 116-260, Div. N §§ 201, 203, 204, 206. Then, in March 2021, as part of the American Rescue Plan Act, Congress extended them for a final time to September 6, 2021. *See* Pub. L. No. 117-2, §§ 9011, 9013, 9014, 9016. At that time, Congress also made available $2 billion to, among other things, "promote equitable access, and ensure timely payment of benefits with respect to unemployment compensation programs," including the PUA program. *See id.* § 9032 (codified at

15 U.S.C. § 9034(a)–(b)). This provision specified that the funds may be used "(1) for Federal administrative costs" and "(2) for system-wide infrastructure investment and development related to such purposes," among other uses. *Id.* § 9032 (codified at 15 U.S.C. § 9034(b)(1)–(2)).

## II. Premature termination of PUA benefits for Texas residents.

Texas initially agreed to administer the PUA program. Appx21. But in May 2021, Texas's Governor announced that the state would cease administering the program on June 26, 2021. Appx23. After this announcement, the Federal Government took no action to ensure that PUA recipients in Texas would continue to receive assistance. Appx23–24.

Plaintiffs Rachel Creager Ireland, Raevene Adams, and Darceal Tobey are Texans who received PUA assistance prior to June 26, 2021. Appx12–15. After that date, they received no PUA assistance, even though they remained eligible. *Id.* at 12–15, 17.

## III. Procedural history.

In November 2021, Plaintiffs filed this lawsuit in the Western District of Texas, on behalf of themselves and a class of similarly situated PUA-eligible individuals, to recover damages from the United States for its failure to comply with the PUA statute's mandate that the Secretary "shall provide . . . assistance" to "any covered individual." Appx10–29.

In February 2022, the Federal Government filed a Rule 12(b)(6) motion to dismiss. A magistrate judge issued a report recommending dismissal. Appx30. The district court adopted the report over Plaintiffs' objections.[2] Appx1. This appeal followed.

## SUMMARY OF THE ARGUMENT

Under the plain text of the statute, the Secretary was obligated to provide PUA to all covered individuals until the end-date established by Congress. The PUA statute defines "covered individual" to include anyone in the United States unemployed due to COVID-19 and ineligible for state unemployment benefits. 15 U.S.C. § 9021(a)(3). That definition contains no reference to the individual's home state or that state's participation in the program. *See id.* The statute then mandates that "the Secretary *shall* provide to *any* covered individual unemployment benefit assistance." 15 U.S.C. § 9021(b) (emphases added). The statute further mandates that "the assistance authorized under subsection (b) *shall be available* to a covered individual" for all weeks of eligibility ending on or before September 6, 2021. *Id.* § 9021(c)(1) (emphasis added).

The word "shall" "generally imposes a nondiscretionary duty," and the word "any" "ordinarily refers to . . . *every* member of the class or group." *SAS Inst. Inc.*

[2] Because the district court adopted the report without modification, we refer to that report as the district court's order.

*v. Iancu*, 138 S. Ct. 1348, 1351 (2018). The statute thus establishes that the Secretary "*must*" provide PUA to "*every*" covered individual. *See id.*

The statute's plain meaning is confirmed by the marked differences between its text and that of the other unemployment programs created by the same title of the CARES Act. Unlike the other programs, Congress did not make PUA subject to each state's "desire[]" to participate or its decision to terminate that participation. *Compare* 15 U.S.C. § 9021 *with* 15 U.S.C. §§ 9023(a), (b), (d)(1)(A); 9024(a), (c)(1); 9025(a)(1)–(2), (c)(1). And, unique among the programs, Congress charged the Secretary with providing PUA to "individual[s]," rather than merely reimbursing states for the benefits they chose to provide to recipients. *Id.* Where "'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Salinas v. U.S. R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Despite the mandatory and unconditional language of subsection (b), the district court held that the Secretary's payment obligation is implicitly limited by another provision, subsection (f). That subsection stated that the Secretary was to administer PUA through "agreements with states which, in the judgment of the Secretary, have an adequate system for administering such assistance." 15 U.S.C.

§ 9021(f)(1). But the district court's conclusion cannot be squared with the text of the statute. Subsection (f) does not state that it limits the Secretary's payment obligation or narrow the class of "covered individuals." And subsection (b) expressly states that its mandate is "subject to" only subsection (c)—which requires payment until the Congressionally-determined end date of September 6, 2021—not subsection (f). *See* 15 U.S.C. § 9021(b), (c).

Furthermore, by elevating the ancillary, procedural provision of subsection (f) over the core definitions and substantive mandate of subsections (a)–(c), the district court violated the well-established principle that Congress does not "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *King v. Burwell*, 576 U.S. 473, 497 (2015) (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U. S. 457, 468 (2001)).

The district court appeared to assume that the Texas government was the only entity that could process payments to Texans. But the statutory text does not support that assumption. The district court ignored the possibility that the Secretary could have sought an agreement with another state to process the payments—an option the Department of Labor recognized in its own guidance regarding implementation of PUA. And Congress also authorized funds that could have been used for direct federal administration of the program. *See* Pub. L. No. 117-2, § 9032 (2021) (codified at 15 U.S.C. § 9034(a)–(b)).

Likewise, the district court erred by relying on the PUA statute's reference to regulations issued pursuant to the Disaster Unemployment Assistance (DUA) statute, which indicate that DUA benefits are contingent on state participation. *See* 15 U.S.C. § 9021(h). The district court's analysis was backwards. The PUA statute explicitly provides that the regulations do not apply where they "conflict" with the PUA statute, *see id.*, meaning that the Court must first determine the meaning of the statute and then decide whether each part of the DUA regulation is consistent with the statute. Here, the district court relied on portions of the DUA regulations that conflict with the PUA statute's mandate to provide benefits to "any covered individual," as well as its definition of covered individual. *See* 15 U.S.C. § 9021(a), (b).

Finally, the plain meaning of the PUA statute is confirmed by its purpose and context. In the face of a sudden and drastic unemployment crisis affecting the entire nation, the PUA program was Congress's solution to the shortcomings in the states' unemployment regimes. It was the only program aimed at workers who were not eligible for unemployment compensation from their states. It makes no sense to limit workers' entitlement to that assistance based on the absence of their state's consent.

## ARGUMENT

### I. Standard of review.

Plaintiffs brought this suit under the Little Tucker Act.[3] *See* 28 U.S.C. § 1346(a)(2). The Act creates a cause of action, and waives sovereign immunity over such an action, when a statute can "fairly be interpreted as mandating compensation by the Federal Government." *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1329 (2020). Here, Plaintiffs alleged that the Federal Government violated the mandate in 15 U.S.C. § 9021(b) that the Secretary "shall provide . . . assistance" to "any covered individual."

The district court granted the Government's motion to dismiss under Rule 12(b)(6). The Federal Circuit reviews a district court's dismissal under Rule 12(b)(6) according to the law of the regional circuit. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1346 (Fed. Cir. 2014).

The Fifth Circuit "review[s] de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016). Motions under that rule are "viewed

[3] We refer interchangeably to the Tucker Act and Little Tucker Act because they are identical in all ways relevant to this appeal. *See* 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2).

with disfavor and rarely granted." *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quotation marks omitted). To justify dismissal, the Government must show that Plaintiffs have failed to state a claim, even with all "ambiguities in the controlling substantive law . . . resolved in the plaintiff[s'] favor." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quotation marks omitted).

## II. The PUA statute required the Secretary to provide PUA to all covered individuals through September 6, 2021.

### A. The plain language of Section 9021 creates a mandatory payment obligation.

"In statutory construction, we begin with the language of the statute." *Kingdomware Techs. v. United States*, 579 U.S. 162, 171 (2016) (quotation marks omitted). Section 9021(a) defines "covered individual" to include anyone in the United States unemployed due to COVID-19 and ineligible for state unemployment benefits. Section 9021(b) states that "the Secretary *shall provide* to any covered individual unemployment benefit assistance." 15 U.S.C. § 9021(a), (b) (emphasis added). And Section 9021(c) provides that such assistance "*shall be available* to a covered individual" for all weeks of eligibility ending on or before September 6, 2021. *Id.* § 9021(c)(1) (emphasis added).

The word "shall" is "mandatory" and "normally creates an obligation impervious to . . . discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes &*

*Lerach*, 523 U.S. 26, 35 (1998); *accord Gilda Indus., Inc. v. United States*, 622 F.3d 1358, 1364 (Fed. Cir. 2010) ("[W]hen a statute directs that a certain consequence 'shall' follow, . . . the provision is mandatory and leaves no room for discretion."). A statutory command that the Government "shall" pay a sum "mean[s] what it sa[ys]: the Government 'shall pay' the sum that the statute prescribes." *Me. Cmty. Health*, 140 S. Ct. at 1320. And a payment obligation remains mandatory even where Congress does not provide "details about how" that obligation "must be satisfied." *Id.*

Significantly, Section 9021(b) pairs the mandatory term "shall" with the expansive phrase "*any* covered individual." 15 U.S.C. § 9021(b) (emphasis added). And as the Supreme Court held in interpreting a similarly worded statute in *SAS Inst. Inc. v. Iancu,* the combination of "shall" and "any" creates a "directive [that] is both mandatory and comprehensive." 138 S. Ct. at 1354.

In that case, the Court addressed a statute providing for inter partes review of patent claims under certain circumstances, which mandated that the Patent Trial and Review Board "'*shall* issue a final written decision with respect to the patentability of *any* patent claim challenged by the petitioner.'" *Id.* at 1354 (quoting 35 U.S.C. § 318(a)) (emphases added.) Despite this mandatory language, the Government argued, much like it did below in this case, that the statute's substantive command was implicitly limited by another provision, which in the

Government's view allowed the Board to issue a decision as to only some of the claims raised in an inter partes petition. *Id.* at 1356.

The Supreme Court rejected that argument, concluding that the government's interpretation contradicted the "plain text" of the statute. *Id.* at 1354. The Court explained that by using the word "shall," "which generally imposes a nondiscretionary duty," and the word "any," which "ordinarily refers to . . . *every* member of the class or group," the statute "means the Board *must* address *every* claim the petitioner has challenged." *Id.* at 1351.

Section 9021(b) is materially identical. It states that the Secretary "shall" provide PUA benefits to "any covered individual," without qualification. 15 U.S.C. § 9021(b). That language "means the [Secretary] *must*" provide benefits to "*every*" covered individual. *SAS Inst. Inc.*, 138 S. Ct. at 1351.

The statute also defines "covered individual" in subsection (a), thus expressly establishing the scope of subsection (b)'s payment mandate. The term "covered individual" means any person in the United States unable to work due to COVID-19 and ineligible for unemployment compensation under preexisting state and federal compensation programs. 15 U.S.C. § 9021(a)(3).

Importantly, while the statutory definition of "covered individual" contains certain express exclusions, it does not exclude individuals based on state participation in the administration of the program. For instance, subsection

(a)(3)(B) provides that "covered individual" "does not include" a person who can telework or is receiving paid leave benefits. *See id.* § 9021(a)(3)(B). But nowhere in that subsection, or elsewhere in the statute, did Congress exclude individuals whose state has declined to administer benefits. "'Where Congress explicitly enumerates certain exceptions to a general requirement, additional exceptions are not to be implied, in the absence of a contrary legislative intent.'" *Allied Tube & Conduit Corp. v. United States*, 898 F.2d 780, 784 (Fed. Cir. 1990) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616 (1980) (alteration adopted)). Thus, both the express terms of subsection (a)(3)(A) and the absence of any pertinent exclusion in subsection (a)(3)(B) confirm that the statute's payment obligation is not conditional on any state agreement.

This conclusion is further bolstered by Section 9021(c), which sets a mandatory timeframe during which the benefits "shall be available to a covered individual": all weeks of eligibility "ending on or before September 6, 2021." 15 U.S.C. § 9021(c). Neither subsection (c) nor any other provision of the statute provides for early termination of benefits based on state decisions about participation. 15 U.S.C. § 9021(c)(1).

Thus, read together, subsections (a), (b), and (c) required the Secretary to ensure payments of benefits to every person who met the eligibility criteria, and to

continue making such payments up until September 6, 2021, regardless of state agreement.

### B. Congress deliberately differentiated PUA from related programs implemented only at the request of a state.

Statutory context confirms the plain meaning of the statute: the Secretary's obligation to provide PUA is mandatory and unconditional. Among the five unemployment programs established by the CARES Act, PUA is the only one not expressly subject to a state's "desire" to participate or its decision to terminate that participation. Likewise, it is the only program that mandates payments to "individual[s]." By contrast, Congress used identical statutory language in each of the four remaining programs to obligate the Federal Government only to reimburse states that "desire" to participate in each program. *See* 15 U.S.C. §§ 9023(a), 9024(a) (same), 9025(a)(1) (same), 9027(a) (same). This Court must give effect to the distinctive language Congress used to create PUA.

The Supreme Court has long held that where "'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Salinas*, 141 S. Ct. at 698 (quoting *Russello*, 464 at 23). When Congress writes separate sections of a statute differently, the courts should not "ascribe this difference to a simple mistake in draftsmanship." *Russello,* 464 U.S. at 23. When Congress "could have easily" structured different provisions

in the same way but instead "deliberately prescribes a distinct statutory scheme," the courts must give effect to that distinction. *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020).

Here, the PUA provision differs in three critical ways from the sections establishing the other unemployment compensation programs in the CARES Act. Each of these differences confirms that the Secretary's obligation to provide PUA is not contingent on state participation.

First, PUA is the only program not expressly subject to each state's "desire[]" to participate. The other programs provide that "[a]ny State which desires to do so may enter into and participate in an agreement under this Section with the Secretary of Labor". *See* 15 U.S.C. §§ 9023(a), (b) (FPUC), 9025(a)(1), (a)(2) (PEUC), 9024(a) (first week of regular unemployment), 9027(a) (short-time compensation agreements). Further, the other programs expressly provide that states may "terminate" such participation at their discretion. *See id.* The PUA statute contains no such language.

Second, PUA is the only program that directly charges the Secretary with providing assistance to "individual[s]." *See* 15 U.S.C. § 9021(b). The other programs only require the Federal Government to reimburse states for payments voluntarily made by those states. *See* 15 U.S.C. §§ 9023(d)(1)(A) (requiring that

the Federal Government "shall . . . pa[y] to each State" the amount of increased benefits), 9025(c)(1) (same), 9024(c)(1) (same), 9027(c)(1) (same).

Third, PUA is the only program that sets forth its own Congressionally-determined eligibility criteria through its definition of "covered individual" in subsection (a). PUA eligibility is defined in a uniform, nationwide manner: it is available to anyone who is unable to work due to Covid-19 and is not eligible for regular unemployment compensation. 15 U.S.C. § 9021(a)(3). By contrast, the four other CARES Act programs enhance benefits for existing state unemployment programs, whose eligibility criteria is set by the states. *See* 15 U.S.C. §§ 9023(b)(1), 9024(c)(1) (A), 9025(a)(2), 9027(b)(1). This distinct statutory scheme serves PUA's distinct purpose: delivering benefits to residents not otherwise entitled to any state benefits.

The PUA statute is also written differently from the statute creating the DUA program, a similar preexisting program. That statute "authorize[s]," but does not require, the President to provide unemployment assistance to individuals unemployed because of a major disaster, "as [the President] deems appropriate." 42 U.S.C. § 5177(a). Further, that discretionary authorization only takes effect after the President receives a request for a disaster declaration "by the Governor of the affected state." 42 U.S.C. § 5170(a). Congress was surely aware of the DUA statute's approach to unemployment assistance when it passed the PUA statute,

given the direct reference to DUA regulations in the PUA statute. *See* 15 U.S.C. § 9021(h). And yet it deliberately chose to deviate from a model based on state discretion.

Finally, the PUA statute is, once again, written differently from the general federal unemployment insurance program. That program creates a federal account from which states can receive funding, *see* 42 U.S.C. § 1103, and a process for the Secretary to review state-created systems to verify their eligibility for funding, 26 U.S.C. § 3304. States are given the choice to opt into the program. *See id.* § 3304(a) ("The Secretary of Labor shall approve *any State law submitted to him* . . .") (emphasis added). There is no language in that statute directing the Secretary to provide benefits to individuals.

In sum, Congress knew how write an unemployment assistance program based on states' desire to participate, and to limit the Federal Government's obligation to reimbursing states for payments made as part of those programs. It had no fewer than *six* models to choose from, four of which appeared in the same title of the same statute as the PUA program, and another of which was explicitly referenced in the PUA statute. Congress "could have easily" borrowed the text of any of these closely related statutes to establish that states had the primary responsibility to decide whether their residents would have access to the program. *Babb*, 140 S. Ct. at 1177. Instead, Congress "deliberately prescribed a distinct

statutory scheme applicable only" to the PUA program. *Babb*, 140 S. Ct. at 1177. This Court must give effect to that choice.

## III. Nothing in Section 9021 limits or qualifies the mandate of Section 9021(b).

Despite the unique unconditional mandate of 15 U.S.C. § 9021(b), the district court relied primarily on Section 9021(f) to hold that the statute created no obligation to provide PUA benefits to individuals living in states that lacked active agreements to administer the PUA program. The district court also relied on Section 9021(h), which incorporates regulations issued under the DUA program to the extent they are consistent with the PUA statute. But when those sections are properly read in context, neither deprives qualified individuals of benefits, regardless of state participation.

### A. Subsection (f) does not limit the payment mandate.

Subsection (f) specifies a mechanism for the Secretary to fulfill the payment obligation of subsection (b): "[t]he Secretary shall provide the assistance authorized under subsection (b) through agreements with States which, in the judgment of the Secretary have an adequate system for administering such assistance through existing State agencies, including procedures for identity verification or validation and for timely payment, to the extent reasonable and practicable." 15 U.S.C. § 9021(f)(1).

The district court read this provision to establish that, when there was no agreement with a state under subsection (f), the Secretary had no duty to pay PUA benefits to residents of that state, notwithstanding the unqualified command of subsection (b). Appx30. That conclusion appears to arise from an assumption about Congressional intent: Because Congress did not detail a mechanism to provide benefits in the wake of state withdrawal, the theory seemingly goes, Congress did not mean to obligate the Secretary to provide benefits in that scenario.

This Court should reject that interpretation. It is not rooted in the text of the statute and it ignores other options available to the Secretary to pay benefits to qualified Texans.

1. **The plain text of the statute does not support the district court's interpretation.**

To begin, nothing in subsection (f) or any other part of Section 9021 expressly limits the payment mandate established by subsections (b) and (c) or the definition of "covered individual" in subsection (a). Subsection (f) does not state, for example, that a "covered individual" loses their right to benefits when a state no longer desires to participate in the program. Nor does the statute say that the mandate of subsection (b) is "subject to" subsection (f), as it is to subsection (c), or that a person's status as a "covered individual" under subsection (c) is dependent on a state's decision about whether to participate in administering benefits.

Rather, subsection (f) is silent as to how the Secretary should proceed when a state is unwilling or unable to administer benefits. But that silence cannot be construed as a rule *against* paying benefits to residents of non-participating states, particularly when read in light of the unconditional mandate of subsection (b). On the contrary, as noted above, the Supreme Court has held that an express statutory payment mandate "create[s] both a right and a remedy," *Me. Cmty. Health Options*, 140 S. Ct. at 1329 (quotation marks omitted), even if the statute is silent as to the "details about how [that mandate] must be satisfied," *id.* at 1320.

The district court's reading of subsection (f) also violates a basic principle of statutory interpretation: ancillary procedural provisions do not limit the core substantive obligations of a statute, absent a clear textual indication that Congress intended such limitation. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003); *King*, 576 U.S. at 497 (quoting *Am. Trucking Ass'ns, Inc.*, 531 U.S. at 468 (2001)). Here, there is no such indication.

The Supreme Court and this Court have repeatedly declined to find that procedural or ancillary provisions limit parties' rights or obligations under a statute. In *King v. Burwell*, the Supreme Court declined to hold that a provision of the Affordable Care Act describing tax credit calculations limited who was eligible for those credits based on state decisions about whether to participate. *King*, 576 U.S. at 496–97. Congress does not "alter the fundamental details of a regulatory

scheme in vague terms or ancillary provisions," the Court explained. *King*, 576 U.S. at 497 (quoting *Am. Trucking Ass'ns, Inc.*, 531 U.S. at 468). If Congress had wanted to limit the availability of that benefit based on state participation, it "would not have used such a winding path of connect-the-dots provisions" to do so. *Id.*

Likewise, in *Barnhart*, the Supreme Court interpreted a statutory provision that, as part of a system for funding coal miners' retirement benefits, required the Social Security Commissioner to "assign each coal industry retiree who is an eligible beneficiary" to an operating coal company, which was then responsible for funding that retiree's benefits. *Barnhart*, 537 U.S. at 152–53. The provision also stated that the Commissioner "shall" complete the assignments "before October 1, 1993." *Id.* at 152. According to the coal company, miners not assigned by that deadline were ineligible for the program. *Id.* at 156.

The Supreme Court rejected that interpretation. The Court explained that "[i]t misses the point simply to argue" that the deadline "was 'mandatory,' 'imperative,' or a 'deadline,' as of course it was." *Id.* at 157. Because the statute did not specify a consequence for failure to comply with that procedural requirement, the Court declined to provide one. *Id.* at 159–63. As the Court explained, if Congress intended to make the statute's substantive obligation

contingent on compliance with a procedural provision, "it would have said more than it did." *Id.* at 163.[4]

The same is true here. Subsection (f) is an ancillary provision, supplying details for carrying into effect the core substantive obligations set out in subsections (a), (b), and (c). Subsection (f) neither creates the payment obligation nor establishes the eligibility criteria for the program. And just as in *Barnhart*, the PUA statute "does not specify a consequence for noncompliance" with this ancillary provision. *Barnhart*, 537 U.S. at 159 (quotation marks omitted). This lack of a "specified consequence" for failure to comply with the ancillary, procedural provision contained in subsection (f) "indicates that [the provision] is directory and not mandatory." *Gilda*, 622 F.3d at 1365.

Yet, the district court found that subsection (f) limited the core substantive mandate of the PUA statute by allowing states to withdraw their participation and thus make it impossible for the Secretary to maintain an agreement with them under that subsection. But if Congress had wanted the PUA program to *cease*

---

[4] The Supreme Court and this Court have applied this principle "to various procedural requirements." *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1357 (Fed. Cir. 2005) (collecting cases); *see also Brock v. Pierce County*, 476 U.S. 253, 260 (1986) (explaining that when "important public rights are at stake," the procedural provisions of a statute should not be construed to limit those rights); *Bullock v. United States*, 10 F.4th 1317, 1321 (Fed. Cir. 2021) (holding that regulations requiring settlement agreements to be in writing did not void oral settlement agreement because the regulations did not explicitly "state[] that it renders oral agreements unenforceable").

*completely* in the event the Government failed to maintain an agreement with a state pursuant to subsection (f), it would have said so expressly. It did not. In fact, Congress did not even mention state termination in the PUA provision, unlike in every other unemployment compensation program in the CARES Act. The Court should not assume that it nevertheless allowed states to terminate PUA benefits through an unstated implication of a procedural provision—a veritable "winding path of connect-the-dot provisions" that cannot be read as an implied limitation on the statute's core mandate. *King*, 576 U.S. at 497.

**2. Texas's withdrawal from the PUA program did not prevent the Secretary from fulfilling his obligation to Plaintiffs.**

The district court appeared to assume that Texas's withdrawal left the Secretary with no way to deliver benefits to Texans. But that assumption draws no support from the statutory text. Most important, it ignores the option of an agreement with another state to process payments for covered individuals in Texas.

To begin, while referring to administration of benefits through "agreements with States," the statute omits any language limiting those agreements to the residents of the agreeing state. 15 U.S.C. § 9021(f)(1). The absence of any such limitation is telling given the statute's express recognition some states might not administer the PUA program for their own residents. The statute directs the Secretary to make a "judgment" as to whether states "have an adequate system for administering such assistance through existing State agencies" before entering into

an agreement with them. 15 U.S.C. § 9021(f)(1). Congress thus anticipated that some states might not maintain agreements with the Secretary, but included no language denying benefits to residents of those states.

Rather, Congress gave the Secretary flexibility to ensure that benefits could still be paid in such a situation. For example, the statute contemplates that states could agree to administer benefits for residents of other states. It gives covered individuals the right to "appeal any determination or redetermination regarding rights to [PUA] made by the State agency *of any of the States*," while providing that appeals "shall be carried out *by the applicable state that made the determination*." 15 U.S.C. § 9021(c)(5)(A), (B)(i) (emphases added). If only one state could process each person's benefits (*i.e.*, the state of residence), this language would be unnecessary. Interpreting the statute without giving effect to those provisions would violate the "rule against superfluities." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). The district court did not acknowledge this statutory text at all. *See* Appx30–42 [R&R].

Notably, just days after the CARES Act was passed, the Department of Labor recognized the possibility that one state could administer PUA for residents of another state. It issued a guidance document announcing that states "may enter into agreements to operate the PUA program on behalf of other states." Unemployment Insurance Program Letter 16-20, at 5. Such an arrangement has

precedent. For instance, after Hurricane Katrina, a number of other states, including California and Michigan—as well as Texas itself—processed unemployment compensation claims for Louisiana residents.[5]

In short, the statute provides no support for the implied prohibition against cross-state administration agreements that is necessary to the district court's conclusion. Rather, as both the statutory text and the Department of Labor's guidance make clear, cross-state administration was permitted.

Below, the Government characterized cross-state administration as impracticable. But its arguments are unpersuasive. First, the Government suggested that it could not "impose" the PUA program on Texas absent its consent. Def.'s Reply in Support of Mot. to Dismiss at 11 n.7, No. 21-cv-01049, Dkt. 28 (W.D. Tex. Feb. 8, 2022). But Congress does not "impose" anything on a state by making a federal benefit available to its residents.

Next, the Government asserted that it could not "compel a state to administer PUA on behalf of another state." Def.'s Reply in Support of Mot. to Dismiss at 8,

---

[5] *See Texas Helping Process Louisiana Unemployment Benefits*, Houston Business Journal, Sept. 6, 2005, https://www.bizjournals.com/houston/stories/2005/09/05/daily2.html; Michigan State Agency Status Report #9, at 10, September 13, 2005, https://www.michigan.gov/documents/SituationReport09MiKatrina_136655_7.pdf; Timothy Roberts, *California Offers Help to Louisiana Jobless*, Silicon Valley Business Journal, Sept. 8, 2000, https://www.bizjournals.com/sanjose/stories/2005/09/05/daily25.html.

No. 21-cv-01049, Dkt. 28 (W. D. Tex. Apr. 7, 2022). Again, however, Plaintiffs do not argue for such an imposition. Rather, Plaintiffs argue that the statute permitted the Secretary to agree with another state, with the consent of that state, to administer benefits to Texans. At the very least, the Federal Government should have sought such an agreement given its obligation in Section 9021(b) to provide benefits to all covered individuals.

To the extent the Government argues that no state would have voluntarily agreed to administer PUA to Texans, that suggestion is speculative and thus provides no basis for dismissing the case on the pleadings under Rule 12(b)(6). In fact, there is good reason to believe that one or more states would have stepped in. The CARES Act required the federal government to cover 100 percent of all administrative expenses associated with administering the PUA program to the states, *in addition to* 100 percent of the amount of the assistance. 15 U.S.C. § 9021(f)(2). Not only would any state administering the PUA program for Texas residents bear no cost, it would have had the opportunity to hire more of its own residents during an unprecedented unemployment crisis, all on the Federal Government's dime. And in at least one prior crisis, state governments were willing to step in to help residents of other states receive unemployment benefits during major disasters. *See supra*, at 30 & n.5.

The Government also claimed that coordination is needed to determine matters of state law: "the weekly benefit amount the individual is entitled to" and "whether the individual is able to work and available for work within the meaning of the terminating state's law." Def.'s Resp. to Pls.' Objs. at 12, No. 21-cv-01049, Dkt. 31 (W.D. Tex., July 1, 2022) (citing 15 U.S.C. § 9021(d)(1)(A)(i) and § 9021(a)(3)(A)(ii)(I)). But no cooperation is needed for a state agency to review the law of another state and apply it. State and federal courts do so all the time. In fact, the PUA statute *required* such cross-state application in at least some instances: it provided that the law of Hawaii would govern PUA benefits in certain U.S. territories the statute defined as states. *See* 15 U.S.C. § 9021(c)(5)(C)(iii). Furthermore, the plain text of the statute calls for an employee's "self-certification" of availability to work, 15 U.S.C. § 9021(a)(3)(A)(ii)(I), thus eliminating the need for a state determination on that point.

Finally, the Government asserted that it would require "extensive coordination with the terminating state" to administer PUA benefits. Def.'s Resp. to Pls.' Objs. at 11–12, No. 21-cv-01049, Dkt. 31 (W D. Tex., July 1, 2022). But no such coordination is required to determine if an individual is "ineligible for regular unemployment insurance." *Id.* at 11 (citing 15 U.S.C. § 9021(a)(3)(A)(i)). States are already required to provide this kind of information to the federal government as part of the regular unemployment insurance scheme, independent of

PUA or any PUA agreement. *See, e.g.*, 20 C.F.R. § 603.6(b)(1)(v). The same is true of information regarding "the weeks of benefits the individual has received previously." Def.'s Resp. to Pls.' Objs. at 12, No. 21-cv-01049, Dkt. 31 (W.D. Tex. July 1, 2022) (citing 15 U.S.C. § 9021(c)(2)); *see* 20 C.F.R. § 603.6. And in any event, unemployed workers would know if they had been turned down by their state or cut off after a certain number of weeks, so they could report that information when seeking PUA benefits.

In the unlikely event that no state was willing to do so, the Federal Government could have administered PUA benefits directly. Prior to Texas's withdrawal, Congress authorized funds the Secretary could have used to directly administer the program. When Congress extended the program in the American Rescue Plan in March 2021, it authorized $2 billion in spending to, among other things, ensure "timely payment of benefits with respect to unemployment compensation programs," including the PUA program. Pub. L. No. 117-2, § 9032(a) (codified at 15 U.S.C. § 9034(a)). This provision specified that the funds may be used "(1) for Federal administrative costs" and "(2) for system-wide infrastructure investment and development related to such purposes." *Id.* § 9032 (codified at 15 U.S.C. § 9034(b)(1)–(2)).

Nor would federal administration conflict with subsection (f). Although that subsection directs the Secretary to provide benefits through state agreements, it

makes that obligation subject to the Secretary's "judgment" as to whether a state has an "adequate system" for providing benefits. Given that discretionary language, subsection (f) cannot be read as creating an exclusive unconditional requirement of state administration. Here, Texas ceased to have an "adequate system" when its Governor directed state agencies to stop participating in the program. Consequently, the Secretary was no longer obligated to utilize an agreement with Texas for the purpose of paying benefits to Texans. But the statute does not provide that any other consequence should follow. *See Gilda*, 622 F.3d at 1365 ("[T]he absence of a consequence" for failure to comply with a procedural provision indicates that it "is a directory provision and not 'mandatory'").

### B. The payment mandate is not limited by the statute's partial incorporation of regulations implementing the DUA program.

The district court also relied on subsection (h), which incorporates by reference certain of the DUA's implementing regulations, to dismiss Plaintiffs' claims. Appx39–40. Subsection (h) indicates that, to the extent they are compatible with the PUA statute, the DUA regulations apply to this program. It states that "[e]xcept as otherwise provided in this section or to the extent there is a conflict between this section and" the DUA regulations, those regulations shall apply. 15 U.S.C. § 9021(h). The district court reasoned that because the DUA regulations require that "an agreement with a state is required in order for benefits to be payable in the state," that limitation also applies to PUA. Appx34.

That analysis is wrong. Subsection (h) does not explicitly or implicitly limit the unconditional mandate of subsection (b). Rather, subsection (h) is an efficiency measure: During a fast-moving crisis, Congress saved the Department time in figuring out the program's implementation details by coopting, in part, existing regulations. Once again, such an "ancillary provision[]" cannot be read to "alter the fundamental details" of the PUA program. *King*, 576 U.S. at 497 (quotation marks omitted); *see supra* at 26.

That conclusion is only strengthened by the statutory text, which rebuts any inference that Congress intended the DUA regulations to govern the core substantive aspects of the program, such as who was entitled to PUA benefits. Anticipating that the DUA regulations would not map perfectly onto the PUA statute, the statute explicitly provides that the DUA regulations do not apply when "there is a conflict" between the regulations and the statute. 15 U.S.C. § 9021(h). In other words, Congress understood that the scope of the programs was different and that conflicts would be governed by the text of the PUA statute. The statute's explicit directive against applying conflicting DUA regulations means that the court must first determine the meaning of the statute and then determine whether a particular regulation has any application to the PUA program.

The DUA regulation on which the district court relied conflicts with the PUA statute. The regulation states that an individual is eligible to receive DUA

benefits if, among other things, the "applicable State for the individual has entered into an Agreement which is in effect with respect to that week." 20 C.F.R. § 625.4(b). The PUA statute, by contrast, requires the Secretary to provide benefits to "*any* covered individual," 15 U.S.C. § 9021(b) (emphasis added), while defining "covered individual" without reference to the existence of a state agreement.

The DUA statute permits the agency to establish eligibility criteria for that program because it delegates to the executive branch the authority to decide whether and when to provide DUA benefits. The DUA statute states that, in the event of a "major disaster," the President "is *authorized* to provide to any individual" unemployment benefit assistance "as [the President] deems appropriate." 42 U.S.C. § 5177(a) (emphasis added). The PUA statute, by contrast, affords the Secretary no such discretion. Instead, it mandates that he "shall provide" PUA benefits "to any covered individual." 15 U.S.C. § 9021(b). Thus, that regulation conflicts with the PUA statute and does not apply.[6]

Further, the DUA statute authorizes the President to provide benefits only in the event that that the President receives a request for a disaster declaration "by the

[6] This is not the only conflict between the PUA statute and the DUA regulations. For example, those regulations exclude certain categories of workers eligible for PUA, such as those who had to stay home to take care of a child whose school was closed due to Covid-19. *Compare* 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(dd), *with* 20 C.F.R. § 625.5(a).

Governor of the affected state." 42 U.S.C. § 5170(a).[7] By contrast, the text of the CARES Act gives states no such power to request PUA benefits for its residents. At the time of its enactment, the President had already declared a nationwide emergency, thus obviating the need for state requests. *See* Proclamation 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020).

In sum, the DUA regulation conflicts with the PUA statute because it enumerates an additional eligibility criterion that is not contained in or authorized by the PUA statute. Thus, this Court should not apply it.

## IV. The purpose and historical context of the PUA program confirm that the statute requires the Secretary to provide PUA to all covered individuals.

The context in which PUA was enacted further confirms the plain meaning of its text. *See Wooden v. United States*, 142 S. Ct. 1063, 1072 (2022) (looking to "history and purpose" to "confirm" the proper interpretation of a statute). When the CARES Act was enacted, Senators from both parties emphasized that, second only to shoring up the healthcare system, ensuring support for unemployed workers was the most important part of the law. To cite just a few examples, then-Majority

[7] The disasters covered by the program are typically regional in nature, such as storms, earthquakes, and fires. *See* 42 U.S.C. § 5122(2) (defining "major disaster"). The most recent federally-declared disasters include "Georgia Severe Weather," "Alabama Severe Storms, Straight-line Winds, and Tornadoes)" and "California Severe Winter Storms, Flooding, Landslides, and Mudslides." *See* Declared Disasters, FEMA, https://www.fema.gov/disaster/declarations (last visited Jan. 23, 2023).

Leader Mitch McConnell explained that "[c]ombating this disease has forced our country to put huge parts of our national life on pause and triggered layoffs at a breathtaking pace." 166 Cong. Rec. S2021 (daily ed. Mar. 25, 2022) (statement of Sen. Mitch McConnell). Then-Minority Leader Chuck Schumer emphasized Congress's focus on the Act's unemployment compensation provisions, repeatedly referring to these programs as "unemployment insurance on steroids." *Id.* at S2025–26 (statement of Sen. Chuck Schumer). One Senator specifically highlighted the PUA program, explaining that by covering "those who are part of a gig economy who may not have been covered in the past is important to give people the safety net to make it through this process." *Id.* at S2025 (statement of Sen. Maria Cantwell).

Recognizing that these programs were helping to keep the economy afloat, Congress twice extended their duration. First, in the 2021 Appropriations bill, enacted in December 2020, Pub. L. No. 116-260 Div. N §§ 201, 203, 204, 206, and second as part of the American Rescue Plan, passed in March 2021, Pub L. No. 117-2, §§ 9011, 9013, 9014, 9016. When the American Rescue Plan was introduced in early 2021, the House Committee on Education and Labor explained its particular concern about the impending, abrupt end to these programs: Of the 22 million payroll jobs that had been lost at the beginning of the pandemic, 10 million still had not been recovered and "initial weekly claims for unemployment benefits

ha[d] exceeded their historical high-point for 47 consecutive weeks and counting." H.R. Rept. No. 117-7, 52–53 (2021). The Committee on Ways and Means further noted that the CARES Act unemployment compensation programs "offset a large portion of what would otherwise have been a very sharp drop in U.S. consumer spending, which is the primary driver of Gross Domestic Product." *Id.* at 564–65.[8] In short, the CARES Act's unemployment compensation programs were an essential component of Congress's plan to both help workers and prevent the national economy from collapsing.

Throughout all this time, only one program provided unemployment assistance to those who otherwise would not be eligible: PUA. It was designed to be the federal catch-all program for unemployment compensation – ensuring that anyone ineligible for ordinary unemployment compensation from their state would be able to get by during this unprecedented crisis. It would negate the goal of the program to allow states to determine whether their residents would receive that form of assistance. *See King*, 576 U.S. at 492–93 (declining to interpret a statute in

[8] Indeed, those fears came true when Texas and other states prematurely terminated their participation in the CARES Act's unemployment programs. Few people who lost unemployment assistance found jobs in the following months, meaning that millions of people struggled to get by. Researchers found that, as a result, those millions of workers reduced their weekly spending by about 20 percent, and thus "put less money into their local economies." Ben Casselman, *Cutoff of Jobless Benefits Is Found to Get Few Back to Work*, N.Y. Times (Aug. 20, 2021), available at https://www.nytimes.com/2021/08/20/business/economy/unemployment-benefits-economy-states.html.

a manner that would create the very problem "Congress designed the Act to avoid").

## CONCLUSION

The district court granted the Government's motion to dismiss based solely on its incorrect conclusion that the CARES Act conditioned workers' access to PUA benefits on their state's agreement to participate in the program. The statute says no such thing. This Court should reverse the district court's dismissal and remand for further proceedings.

Dated: March 10, 2023

Respectfully submitted,

*<u>/s/ Daniel M. Rosenthal</u>*
Daniel M. Rosenthal
Ryan E. Griffin
Charlotte H. Schwartz
James & Hoffman, P.C.
1629 K Street NW, Suite 1050
Washington, DC 20006
Tel: (202) 496-0500
Fax: (202) 496-0555
dmrosenthal@jamhoff.com
regriffin@jamhoff.com
chschwartz@jamhoff.com

Joshua A. Segal
Leon Dayan
Bredhoff & Kaiser PLLC
805 15th Street NW, Suite 1000
Washington, DC 20005
jsegal@bredhoff.com
ldayan@bredhoff.com

Christopher J. Williams
National Legal Advocacy Network
1 N LaSalle Street, Suite 1275
Chicago, IL 60602
(312) 795-9121
cwilliams@n-lan.org

*Attorneys for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE**

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 9,150 words according to the word-count function in Microsoft Word.

Date: March 10, 2023

*/s/ Daniel M. Rosenthal*
Daniel M. Rosenthal

No. 23-1163

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

RACHEL CREAGER IRELAND, RAEVENE ADAMS, AND DARCEAL TOBEY,

on behalf of themselves and all other similarly situated individuals,

Plaintiffs-Appellants

v.

UNITED STATES OF AMERICA,

Defendant-Appellee

Appeal from the United States District Court for the Western District of Texas in 1:21-CV-1049-LY

Judge Lee Yeakel

**SECOND CORRCETED APPENDIX TO OPENING BRIEF OF APPELLANTS**

Joshua A. Segal
Leon Dayan
Bredhoff & Kaiser PLLC
805 15th Street NW, Suite 1000
Washington, DC 20005
(202) 842-2600
jsegal@bredhoff.com
ldayan@bredhoff.com

Christopher J. Williams
National Legal Advocacy Network
1 N LaSalle Street, Suite 1275
Chicago, IL 60602
(312) 795-9121
cwilliams@n-lan.org

Daniel M. Rosenthal
Ryan E. Griffin
Charlotte H. Schwartz
James & Hoffman, P.C.
1629 K Street NW, Suite 1050
Washington, DC 20006
Tel: (202) 496-0500
Fax: (202) 496-0555
dmrosenthal@jamhoff.com
regriffin@jamhoff.com
chschwartz@jamhoff.com

*Attorneys for Plaintiffs-Appellants*

March 10, 2023

**TABLE OF CONTENTS**

Order on Report and Recommendation, Dkt. 37 (September 6, 2022) ......... APPX 1

Final Judgment, Dkt. 38, (September 6, 2022) ............................................. APPX 3

Docket Sheet for Case No. 1:21-CV-1049-LY ............................................. APPX 4

Complaint, Dkt. 1 (November 22, 2021) .................................................... APPX 10

Report and Recommendation of the United States Magistrate Judge, Dkt. 29 (June 8, 2022) ........................................................................................ APPX 30

Notice of Appeal (November 4, 2022) ....................................................... APPX 43

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
SEP 6 2022
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY DEPUTY

| | | |
|---|---|---|
| RACHEL CREAGER IRELAND, RAEVENE ADAMS, AND DARCEAL TOBEY, ON BEHALF OF THEMSELVES AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS, PLAINTIFFS, | § | CAUSE NO. 1:21-CV-1049-LY |
| V. | § | |
| UNITED STATES OF AMERICA, DEFENDANT. | § | |

**ORDER ON REPORT AND RECOMMENDATION**

Before the court are the United States of America's Motion to Dismiss for Failure to State a Claim filed February 8, 2022 (Doc. #13); Plaintiffs' Amended Opposition to Motion filed March 15, 2022 (Doc #18); the United States of America's Reply in Support filed April 7, 2022 (Doc. #28); and Plaintiffs' Surreply filed April 13, 2022 (Doc. #26). The motion, response, and replies were referred to the United States Magistrate Judge for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

The magistrate judge filed a Report and Recommendation on June 8, 2022 (Doc. #29), recommending that this court grant the United States of America's motion to dismiss and dismiss Plaintiffs' complaint with prejudice for failure to state a claim. Plaintiffs' Objections to Magistrate Judge's Report and Recommendation were filed June 30, 2022 (Doc. #30); Defendant's Response was filed July 1, 2022 (Doc. #31); and Plaintiffs' Reply in Support of Objections was filed July 12, 2022 (Doc. #36). In light of Plaintiffs' objections, the court has undertaken a *de novo* review

of the entire case file and finds that the magistrate judge's Report and Recommendation should be approved and accepted by the court for substantially the reasons stated therein.

The magistrate judge properly construed the Coronavirus Aid, Relief, and Economic Security Act, finding that nothing in the Act allows the United States Department of Labor, which administers the Act, to bypass the states and pay benefits directly to citizens when states opt out. Further, this court agrees that the Secretary's ability to distribute benefits is predicated on the existence of an agreement with a state. Therefore, Plaintiffs' objections will be overruled.

**IT IS ORDERED** that Plaintiffs' Objections to Magistrate's Report and Recommendation filed June 22, 2022 (Doc. #30) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation of the United States Magistrate Judge (Doc. #29) is **ACCEPTED AND ADOPTED** by the court as stated herein.

**IT IS FURTHER ORDERED** that the United States of America's Motion to Dismiss for Failure to State a Claim filed February 8, 2022 (Doc. #13) is **GRANTED**.

**IT IS FINALLY ORDERED** that Plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.

A Final Judgment shall be filed subsequently.

SIGNED this 6th day of September [redacted], 2022.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

FILED
SEP 6 2022
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY ________ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RACHEL CREAGER IRELAND, RAEVENE ADAMS, AND DARCEAL TOBEY, ON BEHALF OF THEMSELVES AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS, PLAINTIFFS, | § | CAUSE NO. 1:21-CV-1049-LY |
| V. | § | |
| UNITED STATES OF AMERICA, DEFENDANT. | § | |

**FINAL JUDGMENT**

Before the court is the above-referenced cause of action. On this date, the court rendered an order dismissing Plaintiffs' complaint with prejudice. Accordingly, the court renders the following Final Judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS ORDERED** that this action is hereby **CLOSED**.

SIGNED this 6th day of September [redacted], 2022.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Query Reports Utilities Help Log Out

APPEAL

# U.S. District Court [LIVE]
# Western District of Texas (Austin)
# CIVIL DOCKET FOR CASE #: 1:21-cv-01049-LY

Creager Ireland et al v. United States
Assigned to: Judge Lee Yeakel
Case in other court: 5th Circuit, 22-50980
Cause: 28:1346 Tucker Act

Date Filed: 11/22/2021
Date Terminated: 09/06/2022
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Rachel Creager Ireland**
*on behalf of herself and all other similarly situated individuals*

represented by

**Christopher J. Williams**
National Legal Advocacy Network
1 N. LaSalle Street, Suite 1275
Chicago, IL 60602
(312) 795-9121
Email: cwilliams@n-lan.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel M. Rosenthal**
James & Hoffman, P.C.
1629 K Street, NW, Suite 1050
Washington, DC 20006
(202) 496-0500
Fax: (202) 496-0555
Email: dmrosenthal@jamhoff.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan E. Griffin**
James & Hoffman, P.C.
1629 K Street, NW, Suite 1050
Washington, DC 20006
(202) 496-0500
Fax: (202) 496-0555
Email: regriffin@jamhoff.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sheila Maddali**
National Legal Advocacy Network
1 N. Lasalle St. Suite 1275
Chicago, IL 60602
(312) 795-9121

Email: smaddali@n-lan.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Bocchini**
Equal Justice Center
314 E Highland Mall Blvd, Suite 401
Austin, TX 78752
(512) 474-0007 ext. 132
Fax: 512.474.0008
Email: abocchini@equaljusticecenter.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Raevene Adams**
*on behalf of herself and all other similarly situated individuals*

represented by

**Christopher J. Williams**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel M. Rosenthal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan E. Griffin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sheila Maddali**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Bocchini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Darceal Tobey**
*on behalf of himself and all other similarly situated individuals*

represented by

**Christopher J. Williams**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel M. Rosenthal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan E. Griffin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sheila Maddali**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Bocchini**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States of America** represented by

**Lisa A. Olson**
U.S. Department of Justice
1100 L Street NW
Washington, DC 20001
202/514-5633
Fax: (202)616-8470
Email: lisa.olson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/22/2021 | 1 | COMPLAINT ( Filing fee $ 402 receipt number 0542-15462985). No Summons requested at this time, filed by Rachel Creager Ireland, Darceal Tobey, Raevene Adams. (Attachments: # 1 Civil Cover Sheet (with attachment))(Bocchini, Anna) (Entered: 11/22/2021) |
| 11/22/2021 | | Case assigned to Judge Lee Yeakel. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (jv2) (Entered: 11/22/2021) |
| 11/22/2021 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Howell (jv2) (Entered: 11/22/2021) |
| 11/22/2021 | 2 | Pro Hac Vice Letter directed to Christopher J. Williams, Sheila Maddali, Daniel M. Rosenthal, Ryan E. Griffin, and Michael P. Persoon. (jv2) (Entered: 11/22/2021) |
| 11/22/2021 | 3 | MOTION to Appear Pro Hac Vice by Anna Bocchini *on behalf of Daniel M. Rosenthal* ( Filing fee $ 100 receipt number 0542-15467983) by on behalf of Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Attachments: # 1 Proposed Order)(Bocchini, Anna) (Entered: 11/22/2021) |
| 11/22/2021 | 4 | MOTION to Appear Pro Hac Vice by Anna Bocchini *on behalf of Ryan E. Griffin* ( Filing fee $ 100 receipt number 0542-15467984) by on behalf of Raevene Adams, Rachel |

| | | |
|---|---|---|
| | | Creager Ireland, Darceal Tobey. (Attachments: # 1 Proposed Order)(Bocchini, Anna) (Entered: 11/22/2021) |
| 11/23/2021 | 5 | MOTION to Appear Pro Hac Vice by Anna Bocchini *on behalf of Christopher J. Williams* ( Filing fee $ 100 receipt number 0542-15469455) by on behalf of Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Attachments: # 1 Proposed Order)(Bocchini, Anna) (Entered: 11/23/2021) |
| 11/23/2021 | 6 | MOTION to Appear Pro Hac Vice by Anna Bocchini *on behalf of Sheila Maddali* ( Filing fee $ 100 receipt number 0542-15470404) by on behalf of Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Attachments: # 1 Proposed Order)(Bocchini, Anna) (Entered: 11/23/2021) |
| 11/23/2021 | 7 | ORDER GRANTING 3 Motion to Appear Pro Hac Vice as to Daniel M. Rosenthal. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Lee Yeakel. (cc3) (Entered: 11/23/2021) |
| 11/23/2021 | 8 | ORDER GRANTING 4 Motion to Appear Pro Hac Vice as to Ryan E. Griffin. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Lee Yeakel. (cc3) (Entered: 11/23/2021) |
| 11/24/2021 | 9 | ORDER GRANTING 5 Motion to Appear Pro Hac Vice as to Christopher J. Williams. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Lee Yeakel. (cc3) (Entered: 11/24/2021) |
| 11/24/2021 | 10 | ORDER GRANTING 6 Motion to Appear Pro Hac Vice as to Sheila Maddali. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Lee Yeakel. (cc3) (Entered: 11/24/2021) |
| 12/08/2021 | 11 | REQUEST FOR ISSUANCE OF SUMMONS by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Bocchini, Anna) (Entered: 12/08/2021) |
| 12/08/2021 | 12 | Summons Issued as to United States of America. (cc3) (Entered: 12/08/2021) |
| 02/08/2022 | 13 | Motion to Dismiss for Failure to State a Claim by United States of America. (Olson, Lisa) (Entered: 02/08/2022) |
| 02/14/2022 | 14 | Unopposed MOTION for Extension of Time to File Response/Reply as to 13 Motion to Dismiss for Failure to State a Claim by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Attachments: # 1 Proposed Order)(Bocchini, Anna) (Entered: 02/14/2022) |
| 02/23/2022 | 16 | Joint MOTION *to Modify Briefing Schedule* re 13 Motion to Dismiss for Failure to State a Claim by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Attachments: # 1 Proposed Order)(Rosenthal, Daniel) (Entered: 02/23/2022) |
| 02/23/2022 | 17 | ORDER GRANTING 16 Joint Motion to Modify Briefing Schedule Regarding Defendant's Motion to Dismiss. ORDER DENYING AS MOOT Plaintiff's prior 14 Motion for Extension of Time. Signed by Judge Lee Yeakel. (lt) (Entered: 02/23/2022) |
| 03/15/2022 | 18 | Memorandum in Opposition to Motion, filed by Raevene Adams, Rachel Creager Ireland, Darceal Tobey, re 13 Motion to Dismiss for Failure to State a Claim filed by Defendant |

| | | |
|---|---|---|
| | | United States of America *(Amended)* (Rosenthal, Daniel) (Entered: 03/15/2022) |
| 03/30/2022 | 19 | Unopposed MOTION to Strike 15 Memorandum in Opposition to Motion by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Attachments: # 1 Proposed Order) (Rosenthal, Daniel) (Entered: 03/30/2022) |
| 03/31/2022 | 20 | ORDER GRANTING Plaintiff's Unopposed 19 Motion to Strike Plaintiff's 15 Memorandum in Opposition to Motion. Signed by Judge Lee Yeakel. (klw) (Entered: 03/31/2022) |
| 04/05/2022 | 21 | Unopposed MOTION for Leave to Exceed Page Limitation *for Reply* by United States of America. (Attachments: # 1 Exhibit Proposed Reply)(Olson, Lisa) (Entered: 04/05/2022) |
| 04/05/2022 | 22 | Proposed Order to 21 Unopposed MOTION for Leave to Exceed Page Limitation *for Reply Proposed Order* by United States of America. (Olson, Lisa) Modified on 4/5/2022 (cc3). (Entered: 04/05/2022) |
| 04/07/2022 | 23 | ORDER GRANTING 21 Motion for Leave to File Excess Pages Signed by Judge Lee Yeakel. (cc3) (Entered: 04/07/2022) |
| 04/07/2022 | 28 | REPLY in Support, filed by United States of America, re 13 Motion to Dismiss for Failure to State a Claim filed by Defendant United States of America (cc3) (Entered: 04/28/2022) |
| 04/11/2022 | 24 | Unopposed MOTION for Leave to File Surreply by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Attachments: # 1 Exhibit A, Surreply, # 2 Proposed Order) (Rosenthal, Daniel) (Entered: 04/11/2022) |
| 04/13/2022 | 25 | ORDER GRANTING Plaintiff's 24 Motion for Leave to File Sur-reply. Signed by Judge Lee Yeakel. (klw) (Entered: 04/13/2022) |
| 04/13/2022 | 26 | Plaintiffs' Sur-reply to Defendant's 13 Motion to Dismiss for Failure to State a Claim. (klw) (Entered: 04/13/2022) |
| 04/13/2022 | 27 | ORDER REFERRING MOTION: 13 Motion to Dismiss for Failure to State a Claim filed by United States of America. Signed by Judge Lee Yeakel.. Referral Magistrate Judge: Dustin M. Howell. (klw) (Entered: 04/13/2022) |
| 06/08/2022 | 29 | REPORT AND RECOMMENDATIONS re 13 Motion to Dismiss for Failure to State a Claim filed by United States of America. Signed by Judge Dustin M. Howell. (cc3) (Entered: 06/08/2022) |
| 06/08/2022 | | Motions No Longer Referred: 13 Motion to Dismiss for Failure to State a Claim (cc3) (Entered: 06/08/2022) |
| 06/22/2022 | 30 | OBJECTION to 29 Report and Recommendations by Raevene Adams, Rachel Creager Ireland, Darceal Tobey.. (Rosenthal, Daniel) (Entered: 06/22/2022) |
| 07/01/2022 | 31 | RESPONSE to 30 Objection to Report and Recommendations, 29 Report and Recommendations by United States of America. (Olson, Lisa) (Entered: 07/01/2022) |
| 07/08/2022 | 32 | MOTION for Leave to File Reply Brief In Support Of Objections to Magistrate Judge's Report and Recommendation by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Attachments: # 1 Brief)(Rosenthal, Daniel) (Entered: 07/08/2022) |
| 07/08/2022 | 33 | DEFICIENCY NOTICE: re 32 MOTION for Leave to File Reply Brief In Support Of Objections to Magistrate Judge's Report and Recommendation (cc3) (Entered: 07/08/2022) |
| 07/08/2022 | 34 | ATTACHMENT *(Proposed Order)* to 32 MOTION for Leave to File Reply Brief In Support Of Objections to Magistrate Judge's Report and Recommendation by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Rosenthal, Daniel) (Entered: 07/08/2022) |

| | | |
|---|---|---|
| 07/12/2022 | 35 | ORDER GRANTING 32 MOTION for Leave to File Reply Brief In Support Of Objections to Magistrate Judge's Report and Recommendation. Signed by Judge Lee Yeakel. (cc3) (Entered: 07/12/2022) |
| 07/12/2022 | 36 | REPLY BRIEF in Support of Objections to Magistrate Judge's Report and Recommendation by Plaintiffs (cc3) (Entered: 07/12/2022) |
| 09/06/2022 | 37 | ORDER ACCEPTING and ADOPTING 29 Report and Recommendations. GRANTING 13 Motion to Dismiss for Failure to State a Claim. Signed by Judge Lee Yeakel. (cc3) (Entered: 09/06/2022) |
| 09/06/2022 | 38 | FINAL JUDGMENT. Signed by Judge Lee Yeakel. (cc3) (Entered: 09/06/2022) |
| 11/04/2022 | 39 | Appeal of Final Judgment 38 , 37 by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. ( Filing fee $ 505 receipt number ATXWDC-16718578) (Rosenthal, Daniel) (Entered: 11/04/2022) |
| 11/04/2022 | | NOTICE OF APPEAL following 39 Notice of Appeal (E-Filed) by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. Filing fee $ 505, receipt number ATXWDC-16718578. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (cc3) (Entered: 11/04/2022) |
| 11/04/2022 | | Notice of Appeal to the Federal Circuit following 39 Notice of Appeal (E-Filed) by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. Filing fee $ 505, receipt number ATXWDC-16718578. (jv2) (Entered: 11/15/2022) |
| 11/14/2022 | 40 | USCA ORDER DISMISSING Appeal (re Dkt. 39 Notice of Appeal) as erroneously docketed in the Fifth Circuit Court of Appeal. The appeal is addressed to the Federal Circuit. (jv2) (Entered: 11/15/2022) |
| 11/15/2022 | 41 | Remark: Information Sheet and Transmittal Letter to the US Court of Appeals for the Federal Circuit. (jv2) (Entered: 11/15/2022) |
| 11/15/2022 | 42 | TRANSCRIPT REQUEST by Raevene Adams, Rachel Creager Ireland, Darceal Tobey. (Rosenthal, Daniel) (Entered: 11/15/2022) |

## PACER Service Center

### Transaction Receipt

02/07/2023 09:52:51

| | | | |
|---|---|---|---|
| **PACER Login:** | cayleigh.soderholm | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-01049-LY |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| RACHEL CREAGER IRELAND, RAEVENE ADAMS and DARCEAL TOBEY, on behalf of themselves and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 1:21-CV-01049 |

**Class Action Complaint Seeking Money Damages from Defendant United States Under the Little Tucker Act, 28 U.S.C. § 1346, and CARES Act, 15 U.S.C. § 9021, for Failure to Provide Pandemic Unemployment Assistance Payments**

## <u>INTRODUCTION</u>

1. In the wake of the unprecedented public health emergency and economic crisis caused by the COVID-19 pandemic the United States Congress sought to ensure that workers affected by the pandemic would receive federal financial support. It initially did so through the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) enacted on March 27, 2020.

2. In the Act, Congress provided for "pandemic unemployment assistance" or PUA for individuals who were not covered by preexisting unemployment compensation programs or who had exhausted the benefits available under such programs. The Act mandates that the Secretary of Labor "shall provide" PUA payments to covered individuals. *See* 15 U.S.C. § 9021(b).

3. The Act further directs the Secretary to provide such benefits "through agreements with States" that have an "adequate system for administering such assistance." *See*

15 U.S.C. § 9021(f)(1). However, the federal government was responsible for 100% of the cost of the program, including both benefit payments and administrative expenses, *see* 15 U.S.C. § 9021(f)(2), and nothing in the CARES Act or its amendments limited PUA benefits to residents of states that the Secretary determined to have an "adequate system" for administering benefits.

4. The PUA program was originally slated to end on December 30, 2020 but was extended by Congress through September 6, 2021. *See* 15 U.S.C. § 9021(c)(1)(A).

5. In describing the Secretary of Labor's obligation to provide PUA payments, the language of the CARES Act is clear and mandatory. It does not grant discretion to the Secretary or states to deny PUA payments guaranteed by the Act to qualified individuals.

6. Nevertheless, between approximately June 12 and July 3, 2021, prior to the end date of the PUA program, recipients in 20 states had their benefits terminated prematurely, when their states chose to end their administration of the program, including Texas (on June 26, 2021), Alabama (on June 19, 2021), Arkansas (on July 26, 2021), Georgia (on June 27, 2021), Idaho (on June 19, 2021), Iowa (on June 12, 2021), Louisiana (on July 31, 2021), Mississippi (on June 12, 2021), Missouri (on June 12, 2021), Montana (on June 27, 2021), Nebraska (on June 19, 2021), New Hampshire (on June 19, 2021), North Dakota (on June 19, 2021), Oklahoma (on June 26, 2021), South Carolina (on June 30, 2021), South Dakota (on June 26, 2021), Tennessee (on July 3, 2021), Utah (on June 26, 2021), West Virginia (on June 19, 2021) and Wyoming (on June 19, 2021) (collectively "Terminating States").

7. The United States did nothing to ensure that the affected recipients would receive benefits notwithstanding their states' decision to cease administering the program. Through this inaction, the United States disregarded the mandate of the Act that the "Secretary *shall provide* to any covered individual unemployment benefit assistance" while such individual was eligible

and the PUA benefit entitlement remained in effect. 15 U.S.C. § 9021(b) (emphasis added).

8. Plaintiffs Rachel Creager, Raevene Adams and Darceal Tobey, all residents of Texas, were three of the individuals affected by this unlawful discontinuation of benefits when the state of Texas terminated its administration of the PUA program on June 26, 2021.

9. Each Named Plaintiff had been determined to be eligible to receive PUA benefits by the Texas Workforce Commission ("TWC") pursuant to the eligibility requirements set forth in the CARES Act; each was receiving PUA benefits when the governor of Texas, Governor Abbott, terminated Texas's administration of the program; and each would have continued to receive PUA benefits but for failure of the United States to pay those benefits after Texas chose to stop administering the benefits prematurely.

10. Like the Named Plaintiffs in this case, hundreds of thousands of residents of Texas and the other Terminating States were denied PUA benefits for which they had been found eligible by their respective state unemployment agency pursuant to the eligibility requirements set forth in the CARES Act. These individuals would have continued receiving benefits if not for the failure of the United States to pay those benefits after their states chose to stop administering the benefits prior to September 6, 2021.

11. The Named Plaintiffs bring this civil action against the United States on their own behalf and on behalf of a class of similarly situated PUA-eligible individuals (the "Class") to recover damages from the United States for its failure to comply with the CARES Act and the resulting loss of money to Plaintiffs and all members of the Class.

## PARTIES

12. Plaintiff Rachel Creager:

(a) is and, at all relevant times, has been a resident of Austin, Texas;

(b) had been employed as a massage therapist at The Natural Way d/b/a Massage Studio up until on or about March 26, 2020 when the studio closed due to the pandemic;

(c) did not qualify for regular unemployment because she had not had sufficient earnings in the preceding four quarters;

(d) was found to be eligible to receive PUA benefits by the TWC on May 14, 2020;

(e) was eligible to receive PUA benefits from approximately May 25, 2020 up to and including the week ending June 26, 2021;

(f) stopped receiving PUA benefits effective on June 26, 2021 as a direct result of Texas's withdrawal from the PUA program effectuated by the Texas governor, Gov. Abbott;

(g) continued to meet the eligibility requirements to receive PUA benefits set forth in the CARES Act and would have continued to receive PUA benefits following June 26, 2021 but for the withdrawal from the PUA benefit program by the state; and

(h) claims damages of not more than $10,000.

13. Plaintiff Raevene Adams:

(a) is and, at all relevant times, has been a resident of Austin, Texas;

(b) had been employed as a customer service cashier at a Jimmy John's Gourmet Sandwich shop in downtown Austin, Texas up until approximately the beginning of April, 2020 when the store closed due to the pandemic;

(c) did not qualify for regular unemployment because she had not had sufficient

earnings in the preceding four quarters;

(d) was found to be eligible to receive PUA benefits by the TWC on April 19, 2020;

(e) was eligible to receive PUA benefits from April 19, 2020 up to and including the week ending June 26, 2021;

(f) stopped receiving PUA benefits effective on June 26, 2021 as a direct result of Texas's withdrawal from the PUA program effectuated by the Texas governor, Gov. Abbott;

(g) continued to meet the eligibility requirements to receive PUA benefits set forth in the CARES Act and would have continued to receive PUA benefits following June 26, 2021 but for the withdrawal from the PUA benefit program by the state; and

(h) claims damages of not more than $10,000.

14. Plaintiff Darceal Tobey:

(a) is and, at all relevant times, has been a resident of Austin, Texas;

(b) had been employed as a computer repair technician for Technical Integration Group repairing computers for schools up until on or about March 26, 2020 when he was laid off due to the pandemic;

(c) did not qualify for regular unemployment because he had not had sufficient earnings in the preceding four quarters;

(d) was found to be eligible to receive PUA benefits by the TWC on or about March 22, 2020;

(e) was eligible to receive PUA benefits from March 22, 2020 up to and

including the week ending June 26, 2021;

(f) stopped receiving PUA benefits effective on June 26, 2021 as a direct result of Texas's withdrawal from the PUA program effectuated by the Texas governor, Gov. Abbott;

(g) continued to meet the eligibility requirements to receive PUA benefits set forth in the CARES Act and would have continued to receive PUA benefits following June 26, 2021 but for the withdrawal from the PUA benefit program by the state; and

(h) claims damages of not more than $10,000.

15. Defendant United States was required under the CARES Act, as discussed further below, to provide for payments to eligible recipients of pandemic unemployment assistance (PUA). The obligation was to be carried out by the Secretary of the Department of Labor (DOL), an agency in the Executive Branch of the United States whose purpose is to "to foster, promote and develop the welfare of the wage earners of the United States." 29 U.S.C.§ 551.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction over this civil action under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (granting jurisdiction concurrent with the federal court of claims on district courts for "Little Tucker Act" claims in civil actions not exceeding $10,000).

17. This Court is the proper venue for this action arising under the Little Tucker Act as Plaintiffs reside in this judicial district. *See* 28 U.S.C. § 1402(a)(1).

18. The relevant provisions of the CARES Act, codified at 15 U.S.C § 9021, are money-mandating under applicable law.

**STATUTORY BACKGROUND**

19. On March 27, 2020, shortly after it was passed unanimously by the Senate, the Coronavirus Aid, Relief and Economic Security Act (CARES Act) was signed into law by then President Donald Trump. Among other things, the Act sought to stabilize the economy in the wake of the public health emergency caused by COVID-19. To do so, the Act provided financial support and assistance to individuals suffering from the economic effects of the pandemic.

20. Title II of the Act was entitled the Relief for Workers Affected by Coronavirus Act. It provided financial enhancements and support for several existing state and federal unemployment compensation laws and programs.

21. In addition to bolstering existing unemployment compensation programs, the Act created a new program called Pandemic Unemployment Assistance (PUA), through provisions now codified at 15 U.S.C. § 9021, *et seq.* The PUA program aimed to provide benefits to individuals who were not covered by preexisting unemployment compensation programs, but who were unable to work due to COVID-19.

22. In Section 2102(b) of the Act (now codified at 15 U.S.C. § 9021(b)), Congress directed the Secretary of Labor to provide payments under the new PUA program to eligible recipients. Specifically, that section read as follows:

> ASSISTANCE FOR UNEMPLOYMENT AS A RESULT OF COVID-19. Subject to subsection (c), the Secretary [of Labor] shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially unemployed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation (as that term is defined in section 85(b) of title 26, United States Code) or waiting period credit.

23. In Section 2102(c) of the Act (now codified at 15 U.S.C. § 9021(c)), Congress established the time period in which PUA benefits would be available. The end date was originally set to December 31, 2020. Section 2102(c) also established other provisions regarding timing, procedure, and duration of benefits including setting a maximum of 79 weeks of

assistance for any covered individual inclusive of any period in which the individual received regular or extended unemployment benefits under a non-PUA program.

24. The end date of December 31, 2020 was later extended by two acts of Congress to September 6, 2021. *See* P.L. 116-260 and P.L. 117-2.

25. Congress defined a "covered individual" for purposes of the PUA program in Section 2102(a)(3) of the Act (codified at 15 U.S.C. § 9021(a)(3)). In short, a "covered individual" was an individual who was not eligible for regular unemployment benefits (such as employees who did not have sufficient earnings in the prior earnings period, many independent contractors and self-employed persons), but who was nevertheless unable to work because of COVID-19. The specific statutory definition was as follows:

> **(i)** is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title;
>
> **(ii)** provides self-certification that the individual—
>
> > **(I)** is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because—
> >
> > > **(aa)** the individual has been diagnosed with COVID–19 or is experiencing symptoms of COVID–19 and seeking a medical diagnosis;
> > >
> > > **(bb)** a member of the individual's household has been diagnosed with COVID–19;
> > >
> > > **(cc)** the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID–19;
> > >
> > > **(dd)** a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID–19

public health emergency and such school or facility care is required for the individual to work;

**(ee)** the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID–19 public health emergency;

**(ff)** the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID–19;

**(gg)** the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID–19 public health emergency;

**(hh)** the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID–19;

**(ii)** the individual has to quit his or her job as a direct result of COVID–19;

**(jj)** the individual's place of employment is closed as a direct result of the COVID–19 public health emergency; or

**(kk)** the individual meets any additional criteria established by the Secretary [of Labor] for unemployment assistance under this section; or

**(II)** is self-employed, is seeking part-time employment, does not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, and meets the requirements of subclause (I); and

**(iii)** provides documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment not later than 21 days after the later of the date on which the individual submits an application for pandemic unemployment assistance under this section or the date on which an individual is directed by the to submit such documentation in accordance with section 625.6(e) of title 20, Code of Federal Regulations, or any successor thereto, except that such deadline may be extended if the individual has shown good cause under applicable State law for failing to submit such documentation; and

**(B)** does not include—

**(i)** an individual who has the ability to telework with pay; or

**(ii)** an individual who is receiving paid sick leave or other paid leave benefits, regardless of whether the individual meets a qualification described in items (aa) through (kk) of subparagraph (A)(i)(I).

15 U.S.C. § 9021(a)(3).

26. Congress directed that the Secretary of Labor should provide for PUA payments by entering into agreements with states, which the Secretary determined to have an "adequate system for administering such assistance." Specifically, Section 2102(f)(1) of the Act (codified at 15 U.S.C. § 9021(f)(1)), reads as follows:

> The Secretary shall provide the assistance authorized under subsection (b) through agreements with States which, in the judgment of the Secretary, have an adequate system for administering such assistance through existing State agencies, including procedures for identity verification or validation and for timely payment, to the extent reasonable and practicable.

27. Though administered by states that had adequate systems for doing so, PUA benefits and their administration by states were solely funded by the federal government. Specifically, the Act provided for the federal government to pay "100 percent" of both the benefits provided to recipients and the administrative expenses incurred by states in paying the PUA benefits. *See* 15 U.S.C. 9021(f)(2).

28. In sum, through these provisions of the CARES Act, Congress created a new unemployment benefit for individuals affected by COVID-19 who were not covered by existing unemployment compensation programs, such as many independent contractors, "gig workers," self-employed individuals, church employees, student workers, employees without sufficient earnings in the base earnings period and others. Congress directed the Department of Labor to provide payments to eligible recipients and instructed the Department to do so by entering into agreements with states, to the extent those states had an adequate system for administering

benefits. And Congress established that the PUA benefit would be available to eligible persons through September 6, 2021.

29. Importantly, nothing in the statute granted authority or discretion to the Secretary of Labor to cease providing for PUA benefits prior to the end date established in the legislation. Rather, the Act stated that the Secretary of Labor "shall provide" the payments. 15 U.S.C. § 9021(b). Similarly, nothing in the statute granted power or discretion to a participating state to terminate the program prematurely.

30. The Department of Labor itself recognized the non-discretionary nature of the program. On June 5, 2020, the Department's Solicitor Kate O'Scannlain and Assistant Secretary Pallasch wrote to its Inspector General Scott Dahl: "The Secretary of Labor (Secretary) must provide PUA benefits to an individual who is determined to be eligible . . . The relevant language is not discretionary."

31. Indeed, Congress's intent to create a non-discretionary entitlement to PUA benefits is reflected in the difference between the language it used in establishing the PUA program and the language it used elsewhere in the CARES Act in providing support for preexisting unemployment compensation programs. Specifically, in those other sections, Congress provided that participating states could "terminate . . . agreement[s]" with the Secretary of Labor in relation to unemployment benefits by "providing 30 days' written notice." *See* 15 U.S.C. § 9023(a); 15 U.S.C. § 9024(a); 15 U.S.C. § 9025(a).

32. In contrast, Congress included no early termination language in the PUA provisions. By deciding not to do so, Congress made clear that it did not contemplate "terminat[ion]" of agreements to provide PUA benefits prior to the end date for such benefits established in the statute.

33. Further, states were not automatically entitled to participate in the administration of PUA merely through filing an application with the Secretary, as was the case with other unemployment benefit programs under the CARES Act. Instead, in Section 2102(f)(1), the Act required the Secretary of Labor to enter into such agreements only if the Secretary determined that the state had "an adequate system for administering such assistance through existing State agencies."

34. Through this provision, Congress made clear that the Secretary of Labor had the obligation to guarantee the payment of PUA benefits, including by vetting states that would be making PUA payments on behalf of the United States and ensuring that they could do so effectively.

35. Although the Act stated that the United States should administer the program through states to the extent the Secretary determined that such states had adequate systems for doing so, the Act's mandate that the United States pay benefits is not conditional or dependent on state administration. Rather, in the absence of an adequate state system, the United States was nevertheless required to pay benefits, such as by paying those benefits directly or arranging for one participating state to administer benefits for residents in other states.

## FACTUAL ALLEGATIONS

36. Shortly after the enactment of the CARES Act, the Department of Labor entered into agreements with states, including Texas and the other Terminating States as defined *supra*, for them to distribute PUA benefits to eligible residents of those states. As provided for in the statute, the costs of PUA benefits and of PUA's administration by the states were fully funded by the United States.

37. Pursuant to the agreements, Texas and the other Terminating States began making

payments of PUA benefits to their eligible residents as the agent of DOL.

38. However, contrary to the text of the Act—which excluded early termination provisions from the sections addressing PUA benefits, as discussed above—the Department included early termination provisions in its agreements with states regarding PUA benefits.

39. On April 5, 2020, the Department's Employment and Training Administration—Advisory System, issued an "Advisory: Unemployment Insurance Program Letter No. 16-20 (Letter 16-20) addressed to "STATE WORKFORCE AGENCIES." The title of the letter was "Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020–Pandemic Unemployment Assistance (PUA) Program Operating, Financial, and Reporting Instructions." Among the instructions contained in Letter No. 16-20 appeared the following:

> 5. <u>Termination of PUA Agreement</u>. Either party, upon thirty days written notice, may terminate the PUA Agreement. The Department reserves the right to terminate this Agreement if it determines that the State does not have an adequate system for administering such assistance, including because the State is not adequately ensuring that individuals receiving benefits under the PUA Program are eligible for such benefits. In the case of termination, the PUA period will end 30 days after the date one of the parties to the agreement notifies the other party of its election to terminate the PUA agreement. No PUA payments may be made with respect to weeks which begin after the date the termination of the agreement is effective. However, PUA is payable for weeks of unemployment ending on or before such termination date.

40. To the extent the letter implied that the Department of Labor would not continue to provide PUA benefits in the event that states decided to terminate their agreement with the Department, the letter was contrary to the CARES Act's provisions since Congress made the payment of benefits mandatory and chose not to give states the right to terminate their PUA agreements with the Secretary. Further, Congress did not grant the Department of Labor the authority to delegate to any state the discretion to decide to deprive eligible recipients of PUA benefits prior to the statutory end date.

41. On May 17, 2021, Texas Governor Greg Abbott sent a letter in which he directed the Texas Workforce Commission (TWC) to terminate the state of Texas's administration of the Pandemic Unemployment Assistance (PUA) program effective June 26, 2021.

42. As discussed above, Plaintiffs Creager, Adams and Tobey were each: (a) found to be eligible for PUA benefits by Texas on or about May 14, 2020, April 19, 2020 and March 22, 2020, respectively, (b) eligible in the week following the termination of the program and (c) remained eligible through September 6, 2021. However, after Abbott purported to terminate the state's administration of the program on June 26, 2021, Plaintiffs Creager, Adams and Tobey received no benefits from Texas or the United States.

43. Each of the other Terminating States likewise terminated their respective state's administration of the PUA program at some point prior to the end of the PUA program on September 6, 2021.

44. Other similarly situated individuals who were residents of each of the Terminating States likewise were each: (a) found to be eligible for PUA benefits by their state prior to the state's termination of administration of the PUA program on June 12, 2021; June 19, 2021; June 26, 2021; June 27, 2021; June 30, 2021; July 3, 2021; and July 31, 2021; respectively and (b) eligible in the week following the termination of the program. However, after the governors of each of the Terminating States, including Texas, terminated their respective state's administration of the PUA program, such individuals received no benefits from their respective state or the United States.

45. After Texas and the other Terminating States notified the Secretary of Labor of their withdrawal from the administration of PUA benefits, Defendant United States failed to provide Plaintiffs Creager, Adams and Tobey and other eligible recipients in those states with the

mandated PUA unemployment compensation benefits they remained entitled to receive pursuant to the CARES Act, and its amendments.

46. Through this failure, the United States violated the command of the Act that it "shall provide" PUA benefits to eligible recipients. 15 U.S.C. § 9021(b).

**CLASS ALLEGATIONS**

47. The Plaintiffs' claims are susceptible to class certification pursuant to Rule 23(a) and (b)(3), Fed.R.Civ.P.

48. The Class is defined to include "All individuals who reside in the states of Texas, Alabama, Arkansas, Georgia, Idaho, Iowa, Louisiana, Mississippi, Missouri, Montana, Nebraska, New Hampshire, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, West Virginia and Wyoming ("Terminating States") who were determined to be eligible to receive Pandemic Unemployment Assistance ("PUA") benefits pursuant to the eligibility criteria established by Congress in the CARES Act and its amendments by each individual class member's respective state agency up to and including the date each respective Terminating State terminated its administration of the PUA program and who remained eligible for benefits under the CARES Act and its amendments for some period after their respective states' termination dates."

49. Certification of the class pursuant to Rule 23(a) and (b)(3) is warranted because:

a. This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and the Plaintiffs reside in this judicial district.

b. The class is so numerous that joinder of all members is impracticable. On information, there are hundreds of thousands of individuals in the

Terminating States who meet the proposed class definition.

c. One or more questions of law or fact are common to the class, including:

(i) Whether the CARES Act and its amendments are money-mandating;

(ii) Whether the CARES Act and its amendments required the Secretary of Labor to provide the PUA payments to eligible individuals in the states where distribution of PUA funds through a state was not reasonable and practicable because each such state prematurely terminated its administration of the PUA benefit program.

d. Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs' Counsel are competent and experienced in litigating Little Tucker Act claims and class actions.

e. The claims of the Plaintiffs are typical of the claims of the members of the class in that, like each of the Plaintiffs, the members of the class were determined to be eligible to receive PUA benefits by the respective state agency up to the date each respective Terminating State terminated its administration of the PUA program and would have continued to be eligible for and receive PUA benefits but for each respective state's decision to prematurely terminate its administration of the PUA benefits program.

f. The class representatives and the members of the class have been subject to, and challenge, the same action by the US DOL in terminating PUA payments prior to the end of the PUA benefits program following each Terminating State's administration of the program.

g. Issues common to the class predominate over issues unique to individual class members, and pursuit of the claims as a class action is superior to other available methods for the fair and efficient resolution of this controversy; and

h. Adjudication of these claims as a class action can be achieved in a manageable manner.

50. Pursuit of the claims set forth herein through a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

51. On information and belief, the members of the proposed class are each entitled to not more than $10,000 in damages.

**COUNT I**
**Little Tucker Act Claim**
**On behalf of Plaintiffs and the Class**

52. Plaintiffs reallege and incorporate herein the paragraphs set forth above.

53. As set forth above, each of the Plaintiffs was determined to be eligible for PUA benefits by the TWC pursuant to the criteria set forth by Congress in the CARES Act and its amendments.

54. As set forth above, each of the Plaintiffs continued to meet the eligibility criteria for PUA benefits set forth by Congress in the CARES Act and its amendments and would have continued to receive PUA benefits up to the benefit week of September 6, 2021 but for the action of the governor of the state of Texas in terminating Texas's administration of the PUA program on June 26, 2021.

55. Other similarly situated individuals in each of the Terminating States were likewise determined by their state unemployment agency to be eligible for PUA benefits pursuant to the criteria set forth by Congress in the CARES Act and its amendments and would

have continued to receive PUA benefits but for the action of governor of each Terminating State in terminating that state's administration of the PUA program prior to the termination of the PUA program on September 6, 2021.

56. By failing to ensure PUA payments were paid to Plaintiffs and the members of the class during this period, the United States violated the mandate in the CARES Act that it "shall provide" benefits to eligible recipients.

57. The Little Tucker Act creates a cause of action, and waives sovereign immunity over such an action, when a statute can "fairly be interpreted as mandating compensation by the Federal Government," subject to certain exceptions. *Maine Community Health Options v. Moda Health Plan*, 140 S. Ct. 1308, 1329 (2020).

58. Here, the CARES Act can be fairly interpreted as mandating compensation by the Federal Government to the Plaintiffs because the Act states that the Department of Labor "shall provide" PUA benefits to eligible recipients. 15 U.S.C. § 9021(b). *See Maine Community*, 140 S. Ct. at 1329 (finding that a statute created a cause of action when it stated that the federal government "shall provide" for payments and "shall pay"). No exception applies that would deprive Plaintiffs and the class of a cause of action or recovery here.

59. Consequently, under the Little Tucker Act and CARES Act, Plaintiffs have stated a cause of action on their own behalf and on behalf of the class for the wrongful denial of PUA benefits to Plaintiffs and the class.

60. Each Plaintiff alleges that s/he is entitled to recover damages in the amount of the PUA unemployment benefits s/he was entitled to but did not receive from Defendant United States from the date of each Terminating State's cancellation of its administration of the PUA benefit program to September 6, 2021.

61. Plaintiffs likewise allege that members of the class are entitled to recover damages in the amount of the PUA unemployment benefits each class member was entitled to but did not receive from Defendant United States from the date of each Terminating State's cancellation of its administration of the PUA benefit program up to the benefit week of September 6, 2021.

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiffs and the Class respectfully pray that this Court:

A. Allow this action to proceed as a class action against the Defendant United States pursuant to Fed. R. Civ. P. 23;

B. Enter a judgment in favor of Plaintiffs and the Class, and against the United States, for money damages in the amount of PUA benefits each Plaintiff and each Class Member should have received from the date Texas and each other Terminating State terminated its administration of the PUA benefit program up through the date the PUA program ended pursuant to the terms of the CARES Act and its amendments or the date on which each Plaintiff and each Class Member ceased being eligible for such benefits;

C. Award attorney's fees, expenses and costs in bringing this action under the Equal Access to Justice Act, 28 U.S.C. § 2412, and otherwise;

D. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Anna Bocchini
Anna Bocchini (TX Bar # 24057410)
(Counsel of Record)
Equal Justice Center
314 E Highland Mall Blvd, Suite 401
Austin, TX 78752
(512) 474-0007 ext. 105
abocchini@equaljusticecenter.org

Christopher J. Williams (IL Bar #6284262)
*(pro hac vice to be filed)*
Sheila Maddali (NJ Bar #005562010)
*(pro hac vice to be filed)*
NATIONAL LEGAL ADVOCACY NETWORK
1 N LaSalle St., Suite 1275
Chicago, Illinois 60602
(312) 795-9121
cwilliams@n-lan.org
smaddali@n-lan.org

Daniel M. Rosenthal (D.C. Bar #1010473)
*(pro hac vice to be filed)*
Ryan E. Griffin (D.C. Bar #1007078)
*(pro hac vice to be filed)*
JAMES & HOFFMAN, P.C.
1629 K Street NW, Suite 1050
Washington, D.C. 20006
(202) 496-0500
dmrosenthal@jamhoff.com
regriffin@jamhoff.com

Michael P. Persoon (IL Bar ## 6293547)
*(pro hac vice to be filed)*
DEPRES, SCHWARTZ, & GEOGHEGAN, LTD.
77 W. Washington St., Ste. 711
Chicago, Illinois 60602
(312) 372-2511
mpersoon@dsgchicago.com

*Attorneys for Plaintiffs*

Dated: November 22, 2021

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **RACHEL CREAGER IRELAND, ON BEHALF OF HERSELF AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS; RAEVENE ADAMS, ON BEHALF OF HERSELF AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS; AND DARCEAL TOBEY, ON BEHALF OF HIMSELF AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS;** *Plaintiffs* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **No. A-21-CV-01049-LY** |
| **v.** | §<br>§<br>§ | |
| **UNITED STATES OF AMERICA,** *Defendant* | §<br>§ | |

**<u>REPORT AND RECOMMENDATION</u>**
**<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court is the United States of America's Motion to Dismiss, Dkt. 13, and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I. BACKGROUND

In this case, Plaintiff Rachel Creager Ireland, on behalf or herself and all other similarly situated individuals, sues the United States of America for failing to provide unemployment benefits allowed under the Coronavirus Aid, Relief, and Economic

Security Act, after the State of Texas opted out of the Act. The United States moves to dismiss asserting that Plaintiffs cannot state a claim, arguing nothing in the CARES Act allows the Department of Labor, who administers the Act, to bypass the states and pay benefits directly to citizens when their states opt out. The undersigned agrees.

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

### A. Background of the CARES Act

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. § 9001, *et seq.*, commonly denominated the CARES Act, which created new, temporary, federal unemployment insurance programs. Congress has amended the CARES Act twice since its passage for the purpose of extending the time period of its coverage. The CARES Act established Pandemic Unemployment Assistance, a temporary federal unemployment program that

provided up to seventy-nine weeks of benefits to certain individuals who were not otherwise eligible for state unemployment insurance benefits. The CARES Act states that "the Secretary shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially employed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation …." 15 U.S.C. § 9021(b). "Covered individuals" are, in relevant part, those individuals who are not eligible for certain other compensation or benefits, and who are otherwise able to and available for work under state law, but are unemployed, partially unemployed, or unable or unavailable to work for certain designated reasons relating to the COVID-19 pandemic. 15 U.S.C. § 9021(a)(3).

On December 27, 2020, the unemployment provisions of the CARES Act, including PUA, were extended through March 14, 2021, by the Continued Assistance for Unemployed Workers Act of 2020, Pub. L. No. 116-260, §§ 201, 203-204, 206. On March 11, 2021, PUA and other benefits were further extended through September 6, 2021, by the American Rescue Plan Act of 2021. Pub. L. No. 117-2, §§ 9011, 9013-9014, 9016. On September 6, 2021, the temporary programs expired.

The CARES Act distributes PUA benefits through states, requiring that: "[t]he Secretary shall provide the assistance authorized under subsection (b) through agreements with States which, in the judgment of the Secretary, have an adequate system for administering such assistance through existing State agencies, including procedures for identity verification or validation and for timely payment, to the extent

reasonable and practicable." 15 U.S.C. § 9021(f)(1). The amount of unemployment compensation paid by a state for individuals such as plaintiffs, who are allegedly unemployed due to the COVID-19 pandemic is "computed under the provisions of applicable State law," 20 C.F.R. § 625.6(a), and increased by a weekly payment of either $600 or $300, depending on the time period of the unemployment, 15 U.S.C. § 9023(b)(3)(A). 15 U.S.C. § 9021(d)(2). States are in turn reimbursed for the assistance they provide and for administrative expenses: "[t]here shall be paid to each State which has entered into an agreement under this subsection an amount equal to 100 percent of … the total amount of assistance provided by the State pursuant to such agreement; and … any additional administrative expenses incurred by the State by reason of such agreement …." *Id.* § 9021(f)(2).

With respect to the PUA program, the CARES Act incorporates the regulations governing Disaster Unemployment Assistance under the Stafford Act, 42 U.S.C. § 5177(a); 20 C.F.R. Part 625, unless those regulations conflict with the CARES Act. 15 U.S.C. § 9021(h). Like the CARES Act, 15 U.S.C. § 9021(f)(1), the DUA program includes a requirement that it be administered by states through agreements with the Secretary, and that benefits are payable to individuals only for weeks in which an agreement is in place with the state. 42 U.S.C. § 5177(a). The regulations reflect these requirements, stating that "DUA is payable to an individual only by an applicable State … and … [o]nly pursuant to an Agreement entered into … with respect to weeks in which the Agreement is in effect …." 20 C.F.R. § 625.12(b)(1). Since 1977, DUA regulations have provided that an agreement with a state is

required in order for benefits to be payable in the state. Eligibility Requirements for Disaster Unemployment Assistance, 42 Fed. Reg. 46714 (Sept. 16, 1977) (codified at 20 C.F.R. § 625.4(b) (1977)); The Applicable State for an Individual, 42 Fed. Reg. 46716-17 (codified at 20 C.F.R. § 625.12(b)(1) (1977)); https://www.govinfo.gov/content/pkg/FR-1977-09-16/pdf/FR-1977-09-16.pdf#page=1.

On March 28, 2020, the State of Texas, entered into an agreement with DOL to pay PUA. On May 17, 2021, the Governor of Texas sent a letter to the Secretary of DOL stating that Texas would "terminate its participation in the Agreement Implementing the Relief for Workers Affected by Coronavirus Act, effective June 26, 2021." https://gov.texas.gov/uploads/files/press/O-WalshMartin202105171215.pdf. The Governor asserted that "these unemployment benefits [are] no longer necessary." *Id.* He further stated that "[t]he termination of this agreement means that Texas will opt out of … Pandemic Unemployment Assistance …." *Id.*

**B. Plaintiffs' Claims**

Plaintiffs, residents of the State of Texas, allegedly lost their employment due to the COVID-19 pandemic and received PUA benefits from the State until Texas withdrew from its agreement with the Secretary and terminated its payment of PUA benefits on June 26, 2021. Plaintiffs claim on their own behalf and on behalf of other similarly situated individuals, that the Secretary is obligated to directly pay PUA benefits to covered individuals for the weeks of unemployment ending before September 6, 2021, even after the State terminated its agreement with the Secretary and its participation in the PUA program. Plaintiffs make their claims pursuant to the Little Tucker Act, 28

U.S.C. § 1346(a)(2), which permits claims for damages when the United States has a statutory obligation to pay certain monies.

Plaintiffs contend that the federal government violated 15 U.S.C. § 9021(b) when it discontinued making PUA payments to covered individuals for the weeks of unemployment ending before September 6, 2021, by virtue of the allegedly mandatory "shall" language of the CARES Act. Specifically, Plaintiffs rely on the PUA program language, "the Secretary [of Labor] *shall provide to any covered individual unemployment benefit assistance*." 15 U.S.C. § 9021(b) (emphasis added).

### C. Analysis

The United States argues that Plaintiffs' interpretation of the CARES Act conflicts with the plain language of the statute and their complaint should therefore be dismissed. Plaintiffs argue that Congress chose the language and structure of the PUA provision to establish mandatory federal relief to counter a nationwide economic crisis, while explicitly differentiating the PUA program from similar programs allowing states to terminate benefits. Plaintiffs acknowledge that although the Secretary was required to use states as its agents for making such payments when they were willing and able to do so, 15 U.S.C. § 9021(f)(1), they assert that ultimate payment obligation rested with the Secretary. Plaintiffs assert that nothing in the statute permitted states to withdraw from the program, let alone to nullify the Secretary's obligation through such withdrawal.

"The starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *U.S. v. Pruett*, 681 F.3d 232, 242 (5th Cir. 2012). And "[a]bsent a clearly

expressed legislative intention to the contrary, a statute's language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n*, 447 U.S. at 108; *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 384 (5th Cir. 2012) (same). "[W]hen interpreting a statute, it is necessary to give meaning to all its words and to render none superfluous." *United States v. Molina-Gazca*, 571 F.3d 470, 474 (5th Cir. 2009).

The plain language of the CARES Act states that the payment of benefits under the Act is predicated on the existence of an agreement with a state. Specifically, the Act states that "[t]he Secretary shall provide … assistance … through agreements with States …." 15 U.S.C. § 9021(f)(1). The states are responsible for "provid[ing] [the assistance] ... pursuant to such agreement," and then are reimbursed by the Secretary. *Id.* § 9021(f)(2).

Plaintiffs make much of the fact that nothing in the CARES Act permitted states to withdraw from the program. Dkt. 18, at 1. However, the CARES Act does not include a mechanism for the Secretary to pay out benefits under the Act in the absence of an agreement with the relevant state, which it clearly could have done. *See* Unemployment Compensation for Federal Employees, 5 U.S.C. § 8503(a) (containing a provision specifically addressing "compensation absent state agreements"). Moreover, Congress did not appropriate funds for the Secretary to provide benefits in the absence of state action. This shows Congress intended for the funds to solely be administered by the states. While Plaintiffs argue that the statute also does not specifically provide for a mechanism for a state like Texas to opt out,

Congressional intent cannot be gleaned from the absence of such a provision—especially in light of the specific language in the relevant regulations, which provided that benefits could only be provided through Agreements with the states. *Rotkiske v. Klemm*, ––– U.S. ––––, 140 S. Ct. 355, 360-61, 205 L.Ed.2d 291 (2019) ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" (citation omitted)). The fact that Congress did not specifically include an opt-out provision was not necessary in light of the statutory language and implementing regulations requiring an Agreement with the Secretary.

Plaintiffs rely on *Maine Cmty. Health Options v. United States*, ––– U.S. –––, 140 S. Ct. 1308, 1319 (2020), in support of their argument that a statement "the Secretary shall pay" in the Affordable Care Act, gave rise to a mandatory obligation to pay insurers under the Act. However, *Maine Community Health* can be distinguished from the instance case, because that case addressed the issue of whether a rider on an appropriation act impliedly repealed a statutory payment obligation found in the statute. The Supreme Court held that it did not because, in part, "a mere failure to appropriate does not repeal or discharge an obligation to pay." *Id.* at 1324. The case before the undersigned case does not address a failure to appropriate funds (payable to participating insurers, and not individual beneficiaries), but a failure to provide an alternative mechanism to pay funds to beneficiaries in the absence of state participation. The undersigned finds this case is not applicable, and that Congress' failure to identify an alternative payment method supports a plain reading of the statute that participation by the states is required for

receipt of benefits under the CARES Act, and not that Congress intended that states could not opt out of the CARES Act. The mandatory "shall" language in the CARES Act is limited to instances where the Secretary and the state enter an agreement, while the Secretary's obligation to provide payment to eligible citizens of participating states is mandatory and non-discretionary.

The DUA regulations made applicable to the PUA through 15 U.S.C, § 9021(g), "[e]xcept as otherwise provided in this section or to the extent there is a conflict" confirm that benefits are payable "only by an applicable State … and … [o]nly pursuant to an Agreement" with the state. 20 C.F.R. § 625.12(b)(1) (emphasis added). Hence, in the absence of an agreement between the State of Texas and the Secretary, the regulations support that Plaintiffs are not eligible to receive PUA payments. Because both the CARES Act, 15 U.S.C. § 9021(f), and the Stafford Act, 42 U.S.C. § 5177(a), use virtually the same language to require that programs be administered through agreements with states, and the DUA regulations simply implement that statutory requirement in the Stafford Act, 20 C.F.R. § 625.12(b)(1), the undersigned finds there is no conflict between the CARES Act and the DUA regulations pertaining to the predication of distribution of benefits on the existence of an agreement with a state.[1] Therefore, the DUA regulations that permit the payment of DUA benefits only where the applicable state has signed an agreement with the Secretary also apply to the PUA program.

---

[1] Plaintiffs identify various conflicts in the DUA regulations and the CARES Act, but none that are relevant to the issue before the undersigned. Dkt. 18, at 15.

Plaintiffs try to distinguish the DUA from the CARES Act, asserting the DUA contains permissive language allowing the executive branch to administer disaster benefits in its discretion. The undersigned finds that the distinction between the permissive and mandatory language in the differing statutes is irrelevant to the argument now before the Court. Congress specifically adopted the DUA regulations to apply to the CARES Act and implementation of the PUA, except to extent those regulations are inconsistent with the CARES Act itself. The negating conflict provided for in the statute is not between the CARES Act and the DUA, but the DUA's implementing regulations and the CARES Act. As stated above, none exists. Plaintiffs' argument with regard to this issue is without merit.

The undersigned finds that based on the plain language of the CARES Act requiring that the Secretary shall provide assistance through agreements with the states, 15 U.S.C. § 9021(f)(1), along with its intentional adoption of the DUA regulations, 15 U.S.C. § 9021(h), which specifically limit benefits payments to instances where there is an Agreement between the Secretary and the state, the "shall" language of the CARES Act does not obligate the Secretary to directly pay PUA benefits to covered individuals for the weeks of unemployment ending before September 6, 2021, in the absence of an Agreement with a state. Plaintiffs cannot state a claim under the Little Tucker Act upon which relief may be granted. Their claims are properly dismissed with prejudice.

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** the United States of America's Motion to Dismiss, Dkt. 13, and **DISMISS WITH PREJUDICE** Plaintiffs' claims for failure to state a claim. It is **FURTHER ORDERED** that this cause of action is **REMOVED** from the docket of the undersigned.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED June 8, 2022.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

RACHEL CREAGER IRELAND, RAEVENE ADAMS and DARCEAL TOBEY, on behalf of themselves and all other similarly situated individuals,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 1:21-CV-01049-LY

**NOTICE OF APPEAL**

Notice is hereby given that Plaintiffs Rachel Creager Ireland, Raevene Adams, and Darceal Tobey, on behalf of themselves and all others similarly situated, hereby appeal to the United States Court of Appeals for the Federal Circuit from this Court's judgment dated September 6, 2022; the accompanying order, dated September 6, 2022; and the report and recommendation adopted by the Court, dated June 8, 2022.

Respectfully submitted,

*/s/ Daniel M. Rosenthal*
Daniel M. Rosenthal (D.C. Bar #1010473)
*(admitted pro hac vice)*
Ryan E. Griffin (D.C. Bar #1007078)
*(admitted pro hac vice)*
JAMES & HOFFMAN, P.C.
1629 K Street NW, Suite 1050
Washington, D.C. 20006
(202) 496-0500
dmrosenthal@jamhoff.com
regriffin@jamhoff.com

Anna Bocchini (TX Bar # 24057410)

Equal Justice Center
314 E Highland Mall Blvd, Suite 401
Austin, TX 78752
(512) 474-0007, ext. 105
abocchini@equaljusticecenter.org

Christopher J. Williams (IL Bar #6284262)
(*admitted pro hac vice*)
Sheila Maddali (NJ Bar #005562010)
(*admitted pro hac vice)*
NATIONAL LEGAL ADVOCACY NETWORK
1 N LaSalle St., Suite 1275
Chicago, Illinois 60602
(312) 795-9121
cwilliams@n-lan.org
smaddali@n-lan.org

*Attorneys for Plaintiffs*

Dated: November 4, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2022, I electronically submitted the foregoing document for filing using the Court's CM/ECF system, which will serve a true and correct copy of the foregoing document upon all counsel of record.

*/s/ Daniel M. Rosenthal*
Daniel M. Rosenthal