**No. 2023-1163**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

RACHEL CREAGER IRELAND, RAEVENE ADAMS, DARCEAL TOBEY, on behalf of themselves and all other similarly situated individuals,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

On Appeal from the United States District Court for the Western District of Texas in Case No. 21-1049, Judge Lee Yeakel.

# BRIEF FOR APPELLEE

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
STEVEN A. MYERS
*Attorneys, Appellate Staff*
*Civil Division, Room 7232*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8648*

# TABLE OF CONTENTS

**Page**


STATEMENT OF JURISDICTION ........ 1

STATEMENT OF THE ISSUE ........ 1

STATEMENT OF THE CASE ........ 2

A. Statutory Background ........ 2

B. Factual Background ........ 6

C. District Court Proceedings ........ 6

SUMMARY OF ARGUMENT ........ 8

ARGUMENT ........ 10

I. Standard of Review ........ 10

II. The Pandemic Unemployment Assistance Program Does Not Permit Payment Directly By The United States To Individuals ........ 11

III. Plaintiffs' Contrary Arguments Are Incorrect. ........ 15

A. 15 U.S.C. § 9021(b) Does Not Obligate The Secretary To Pay Money Directly To Individuals. ........ 15

B. Other Statutes Do Not Undermine The Plain Meaning Of 15 U.S.C. § 9021. ........ 17

C. Even If Another State Could Administer PUA For Texas Residents, That Would Not Entitle Plaintiffs To The Relief They Seek Here. ........ 22

D. The DUA Regulations Confirm That Payment May Be Made Only By States. ........ 28

E. Appeals To Statutory Purpose Are Irrelevant And Unavailing. ........ 29

CONCLUSION ........ 30

CERTIFICATE OF COMPLIANCE

ADDENDUM

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 24

*Athey v. United States*,
908 F.3d 696 (Fed. Cir. 2018) .................... 10

*Azar v. Alina Health Servs.*,
139 S. Ct. 1804 (2019) .................... 30

*Barnhardt v. Peabody Coal Co.*,
537 U.S. 149 (2003) .................... 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................... 24

*Borden v. Secretary of Health & Human Servs.*,
836 F.2d 4 (1st Cir. 1987) .................... 26

*Bowen v. Massachusetts*,
487 U.S. 879 (1988).................... 23

*Bullock v. United States*,
10 F.4th 1317 (Fed. Cir. 2021) .................... 16

*Commodity Futures Trading Comm'n v. Schor*,
478 U.S. 833 (1986) .................... 19

*Crawford v. Walsh*,
No. 21-2238, 2022 WL 971089 (D.D.C. Mar. 31, 2022) .................... 11, 12, 14

*Dickerson v. Texas*,
No. 21-2729, 2021 WL 4192740 (S.D. Tex. Sept. 15, 2021) .................... 19

*Edge Sys. LLC v. Aguila*,
635 F. App'x 897 (Fed. Cir. 2015) .................... 26

*Hardt v. Reliance Standard Life Ins.*,
560 U.S. 242 (2010) .................... 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .................... 30

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
920 F.3d 890 (5th Cir. 2019) ............................................................................. 10

*King v. Burwell*,
576 U.S. 473 (2015) ......................................................................................... 16

*Maine Cmty. Health Options v. United States,*
140 S. Ct. 1308 (2020) ................................................................. 7, 11, 15, 22, 23

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993)...........................................................................................30

*Montanile v. Board of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
577 U.S. 136 (2016) ......................................................................................... 30

*Neitzke v. Williams*,
490 U.S. 319 (1989) ......................................................................................... 10

*Printz v. United States*,
521 U.S. 898 (1997) ......................................................................................... 18

*Reeside v. Walker*,
52 U.S. (11 How.) 272 (1850) .......................................................................... 16

*Robertson v. Railroad Labor Bd.*,
268 U.S. 619 (1925)...........................................................................................21

*Rubin v. Islamic Republic of Iran*,
138 S. Ct. 816 (2018) ....................................................................................... 15

*SAS Inst. v. Iancu*,
138 S. Ct. 1348 (2018) ..................................................................................... 16

*SCA Hygiene Prods Aktiebolag v. First Quality Baby Prods., LLC*,
580 U.S. 328 (2017) ......................................................................................... 30

*United States v. Mitchell*,
463 U.S. 206 (1983)...........................................................................................11

*United States v. Wilson*,
503 U.S. 329 (1992) ......................................................................................... 21

**U.S. Constitution:**


Art. I, § 9, cl. 7 .......... 16


**Statutes:**


Administrative Procedure Act,
5 U.S.C. § 706(1) .......... 19, 23

American Rescue Plan Act of 2021,
Pub. L. No. 117-2, § 9011, 135 Stat. 4, 118 .......... 6

Continued Assistance for Unemployed Workers Act of 2020,
Pub. L. No. 116-260, § 201, 134 Stat. 1182, 1950 .......... 6

Coronavirus Aid, Relief, and Economic Security Act (CARES Act),
Pub. L. No. 116-136, 134 Stat. 281 (2020) .......... 2
§ 2102(c)(1)(A)(ii), 134 Stat. at 315 .......... 6
§ 2102(f)(1), 134 Stat. at 316 .......... 3
15 U.S.C. § 9021 .......... 2, 15, 16
15 U.S.C. § 9021(a)(3) .......... 2
15 U.S.C. § 9021(a)(3)(A)(i) .......... 24, 26
15 U.S.C. § 9021(a)(3)(A)(iii) .......... 4, 13
15 U.S.C. § 9021(a)(3)(A)(ii)(I) .......... 25
15 U.S.C. § 9021(b) .......... 3, 4, 8, 9, 12, 15, 19, 29
15 U.S.C. § 9021(c)(2) .......... 25, 26
15 U.S.C. § 9021(c)(5) .......... 5
15 U.S.C. § 9021(c)(5)(A) .......... 13
15 U.S.C. § 9021(c)(5)(B) .......... 13
15 U.S.C. § 9021(c)(5)(C)(iii) .......... 25
15 U.S.C. § 9021(c)(6) .......... 4, 13
15 U.S.C. § 9021(d)(1)(A)(i) .......... 5, 25
15 U.S.C. § 9021(d)(4) .......... 5
15 U.S.C. § 9021(f) .......... 16, 27, 30
15 U.S.C. § 9021(f)(1) .......... 1, 3, 8, 11, 12, 15, 17, 21, 22, 23, 29
15 U.S.C. § 9021(f)(2) .......... 1, 8, 11, 12, 15, 17, 20, 21, 22, 23
15 U.S.C. § 9021(f)(2)(A)-(B) .......... 4
15 U.S.C. § 9021(f)(3) .......... 4, 8, 12, 15
15 U.S.C. § 9021(g)(1)(A) .......... 4, 9, 13
15 U.S.C. § 9021(g)(2)(A) .......... 4, 9, 13
15 U.S.C. § 9021(g)(3) .......... 13-14

15 U.S.C. § 9021(h) .......... 5, 8, 14, 28
15 U.S.C. § 9023 .......... 2, 5
15 U.S.C. § 9023(a) .......... 17
15 U.S.C. § 9023(d) .......... 9, 20
15 U.S.C. § 9024(a) .......... 17
15 U.S.C. § 9024(c) .......... 9, 20
15 U.S.C. § 9025(a)(1) .......... 17
15 U.S.C. § 9025(c) .......... 9, 20
15 U.S.C. § 9027(a)(1) .......... 17
15 U.S.C. § 9027(a)(2) .......... 17
15 U.S.C. § 9027(c) .......... 9, 20
15 U.S.C. § 9034(a) .......... 28
15 U.S.C. § 9034(b) .......... 28

Little Tucker Act,
28 U.S.C. § 1346(a)(2) .......... 1, 11

Pub. L. No. 116-260, 134 Stat. 1182 (2020):
§ 241-242, 134 Stat. at 1959-60 .......... 18
§ 242, 134 Stat. at 1960 .......... 3

5 U.S.C. § 8503(a) .......... 16

5 U.S.C. § 8521(b) .......... 16

19 U.S.C. § 2312(a) .......... 15

28 U.S.C. § 1295(a)(2) .......... 1

42 U.S.C. § 5177(a) .......... 5, 20, 29

42 U.S.C. § 18062(b)(1) .......... 23

**Regulations:**

20 C.F.R. § 603.6 .......... 26

20 C.F.R. § 603.6(b)(1) .......... 27

20 C.F.R. § 603.10(a)(1) .......... 27

20 C.F.R. § 603.10(b)(1)(i) .......... 27

20 C.F.R. § 625.4 .......... 28

20 C.F.R. § 625.4(b) .......... 5-6, 14, 29

20 C.F.R. § 625.12(b)(1) .......... 5, 9, 10, 14, 17, 28

20 C.F.R. § 625.2(r)(ii) .......... 25

**Other Authority:**

Dep't of Labor, *Unemployment Insurance Program Letter No. 16-20*, https://perma.cc/WU7P-3GEF .......... 18, 27

## STATEMENT OF RELATED CASES

Plaintiffs filed a notice of appeal to this Court on November 4, 2022. The district court inadvertently transmitted the notice of appeal to the United States Court of Appeals for the Fifth Circuit, which assigned it docket number 22-50890 before dismissing the appeal. No other appeal in or from the present civil action has previously been before this or any other appellate court.

The following case, which is pending before the United States Court of Federal Claims, is a related case within the meaning of Federal Circuit Rule 47.5(a):

*Beaty v. United States*, No. 21-2195 (Holte, J.)

## STATEMENT OF JURISDICTION

Plaintiffs invoked the jurisdiction of the district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Appx15. On September 6, 2022, the district court dismissed the complaint and entered judgment in favor of the United States. Appx1-3. Plaintiffs filed a timely appeal to this Court on November 4, 2022. Appx43. This Court has jurisdiction under 28 U.S.C. § 1295(a)(2).

## STATEMENT OF THE ISSUE

In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security (CARES) Act. That statute established the Pandemic Unemployment Assistance (PUA) program, which authorized unemployment benefits for certain individuals who were not otherwise eligible for unemployment benefits under state law. The statute provides that the Secretary of Labor "shall provide the assistance authorized" by the statute "through agreements with States," 15 U.S.C. § 9021(f)(1), and that "[t]here shall be paid to each State which has entered into an agreement under this subsection" the amounts necessary to operate the program. *Id.* § 9021(f)(2).

Texas initially agreed to provide PUA benefits to its residents. After Texas withdrew from that agreement and ceased providing such benefits, several Texas residents sued the United States under the Little Tucker Act on the theory that the United States was obligated to pay them these benefits directly.

The question presented is whether the district court correctly held that plaintiffs failed to state a claim under the Little Tucker Act because the Secretary had no obligation to pay PUA benefits to individual citizens.

## STATEMENT OF THE CASE

### A. Statutory Background

On March 27, 2020, several weeks into the COVID-19 pandemic, Congress enacted the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). That statute created several temporary unemployment benefit programs, including Federal Pandemic Unemployment Compensation, which increased the benefits paid to workers receiving state unemployment compensation, 15 U.S.C. § 9023, and Pandemic Emergency Unemployment Compensation, which authorized additional state unemployment compensation to individuals who had otherwise exhausted their benefits, *id.* § 9025.

This case concerns Pandemic Unemployment Assistance, 15 U.S.C. § 9021, which provided up to 79 weeks of benefits to certain individuals who were unemployed or otherwise unable to work for various reasons relating to the COVID-19 pandemic and who were not otherwise eligible for state unemployment insurance benefits. *See id.* § 9021(a)(3). Depending on state law, such individuals might include independent contractors, freelancers, individuals without sufficient work history to qualify for state unemployment benefits, and individuals who qualified for but had exhausted all rights to regular unemployment compensation. The statute provides

that "the Secretary shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially unemployed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation." *Id.* § 9021(b).

While subsection (b) provides that the Secretary "shall provide" this "unemployment benefit assistance," subsection (f) is explicit about how the Secretary "shall" do so. That subsection provides that "[t]he Secretary shall provide the assistance authorized under subsection (b) through agreements with States which, in the judgment of the Secretary, have an adequate system for administering such assistance through existing State agencies, including procedures for identity verification or validation and for timely payment, to the extent reasonable and practicable." *Id.* § 9021(f)(1).[1]

The statute does not authorize the Secretary to make payments to individuals. It instead provides that "[t]here shall be paid to each State which has entered into an agreement under this subsection an amount equal" to "the total amount of assistance

[1] The final clause of subsection (f)—"including procedures for identity verification or validation and for timely payment, to the extent reasonable and practicable"—was not included in the original statute. *See* CARES Act § 2102(f)(1), 134 Stat. at 316. This language was added by the 2021 Consolidated Appropriations Act. *See* Pub. L. No. 116-260, § 242, 134 Stat. 1182, 1960 (2020). It is therefore apparent that "to the extent reasonable and practicable" modifies the requirement to have "procedures for identity verification or validation and for timely payment," rather than the requirement to provide assistance "through agreements with States." Plaintiffs have never suggested otherwise.

provided by the State pursuant to such agreement," as well as "additional administrative expenses incurred by the State by reason of such agreement." 15 U.S.C. § 9021(f)(2)(A)-(B). Such funds "shall be payable, either in advance or by way of reimbursement (as determined by the Secretary), in such amounts as the Secretary estimates the State will be entitled to receive under this subsection for each calendar month," subject to adjustments for previous overpayments or underpayments. *Id.* § 9021(f)(3). The statute makes an appropriation for that purpose, providing that funds in the Unemployment Trust Fund "shall be used to make payments to States" under subsection (f)(2). *See id.* § 9021(g)(1)(A), (2)(A).

To qualify for benefits, individuals must provide documentation of employment, self-employment, or the planned commencement of employment "not later than 21 days after the later of the date on which the individual submits an application for pandemic unemployment assistance under this section or the date on which an individual is directed by the State Agency to submit such documentation in accordance with section 625.6(e) of title 20, Code of Federal Regulations, or any successor thereto," with certain exceptions. 15 U.S.C. § 9021(a)(3)(A)(iii).

The statement in 15 U.S.C. § 9021(b) that the Secretary "shall provide . . . assistance" is explicitly "[s]ubject to subsection (c)." Among other things, subsection (c) provides that to be eligible for assistance, "a covered individual shall submit a recertification *to the State* for each week after the individual's 1st week of eligibility that certifies" his continued eligibility. *Id.* § 9021(c)(6) (emphasis added). It also describes

the procedure for appealing "any determination or redetermination regarding the rights to pandemic unemployment assistance under this section made by the State agency of any of the States" and provides that any such appeal "shall be carried out by the applicable State that made the determination or redetermination." *Id.* § 9021(c)(5).

The amount of unemployment compensation to which an individual is entitled is "the weekly benefit amount authorized under the unemployment compensation law of the State where the covered individual was employed," provided it exceeds a federal floor, plus the amount of Federal Pandemic Unemployment Compensation authorized by 15 U.S.C. § 9023. 15 U.S.C. § 9021(d)(1)(A)(i). In the event of an overpayment, "the State shall require such individuals to repay the amounts of such pandemic unemployment assistance to the State agency," subject to limited waiver authority. *Id.* § 9021(d)(4).

The statute incorporates the regulations governing Disaster Unemployment Assistance (DUA) under the Stafford Act unless those regulations conflict with the CARES Act. *See* 15 U.S.C. § 9021(h). Like the CARES Act, the Stafford Act provides that the President shall "provide such assistance through agreements with States which, in his judgment, have an adequate system for administering such assistance through existing State agencies." 42 U.S.C. § 5177(a). The regulations reflect these requirements, stating that "DUA is payable to an individual only by an applicable State . . . and . . . [o]nly pursuant to an Agreement entered into . . . with respect to weeks in which the Agreement is in effect." 20 C.F.R. § 625.12(b)(1); *accord*

*id.* § 625.4(b) (benefits available only if "[t]he applicable State for the individual has entered into an Agreement which is in effect with respect to that week").

The PUA program was originally scheduled to expire on December 31, 2020. *See* CARES Act § 2102(c)(1)(A)(ii), 134 Stat. at 315. On December 27, 2020, Congress extended it through March 14, 2021. *See* Continued Assistance for Unemployed Workers Act of 2020, Pub. L. No. 116-260, § 201, 134 Stat. 1182, 1950. On March 11, 2021, Congress further extended it through September 6, 2021. *See* American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 9011, 135 Stat. 4, 118. On September 6, 2021, the program expired.

### B. Factual Background

Shortly after the enactment of the CARES Act, Texas entered into an agreement with the Department of Labor to pay PUA benefits to its residents. Appx21. On May 7, 2021, after Congress had extended the program's expiration date twice, the governor of Texas informed the Department that it would withdraw from the agreement effective June 26, 2021. Appx11.

The named plaintiffs are each residents of Texas. Appx12. Each alleges that after Texas withdrew from the PUA program, Texas ceased paying the benefits for which he or she had previously been eligible. Appx12-15.

### C. District Court Proceedings

Plaintiffs filed a complaint under the Little Tucker Act on November 22, 2021. Appx10. Plaintiffs purported to sue on their own behalf, as well as a class of similarly

situated individuals in all states that terminated their participation in the PUA program.

On June 8, 2022, the magistrate judge issued a report and recommendation recommending that the case be dismissed. Appx30-42. The magistrate judge explained that "[t]he plain language of the CARES Act states that the payment of benefits under the Act is predicated on the existence of an agreement with a state." Appx37. The magistrate judge considered plaintiffs' argument that "nothing in the CARES Act permitted states to withdraw from the program" but held that "the CARES Act does not include a mechanism for the Secretary to pay out benefits under the Act in the absence of an agreement with the relevant state." Appx37. The magistrate judge further recognized that "Congress did not appropriate funds for the Secretary to provide benefits in the absence of state action," which "shows Congress intended for the funds to solely be administered by the states." Appx37.

The magistrate judge determined that plaintiffs' reliance on *Maine Community Health Options v. United States*, 140 S. Ct. 1308 (2020), was misplaced. As the magistrate judge explained, that case "addressed the issue of whether a rider on an appropriation act impliedly repealed a statutory payment obligation found in the statute," whereas this case "does not address a failure to appropriate funds." Appx38. Instead, "Congress's failure to identify an alternative payment method supports a plain reading of the statute that participation by the states is required for receipt of benefits under the CARES Act." Appx38-39. The magistrate judge further explained that "[t]he

DUA regulations made applicable to the PUA through 15 U.S.C. § 9021(g)" confirmed this conclusion. Appx39.

On September 6, 2022, the district court entered an order adopting the report and recommendation "for substantially the reasons stated therein." Appx2. The court determined that the "magistrate judge properly construed the [CARES] Act, finding that nothing in the Act allows the United States Department of Labor, which administers the Act, to bypass the states and pay benefits directly to citizens when states opt out." Appx2.

## SUMMARY OF ARGUMENT

The district court correctly held that nothing in the CARES Act requires (or even permits) the United States to make payments of PUA benefits directly to individuals. While the statute refers to a general duty of the Secretary to "provide . . . unemployment benefit assistance" to eligible individuals, 15 U.S.C. § 9021(b), the statute is explicit about how the Secretary "shall" do so: "through agreements with States." *Id.* § 9021(f)(1). The only provision of the statute authorizing the Secretary to make payments provides that there "shall be paid to each State which has entered into an agreement" the money necessary to operate the program. *Id.* § 9021(f)(2); *see also id.* § 9021(f)(3) (providing that these funds may be paid to states either in advance or as reimbursement). Nothing in the statute authorizes payments directly by the Secretary to individuals. Were there any doubt on this point, it would be resolved by regulations governing Disaster Unemployment Assistance under the Stafford Act—

regulations explicitly incorporated into PUA, *see id.* § 9021(h)—providing that assistance "is payable to an individual only by an applicable State" and "[o]nly pursuant to an Agreement entered into pursuant to the Act and this part." 20 C.F.R. § 625.12(b)(1).

Plaintiffs' contrary arguments are incorrect. Plaintiffs repeatedly describe 15 U.S.C. § 9021(b) as mandating the payment of PUA benefits by the United States to individuals, but that provision does not authorize payments by the United States to individuals where a state declines to administer the program. Rather, the only provision of the statute authorizing payments by the United States is § 9021(f), which authorizes payments to states that have agreed to administer the program. Subsection (g) appropriates the funds that "shall be used to make payments to States." 15 U.S.C. § 9021(g)(1)(A), (2)(A). If Congress had meant to authorize payments directly by the Secretary to individuals, it would have done so.

Plaintiffs cannot evade that conclusion by pointing to minor semantic differences with other provisions of the CARES Act. To the contrary, the language in § 9021(f) requiring payments to states is functionally identical to language in the other CARES Act programs that plaintiffs concede authorizes payments only by states. *See* 15 U.S.C. §§ 9023(d), 9024(c), 9025(c), 9027(c). While § 9021 does not include language explicitly permitting states to withdraw from their agreements to administer PUA, such language was unnecessary in light of the DUA regulations under the Stafford Act, which make clear that benefits are payable by an applicable state "[o]nly

. . . with respect to weeks in which the Agreement is in effect." 20 C.F.R. § 625.12(b)(1). Moreover, it would raise serious concerns under the Tenth Amendment to suggest that the federal government could require a state to administer a federal program, over its objection, in perpetuity.

Finally, plaintiffs' speculation that another state could have administered the PUA program on Texas's behalf is unavailing. Even if plaintiffs had established a basis for such speculation, it is irrelevant to this lawsuit, which demands payment from the federal government under the Little Tucker Act on the theory that the Secretary was required to make these payments directly.

## ARGUMENT

### I. Standard of Review

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). This procedure "streamlines litigation by dispensing with needless discovery and factfinding" and requires the dismissal of a legally deficient complaint whether it "is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* at 326-27; *accord, e.g.*, *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019). This Court reviews the district court's dismissal for failure to state a claim de novo. *See, e.g.*, *Athey v. United States*, 908 F.3d 696, 705 (Fed. Cir. 2018).

## II. The Pandemic Unemployment Assistance Program Does Not Permit Payment Directly By The United States To Individuals.

The Pandemic Unemployment Assistance program does not permit—and certainly does not require—the United States to make payments directly to individuals. The district court therefore correctly dismissed this case for failure to state a claim under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which requires a showing that the relevant statute "can 'fairly be interpreted as mandating compensation by the Federal Government.'" *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1329 (2020) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

The text of the CARES Act makes clear that "[t]he Secretary shall provide the assistance authorized under subsection (b) through agreements with States," 15 U.S.C. § 9021(f)(1), and that the Secretary's only payment obligation is to "pa[y] to each State which has entered into an agreement under this subsection" the amounts necessary to operate the program, *id.* § 9021(f)(2). As the only other court to consider this question has held, subsection (f) is a "mandatory provision which defeats [plaintiffs'] claim." *Crawford v. Walsh*, No. 21-2238, 2022 WL 971089, at *2 (D.D.C. Mar. 31, 2022). Nothing in the CARES Act permits the Secretary to make payments directly to individuals. Rather, as the magistrate judge explained, "[t]he plain language of the CARES Act states that the payment of benefits under the Act is predicated on the existence of an agreement with a state." Appx37.

As plaintiffs observe, 15 U.S.C. § 9021(b) states as a general matter that the Secretary "shall provide to any covered individual unemployment benefit assistance." Yet the statute is explicit about how the Secretary "shall" do so: "through agreements with States." 15 U.S.C. § 9021(f)(1). The next provision of the statute is clear that funds "shall be paid to each State which has entered into an agreement," rather than to individuals directly. *Id.* § 9021(f)(2). Subsection (f)(3) then sets out the mechanics of transferring those "[s]ums payable to any State by reason of such State's having an agreement under this subsection," providing that they may be paid either in advance or as reimbursement. *Id.* § 9021(f)(3). Subsection (b)'s general instruction to "provide . . . assistance" cannot overcome these specific statutory provisions describing to whom, and under what conditions, funds may be disbursed from the U.S. Treasury. Thus, "[c]ontrary to plaintiff[s'] interpretation of the CARES Act, the Secretary of Labor neither is obligated to provide Pandemic Unemployment Assistance benefit funds to any State which ends its agreement with the Secretary, nor is obligated to make payments to any individual directly." *Crawford*, 2022 WL 971089, at *3.

The plain language of subsection (f) resolves this case. But if there were any doubt, the remainder of the statute confirms the necessary role of the states in operating the PUA program.

*First*, subsection (a) provides that to be a "covered individual," an individual must provide documentation of eligibility *to a state*. In particular, individuals must provide documentation of employment, self-employment, or the planned

commencement of employment "not later than 21 days after the later of the date on which the individual submits an application for pandemic unemployment assistance under this section or the date on which an individual is directed *by the State Agency* to submit such documentation in accordance with section 625.6(e) of title 20, Code of Federal Regulations, or any successor thereto," with certain exceptions.
15 U.S.C. § 9021(a)(3)(A)(iii) (emphasis added). Had Congress contemplated administration of the PUA program directly by the Secretary, it would not have repeatedly indicated that individuals would provide documentation to state agencies.

*Second*, subsection (c)—to which subsection (b) is explicitly subject—provides that "[a]s a condition of continued eligibility for assistance under this section," a covered individual must submit "a recertification *to the State* for each week after the individual's 1st week of eligibility that certifies that the individual remains" eligible for the program. 15 U.S.C. § 9021(c)(6) (emphasis added). (Indeed, plaintiffs did not allege that they continued submitting certifications after Texas withdrew from the program.) Subsection (c) also makes clear that states are responsible for making "determination[s] or redetermination[s] regarding the rights to pandemic unemployment assistance under this section," *id.* § 9021(c)(5)(A), and for handling appeals of those determinations, *id.* § 9021(c)(5)(B).

*Third*, subsection (g) appropriates funds for states to administer the program by providing that funds in the Unemployment Trust Fund "shall be used to make payments to States" under subsection (f)(2). *See* 15 U.S.C. § 9021(g)(1)(A), (2)(A); *see*

*also id.* § 9021(g)(3) (providing that "[t]he Secretary of Labor shall from time to time certify to the Secretary of the Treasury for payment to each State the sums payable to such State"). No appropriation exists to make payments directly to individual citizens, which is further evidence that Congress did not intend the Secretary to make such payments. *See* Appx37 ("Congress did not appropriate funds for the Secretary to provide benefits in the absence of state action. This shows Congress intended for the funds to solely be administered by the states.").

*Fourth*, in 15 U.S.C. § 9021(h), "Congress specified that regulations pertaining to Disaster Unemployment Assistance under the Stafford Act would apply to the CARES Act." *Crawford*, 2022 WL 971089, at *3 (citations omitted). And under those regulations, disaster unemployment assistance "is payable to an individual only by an applicable State," and "[o]nly pursuant to an Agreement entered into pursuant to the Act and this part." 20 C.F.R. § 625.12(b)(1); *accord id.* § 625.4(b) (assistance is available only if "[t]he applicable State for the individual has entered into an Agreement which is in effect with respect to that week"). Thus, as the magistrate judge explained, "in the absence of an agreement between the State of Texas and the Secretary, the regulations support that Plaintiffs are not eligible to receive PUA payments," as "the DUA regulations that permit the payment of DUA benefits only where the applicable state has signed an agreement with the Secretary also apply to the PUA program." Appx39.

## III. Plaintiffs' Contrary Arguments Are Incorrect.

Plaintiffs make essentially five arguments in their attempt to overcome the plain language of 15 U.S.C. § 9021. Each lacks merit.

### A. 15 U.S.C. § 9021(b) Does Not Obligate The Secretary To Pay Money Directly To Individuals.

Plaintiffs' principal argument is that 15 U.S.C. § 9021(b) creates an obligation to make payments to individuals that is not limited by "ancillary" provisions in the remainder of the statute. The central flaw in this argument is that 15 U.S.C. § 9021(f)(1), which provides that assistance "shall" be provided "through agreements with States," is no ancillary provision; the entirety of the statute confirms the central role of states in administering the program. Most significantly, 15 U.S.C. § 9021(f)(2) authorizes the Secretary to make payments *only* to states. *See id.* § 9021(f)(2) ("There shall be paid to each State . . . ."); *see also id.* § 9021(f)(3) (providing that these payments to states may be made "either in advance or by way of reimbursement"). Plaintiffs' suggestion that the statute is "silent as to the 'details about how'" assistance is to be provided under the statute, Br. 26 (quoting *Maine Cmty. Health Options*, 140 S. Ct. at 1320), is without foundation.

Had Congress meant to authorize payments directly to individuals, it "knew how to say so." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 826 (2018). Indeed, when Congress has wanted to permit federal administration of an unemployment program, it has said so expressly. *See, e.g.*, 19 U.S.C. § 2312(a) (Trade Adjustment

Assistance Program) (making provisions for a "State where there is no agreement in force"); 5 U.S.C. § 8503(a) (Unemployment Compensation for Federal Employees) (similar); *id.* § 8521(b) (Unemployment Compensation for Ex-Servicemen) (adopting the provisions in § 8503). Yet Congress did not say so in 15 U.S.C. § 9021, and the Executive Branch is not at liberty to make payments that Congress did not authorize. *See* U.S. Const. art. I, § 9, cl. 7; *see also, e.g.*, *Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1850) ("It is a well-known constitutional provision, that no money can be taken or drawn from the Treasury except under an appropriation by Congress.").

Because 15 U.S.C. § 9021(f) is not an "ancillary procedural provision," Br. 26, plaintiffs' principal cases are plainly distinguishable. The government is not asking the Court to follow a "winding path of connect-the-dots provisions," *King v. Burwell*, 576 U.S. 473, 497 (2015); it is urging the Court to "enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins.*, 560 U.S. 242, 251 (2010). Plaintiffs' other cases addressing ancillary procedural provisions—*Barnhart v. Peabody Coal Co.*, 537 U.S. 149 (2003) (rejecting an argument that a statutory deadline for administrative action was jurisdictional); *Bullock v. United States*, 10 F.4th 1317, 1322 (Fed. Cir. 2021) (addressing "housekeeping provisions directing agencies" to put settlement agreements in writing "as a matter of good practice"); *SAS Inst. v. Iancu*, 138 S. Ct. 1348, 1355 (2018) (rejecting statutory argument where "nothing in the statute says anything" that would support it)—are entirely beside the point here because the statute indicates throughout that assistance is to be provided through

agreements with states—the only entities to which the Secretary is authorized to make payments. *See* 15 U.S.C. § 9021(f)(1), (2).

### B. Other Statutes Do Not Undermine The Plain Meaning Of 15 U.S.C. § 9021.

Plaintiffs also suggest that the meaning of § 9021 may be discerned by comparing that provision to other statutory provisions within and outside the CARES Act. To the extent that plaintiffs' comparisons are relevant, they favor the United States.

1. Plaintiffs observe that several other unemployment provisions of the CARES Act expressly indicate that states may terminate their agreements to participate. Br. 20-21 (citing 15 U.S.C. §§ 9023(a), 9024(a), 9025(a)(1), 9027(a)(1), (2)); *see also* Br. 29 (observing that "Congress did not even mention state termination in the PUA provision"). But it was not necessary for Congress to mention the possibility of a state withdrawing from participation in § 9021 because § 9021(h) incorporates the DUA regulations under the Stafford Act. And those regulations embody the Secretary's longstanding interpretation of DUA as allowing termination. *See* 20 C.F.R. § 625.12(b)(1) (authorizing payment by an applicable state "[o]nly . . . with respect to weeks in which the Agreement is in effect").

To the extent that plaintiffs are suggesting that Texas could never withdraw from its agreement to administer the PUA program, that contention would raise serious concerns under the Tenth Amendment. *See, e.g.*, *Printz v. United States*, 521

U.S. 898, 925 (1997). Those concerns would be especially serious here, for when Texas agreed to administer the PUA program, the program was scheduled to expire at the end of 2020. By the time that Texas withdrew from the program on June 6, 2021, Congress had extended the program's expiration date twice, and Texas had already administered the program for six more months than it originally agreed to.

In addition to the potential concerns under the Tenth Amendment, Department of Labor guidance issued on April 5, 2020, provided that states could withdraw from their agreements to participate in the PUA program upon 30 days' notice. Dep't of Labor, *Unemployment Insurance Program Letter No. 16-20*, attach. I ¶ 5, https://perma.cc/WU7P-3GEF. That guidance expressly indicated that "[n]o PUA payments may be made with respect to weeks which begin after the date the termination of the agreement is effective." *Id.* Congress has subsequently amended the CARES Act, including with respect to the PUA program. *See, e.g.*, Pub. L. No. 116-260, §§ 241-242, 134 Stat. at 1959-60. Yet Congress did not override the Secretary's determination that states may withdraw from the PUA program, nor did it override the Secretary's determination that there would be no mechanism to make payments in the absence of a state agreement. And "when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (quotation omitted).

In any case, even if Texas was legally bound to continue operating the PUA program, it would not follow that plaintiffs' remedy for Texas's breach of that obligation was to sue the United States under the Little Tucker Act. Instead, if plaintiffs believe that Texas unlawfully withdrew from their agreement to pay PUA benefits to its residents, they should have sought relief against Texas, not the United States. *Cf., e.g.*, *Dickerson v. Texas*, No. 21-2729, 2021 WL 4192740 (S.D. Tex. Sept. 15, 2021) (lawsuit against Texas, challenging Texas's withdrawal from PUA program). Conversely, if plaintiffs believed that the United States was obligated to take some (as yet unspecified) action against Texas for its purported breach of the agreement to administer PUA, they could have attempted to bring a claim under the Administrative Procedure Act seeking to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Either way, if plaintiffs' theory is that *Texas* was required to continue making PUA payments in perpetuity, it is difficult to understand why plaintiffs are now seeking such payments from the United States.

2. Plaintiffs suggest that unlike other unemployment programs created by the CARES Act, PUA is "the only program that mandates payments to 'individual[s].'" Br. 20 (alteration in original) (quoting 15 U.S.C. § 9021(b)); *see also* Br. 21-22. As set out above, the statute does not direct the Secretary to make payments to individuals; it provides that payments "shall" be made "to each State which has entered into an agreement under this subsection." 15 U.S.C. § 9021(f)(2). The other unemployment programs created by the CARES Act—programs that plaintiffs

concede require payment by states rather than the federal government directly, Br. 21—contain functionally identical language. *See* 15 U.S.C. §§ 9023(d), 9024(c), 9025(c), 9027(c). It follows that the PUA program, like these other programs created by the CARES Act, only permits payments to individuals through states that have agreed to administer the program.

3. Plaintiffs suggest that PUA is the only CARES Act "program that sets forth its own Congressionally-determined eligibility criteria through its definition of 'covered individual' in subsection (a)." Br. 22. It is correct that the PUA program sets forth eligibility criteria, but those criteria speak to which individuals are eligible to receive PUA benefits from states. They do not address the separate question of who is responsible for making the payments to the individuals who satisfy those eligibility criteria.

4. Plaintiffs observe that the PUA statute provides that the Secretary "shall" provide unemployment benefit assistance, whereas the Stafford Act provides that the President "is authorized" to provide DUA assistance to individuals rendered unemployed by a major disaster, 42 U.S.C. § 5177(a). *See* Br. 22-23. Yet while the Stafford Act authorizes the President to provide benefits to "any" qualifying individual, *id.* § 5177(a), it still requires benefits to be provided through agreements with states, *id.*, and longstanding regulations reflect that interpretation. *See infra* pp. 28-29. There is no reason to interpret the PUA statute, which contains an identical requirement, any differently.

5. Plaintiffs suggest that the longstanding regular unemployment insurance program is distinguishable from the PUA program because "States are given the choice to opt into" the regular program. Br. 23. That is no distinction, for PUA similarly provides that the Secretary "shall provide the assistance authorized under subsection (b) through agreements with States," 15 U.S.C. § 9021(f)(1), and authorizes payments to states, not individuals, *id.* § 9021(f)(2). As discussed above, any suggestion that states were required to enter into such an agreement would raise serious Tenth Amendment concerns. *See supra* pp. 17-18.

* * *

Plaintiffs are correct that since Congress created the traditional federal-state unemployment program in 1935, it has nearly always provided that unemployment benefits are payable only by states that choose to participate in the program. That was true not only in the regular unemployment insurance program, but also in the DUA program created by the Stafford Act and the other unemployment programs created by the CARES Act as well. It is "not lightly to be assumed that Congress intended to depart from a long established policy," *United States v. Wilson*, 503 U.S. 329, 336 (1992) (quoting *Robertson v. Railroad Labor Bd.*, 268 U.S. 619 (1925)), and the minor semantic differences that plaintiffs have identified between the PUA program and the other unemployment programs are far from sufficient to carry that meaning.

### C. Even If Another State Could Administer PUA For Texas Residents, That Would Not Entitle Plaintiffs To The Relief They Seek Here.

Plaintiffs further suggest that the Secretary should have entered into an agreement with a different state to administer the PUA program on behalf of Texas residents. That argument is both beside the point and entirely speculative.

1. Plaintiffs suggest that the Secretary could have approved an agreement for another state to administer the PUA program on Texas's behalf and then made payments to that state. Yet plaintiffs identify nothing in the statute that required the Secretary to locate another state to do so. Rather, as set out above, the only statutory provision permitting the Secretary to make payments requires as a condition precedent that an agreement has already been entered. *See* 15 U.S.C. § 9021(f)(2) (requiring payments "to each State which has entered into an agreement").

2. Even if the statute did require the Secretary to locate another state to administer PUA on behalf of Texas, the appropriate remedy for the Secretary's alleged failure to do so would not be a damages suit seeking payment directly from the United States. Given that the PUA statute authorizes payments to states that agree to administer the PUA program, *see* 15 U.S.C. § 9021(f)(1), (2), nothing in the CARES Act suggests that it is one of the "rare laws permitting a damages suit" by individuals against the United States. *Maine Cmty. Health Options*, 140 S. Ct. at 1329. While a "statute commanding the payment of a specified amount of money by the United States impliedly authorizes (absent other indication) a claim for damages in the

defaulted amount," *id.* (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 923 (1988) (Scalia, J., dissenting)), this case is entirely different from *Maine Community Health Options*. In that case, the plaintiffs were the insurance companies seeking the funds that a federal statute required the government to pay directly to them. *See* 42 U.S.C. § 18062(b)(1) (describing amounts that "the Secretary shall pay to the plan"); *see also Maine Cmty. Health Options*, 140 S. Ct. at 1329 ("Section 1342's triple mandate—that the HHS Secretary 'shall establish and administer' the program, 'shall provide' for payment according to the statutory formula, and 'shall pay' qualifying insurers—falls comfortably within the class of money-mandating statutes that permit recovery of money damages in the Court of Federal Claims.").

In this case, however, the statute nowhere states that the Secretary shall make payments directly to individuals; it is explicit that the Secretary shall provide assistance "through agreements with States" by "pa[ying] to each State" the amounts necessary to operate the program. 15 U.S.C. § 9021(f)(1), (2). Plaintiffs may not invoke the Little Tucker Act to demand that the United States pay them money that the Secretary is directed to pay to *states* that have agreed to administer the PUA program. Instead, if plaintiffs think that the Secretary breached an obligation to enter into an agreement with another state to administer PUA on Texas's behalf, the appropriate recourse would have been to seek to "compel agency action unlawfully withheld or unreasonably delayed" under the Administrative Procedure Act, 5 U.S.C. § 706(1).

3. There is no basis for speculating that another state would have been interested in administering PUA on Texas's behalf. Plaintiffs suggest that the government is wrongfully speculating that "no state would have voluntarily agreed to administer PUA to Texans," Br. 32, but that gets things backwards: it is a *plaintiff*'s burden, not a defendant's, to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Yet plaintiffs never actually alleged that another state would have been interested in administering PUA on Texas's behalf, and they certainly did not include sufficient facts to render such allegation plausible. And given that Texas was evidently uninterested in ensuring that its citizens received a benefit that would otherwise be available to them, it is not difficult to imagine why another state might not readily agree to administer a benefits program on behalf of Texas.

In any event, it would not have been possible for another state to administer the PUA program on Texas's behalf without Texas's cooperation. Administration of PUA on behalf of another state requires extensive coordination. For example, to be eligible for PUA, an individual must be ineligible for regular unemployment insurance, 15 U.S.C. § 9021(a)(3)(A)(i), but determination of regular unemployment insurance eligibility requires the cooperation of the state that terminated the agreement. The administering state would also be required to make other determinations under the terminating state's law that would require information sharing and cooperation, such

as the number of weeks of eligibility the individual has available (which is in part based upon the weeks of benefits the individual has received previously), *id.* § 9021(c)(2); the weekly benefit amount the individual is entitled to, *id.* § 9021(d)(1)(A)(i); and whether the individual is able to work and available for work within the meaning of the terminating state's law, *id.* § 9021(a)(3)(A)(ii)(I).

Plaintiffs make essentially three responses. First, they assert that it would not be difficult for another state to "review the law of another state and apply it" because "[s]tate and federal courts do so all the time." Br. 33. Yet whatever the competence of state and federal courts, state unemployment agencies—the agencies that would be required to administer the program—are not staffed by judges and law clerks and are not experts on the law of other states. Plaintiffs observe that the law of Hawaii would govern PUA benefits in certain U.S. territories, *id.* (citing 15 U.S.C. § 9021(c)(5)(C)(iii)), but that unique situation is distinguishable because those territories do not have their own regular unemployment programs, and Hawaii law has long applied under the Stafford Act when the territories administer DUA for their own citizens. *See* 20 C.F.R. § 625.2(r)(1)(ii). Here, in contrast, plaintiffs are suggesting that one state would learn and apply the law of a second, noncooperating state so that the first state could administer the PUA program on behalf of the second state. There is no precedent for such an arrangement, and implementing the PUA program on another state's behalf would severely burden state agencies that were already administering the PUA program on behalf of their own citizens.

Second, plaintiffs suggest that certain information—such as whether a particular individual is ineligible for regular unemployment insurance, *see* 15 U.S.C. § 9021(a)(3)(A)(i), and the weeks of benefits the individual has previously received, *id.* § 9021(c)(2)—must already be reported to the federal government. Br. 33-34 (citing 20 C.F.R. § 603.6). At the outset, that argument was not made in district court until plaintiffs' reply brief in support of their objections to the magistrate judge's report and recommendation, Dkt. No. 36, at 6, and so it is not properly before this Court. *See, e.g.*, *Borden v. Secretary of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (per curiam) (litigant is "not entitled to a de novo review of an argument never raised," for "[p]arties must take before the magistrate, not only their best shot but all of their shots" (quotation marks omitted)); *Edge Sys. LLC v. Aguila*, 635 F. App'x 897, 903 (Fed. Cir. 2015) (per curiam) (unpublished) (arguments not presented to the magistrate judge "are therefore waived").

In any event, the argument is incorrect, as the Secretary does not maintain all of the information that would be necessary for another state to administer PUA on Texas's behalf. While Plaintiffs cite 20 C.F.R. § 603.6, that provision does not mandate regular submission of comprehensive claims information sufficient to administer PUA. And § 603.6(b)(1)(v), the provision upon which plaintiffs most specifically rely, does not apply because the Department of Labor is not an "agency of the United States charged with the administration of public works or assistance through public employment" in its capacity as administrator of the unemployment

insurance program. *See* 20 C.F.R. § 603.6(b)(1). Even if that provision did apply, it would require the Secretary to affirmatively request information that is not already in its possession, and there would likely be restrictions upon the Secretary's ability to further disseminate it, *see id.* § 603.10(a)(1) (requiring that disclosures pursuant to § 603.6(b)(1) be made pursuant to a "written, enforceable agreement with any agency or entity requesting disclosure(s) of such information"); *id.* § 603.10(b)(1)(i) (providing that any such agreement must include a "description of the specific information to be furnished and the purposes for which the information is sought"). For all these reasons, the Department of Labor's guidance contemplates cross-state administration only when *both* states are willing participants. *See Unemployment Insurance Program Letter* No. 16-20, *supra*, at 5 ("States that have entered into an agreement with the Secretary of Labor (Secretary) to operate a PUA program may enter into agreements to operate the PUA program on behalf of other states *that have also entered into agreements with the Secretary*." (emphasis added)).

Finally, plaintiffs suggest that if another state were unwilling to administer the PUA program for Texas residents, the Federal government could have done so itself. Br. 34. As described above, such federal administration is foreclosed by 15 U.S.C. § 9021(f), which provides that the program shall be administered through agreements with states and authorizes payments by the federal government to states, not

individuals. The Secretary was not at liberty to disregard this unambiguous statutory command.[2]

### D. The DUA Regulations Confirm That Payment May Be Made Only By States.

The district court correctly determined that if there were any doubts about the foregoing points, they are resolved by the DUA regulations under Stafford Act, which the PUA statue incorporates. *See* 15 U.S.C. § 9021(h). Those regulations provide that "DUA is payable to an individual only by an applicable State . . . and . . . [o]nly pursuant to an Agreement entered into . . . with respect to weeks in which the Agreement is in effect." 20 C.F.R. § 625.12(b)(1); *accord id.* § 625.4 (PUA assistance is available only if "[t]he applicable State for the individual has entered into an Agreement which is in effect with respect to that week.").

---

[2] Because Congress did not authorize the Secretary to make payments directly to individuals, plaintiffs' suggestion that "Congress authorized funds the Secretary could have used to directly administer the program," Br. 34, is irrelevant. It is also incorrect. The American Rescue Plan Act appropriated $2 billion to the Department of Labor to improve unemployment compensation programs by "detect[ing] and prevent[ing] fraud, promot[ing] equitable access, and ensur[ing] the timely payment of benefits." 15 U.S.C. § 9034(a). The Department of Labor could use the funds (1) for "Federal administrative costs related" to fraud prevention, equity, and timeliness; (2) for "systemwide infrastructure investment and development related" to fraud prevention, equity, and timeliness; and (3) "to make grants to States or territories administering unemployment compensation programs" to promote fraud prevention, equity, and timeliness. *Id.* § 9034(b). This language does not authorize the Department of Labor to use funds to directly pay benefits to eligible claimants for any of the CARES Act programs.

Plaintiffs suggest that these regulations are not incorporated because they conflict with the PUA statute, which they describe as requiring the Secretary to provide payments to "any" covered individual, irrespective of a state agreement. Br. 37 (citing 15 U.S.C. § 9021(b)). Yet if a mere reference to providing benefits to "any" qualifying individual were sufficient to vitiate a statutory requirement that benefits be provided through agreements with states, then the DUA regulations would conflict with the Stafford Act, which contains similar language. In particular, even though the Stafford Act says that the President "is authorized to provide" benefit assistance to "any individual," 42 U.S.C. § 5177(a), the regulations forbid the payment of benefits other than where the "applicable State for the individual has entered into an Agreement which is in effect with respect to that week." 20 C.F.R. § 625.4(b). That regulation faithfully implements the Stafford Act because that statute requires that assistance be provided "through agreements with States." 42 U.S.C. § 5177(a). As set out above, the PUA statute contains identical language. *See* 15 U.S.C. § 9021(f)(1). The DUA regulations are therefore equally applicable to both statutes and confirm that payments by the United States may be made only to states, and that only states may make payments to individuals.

### E. Appeals To Statutory Purpose Are Irrelevant And Unavailing.

Finally, plaintiffs suggest that the Court should adopt their interpretation because it would "negate the goal of the program to allow states to determine whether

their residents would receive" PUA benefits. Br. 40. Yet "[v]ague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Montanile v. Board of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 150 (2016) (second alteration in original) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993)). For that reason, "courts aren't free to rewrite clear statutes under the banner of [their] own policy concerns." *Azar v. Alina Health Servs.*, 139 S. Ct. 1804, 1815 (2019), nor may they "overrule Congress's judgment based on [their] own policy views," *SCA Hygiene Prods Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 345 (2017). Here, the words chosen by Congress make clear that its policy choice was to authorize the Secretary to make payments only to states, 15 U.S.C. § 9021(f), and it is not this Court's "proper role to redesign the statute," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019), based on plaintiffs' vague sense of what Congress was actually trying to accomplish.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB

*/s/ Steven A. Myers*
STEVEN A. MYERS
*Attorneys, Appellate Staff*
*Civil Division, Room 7232*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8648*

April 2023

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7487 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Steven A. Myers*
Steven A. Myers

# ADDENDUM

# TABLE OF CONTENTS

15 U.S.C. § 9021 .......... A1

42 U.S.C. § 5177 .......... A9

20 C.F.R. § 625.4 .......... A10

20 C.F.R. § 625.12 .......... A11

**15 U.S.C. § 9021**

**§ 9021. Pandemic unemployment assistance**

(a) Definitions

In this section:

(1) COVID-19

The term "COVID-19" means the 2019 Novel Coronavirus or 2019-nCoV.

(2) COVID-19 public health emergency

The term "COVID-19 public health emergency" means the public health emergency declared by the Secretary of Health and Human Services on January 27, 2020, with respect to the 2019 Novel Coronavirus.

(3) Covered individual

The term "covered individual"--

(A) means an individual who--

(i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title;

(ii) provides self-certification that the individual--

(I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because--

(aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;

(bb) a member of the individual's household has been diagnosed with COVID-19;

(cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section; or

(II) is self-employed, is seeking part-time employment, does not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, and meets the requirements of subclause (I); and

(iii) provides documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment not later than 21 days after the later of the date on which the individual submits an application for pandemic unemployment assistance under this section or the date on which an individual is directed by the State Agency to submit such documentation in accordance with section 625.6(e) of title 20, Code of Federal Regulations, or any successor thereto, except that such deadline may be extended if the individual has shown good cause under applicable State law for failing to submit such documentation; and

(B) does not include--

(i) an individual who has the ability to telework with pay; or

(ii) an individual who is receiving paid sick leave or other paid leave benefits, regardless of whether the individual meets a qualification described in items (aa) through (kk) of subparagraph (A)(i)(I).

(4) Secretary

The term "Secretary" means the Secretary of Labor.

(5) State

The term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, the Federated States of Micronesia, the Republic of the Marshall Islands, and the Republic of Palau.

(b) Assistance for unemployment as a result of COVID-19

Subject to subsection (c), the Secretary shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially unemployed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation (as that term is defined in section 85(b) of Title 26) or waiting period credit.

(c) Applicability

(1) In general

Except as provided in paragraph (2), the assistance authorized under subsection (b) shall be available to a covered individual--

(A) for weeks of unemployment, partial unemployment, or inability to work caused by COVID-19--

(i) beginning on or after January 27, 2020; and

(ii) ending on or before September 6, 2021; and

(B) subject to subparagraph (A)(ii), as long as the covered individual's unemployment, partial unemployment, or inability to work caused by COVID-19 continues.

(2) Limitation on duration of assistance

The total number of weeks for which a covered individual may receive assistance under this section shall not exceed 79 weeks and such total shall include any week for which the covered individual received regular compensation or extended benefits under any Federal or State law, except that if after March 27, 2020, the duration of extended benefits is extended, the 79-week period described in this paragraph shall be

extended by the number of weeks that is equal to the number of weeks by which the extended benefits were extended.

(3) Assistance for unemployment before March 27, 2020

The Secretary shall establish a process for making assistance under this section available for weeks beginning on or after January 27, 2020, and before March 27, 2020.

(4) Redesignated (3)

(5) Appeals by an individual

(A) In general

An individual may appeal any determination or redetermination regarding the rights to pandemic unemployment assistance under this section made by the State agency of any of the States.

(B) Procedure

All levels of appeal filed under this paragraph in the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, and the Virgin Islands--

(i) shall be carried out by the applicable State that made the determination or redetermination; and

(ii) shall be conducted in the same manner and to the same extent as the applicable State would conduct appeals of determinations or redeterminations regarding rights to regular compensation under State law.

(C) Procedure for certain territories

With respect to any appeal filed in Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, the Federated States of Micronesia, Republic of the Marshall Islands, and the Republic of Palau--

(i) lower level appeals shall be carried out by the applicable entity within the State;

(ii) if a higher level appeal is allowed by the State, the higher level appeal shall be carried out by the applicability entity within the State; and

(iii) appeals described in clauses (i) and (ii) shall be conducted in the same manner and to the same extent as appeals of regular unemployment compensation are conducted under the unemployment compensation law of Hawaii.

(6) Continued eligibility for assistance

As a condition of continued eligibility for assistance under this section, a covered individual shall submit a recertification to the State for each week after the individual's 1st week of eligibility that certifies that the individual remains an individual described in subsection (a)(3)(A)(ii) for such week.

(d) Amount of assistance

(1) In general

The assistance authorized under subsection (b) for a week of unemployment, partial unemployment, or inability to work shall be--

(A)(i) the weekly benefit amount authorized under the unemployment compensation law of the State where the covered individual was employed, except that the amount may not be less than the minimum weekly benefit amount described in section 625.6 of title 20, Code of Federal Regulations, or any successor thereto; and

(ii) the amount of Federal Pandemic Unemployment Compensation under section 9023 of this title; and

(B) in the case of an increase of the weekly benefit amount after March 27, 2020, increased in an amount equal to such increase.

(2) Calculations of amounts for certain covered individuals

In the case of a covered individual who is self-employed, who lives in a territory described in subsection (c) or (d) of section 625.6 of title 20, Code of Federal Regulations, or who would not otherwise qualify for unemployment compensation under State law, the assistance authorized under subsection (b) for a week of unemployment shall be calculated in accordance with section 625.6 of title 20, Code of Federal Regulations, or any successor thereto, and shall be increased by the amount of Federal Pandemic Unemployment Compensation under section 9023 of this title.

(3) Allowable methods of payment

Any assistance provided for in accordance with paragraph (1)(A)(ii) shall be payable either--

(A) as an amount which is paid at the same time and in the same manner as the assistance provided for in paragraph (1)(A)(i) is payable for the week involved; or

(B) at the option of the State, by payments which are made separately from, but on the same weekly basis as, any assistance provided for in paragraph (1)(A)(i).

(4) Waiver authority

In the case of individuals who have received amounts of pandemic unemployment assistance to which they were not entitled, the State shall require such individuals to repay the amounts of such pandemic unemployment assistance to the State agency, except that the State agency may waive such repayment if it determines that--

(A) the payment of such pandemic unemployment assistance was without fault on the part of any such individual; and

(B) such repayment would be contrary to equity and good conscience.

(e) Waiver of State requirement

Notwithstanding State law, for purposes of assistance authorized under this section, compensation under this Act shall be made to an individual otherwise eligible for such compensation without any waiting period.

(f) Agreements with States

(1) In general

The Secretary shall provide the assistance authorized under subsection (b) through agreements with States which, in the judgment of the Secretary, have an adequate system for administering such assistance through existing State agencies, including procedures for identity verification or validation and for timely payment, to the extent reasonable and practicable.

(2) Payments to States

There shall be paid to each State which has entered into an agreement under this subsection an amount equal to 100 percent of--

(A) the total amount of assistance provided by the State pursuant to such agreement; and

(B) any additional administrative expenses incurred by the State by reason of such agreement (as determined by the Secretary), including any administrative expenses necessary to facilitate processing of applications for assistance under this section online or by telephone rather than in-person and expenses related to identity verification or validation and timely and accurate payment.

(3) Terms of payments

Sums payable to any State by reason of such State's having an agreement under this subsection shall be payable, either in advance or by way of reimbursement (as determined by the Secretary), in such amounts as the Secretary estimates the State will be entitled to receive under this subsection for each calendar month, reduced or increased, as the case may be, by any amount by which the Secretary finds that his estimates for any prior calendar month were greater or less than the amounts which

should have been paid to the State. Such estimates may be made on the basis of such statistical, sampling, or other method as may be agreed upon by the Secretary and the State agency of the State involved.

(g) Funding

(1) Assistance

(A) In general

Funds in the extended unemployment compensation account (as established by section 1105(a) of Title 42) of the Unemployment Trust Fund (as established by section 1104(a) of Title 42) shall be used to make payments to States pursuant to subsection (f)(2)(A).

(B) Transfer of funds

Notwithstanding any other provision of law, the Secretary of the Treasury shall transfer from the general fund of the Treasury (from funds not otherwise appropriated) to the extended unemployment compensation account such sums as the Secretary of Labor estimates to be necessary to make payments described in subparagraph (A). There are appropriated from the general fund of the Treasury, without fiscal year limitation, the sums referred to in the preceding sentence and such sums shall not be required to be repaid.

(2) Administrative expenses

(A) In general

Funds in the employment security administration account (as established by section 1101(a) of Title 42) of the Unemployment Trust Fund (as established by section 1104(a) of Title 42) shall be used to make payments to States pursuant to subsection (f)(2)(B).

(B) Transfer of funds

Notwithstanding any other provision of law, the Secretary of the Treasury shall transfer from the general fund of the Treasury (from funds not otherwise appropriated) to the employment security administration account such sums as the Secretary of Labor estimates to be necessary to make payments described in subparagraph (A). There are appropriated from the general fund of the Treasury, without fiscal year limitation, the sums referred to in the preceding sentence and such sums shall not be required to be repaid.

(3) Certifications

The Secretary of Labor shall from time to time certify to the Secretary of the Treasury for payment to each State the sums payable to such State under paragraphs (1) and (2).

(h) Relationship between pandemic unemployment assistance and disaster unemployment assistance

Except as otherwise provided in this section or to the extent there is a conflict between this section and part 625 of title 20, Code of Federal Regulations, such part 625 shall apply to this section as if--

(1) the term "COVID-19 public health emergency" were substituted for the term "major disaster" each place it appears in such part 625; and

(2) the term "pandemic" were substituted for the term "disaster" each place it appears in such part 625.

**42 U.S.C. § 5177**

**§ 5177. Unemployment assistance**

(a) Benefit assistance

The President is authorized to provide to any individual unemployed as a result of a major disaster such benefit assistance as he deems appropriate while such individual is unemployed for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation (as that term is defined in section 85(b) of Title 26) or waiting period credit. Such assistance as the President shall provide shall be available to an individual as long as the individual's unemployment caused by the major disaster continues or until the individual is reemployed in a suitable position, but no longer than 26 weeks after the major disaster is declared. Such assistance for a week of unemployment shall not exceed the maximum weekly amount authorized under the unemployment compensation law of the State in which the disaster occurred. The President is directed to provide such assistance through agreements with States which, in his judgment, have an adequate system for administering such assistance through existing State agencies.

(b) Reemployment assistance

(1) State assistance

A State shall provide, without reimbursement from any funds provided under this chapter, reemployment assistance services under any other law administered by the State to individuals receiving benefits under this section.

(2) Federal assistance

The President may provide reemployment assistance services under other laws to individuals who are unemployed as a result of a major disaster and who reside in a State which does not provide such services.

**20 C.F.R. § 625.4**

**§ 625.4 Eligibility requirements for Disaster Unemployment Assistance**

An individual shall be eligible to receive a payment of DUA with respect to a week of unemployment, in accordance with the provisions of the Act and this part if:

(a) That week begins during a Disaster Assistance Period;

(b) The applicable State for the individual has entered into an Agreement which is in effect with respect to that week;

(c) The individual is an unemployed worker or an unemployed self-employed individual;

(d) The individual's unemployment with respect to that week is caused by a major disaster, as provided in § 625.5;

(e) The individual has filed a timely initial application for DUA and, as appropriate, a timely application for a payment of DUA with respect to that week;

(f) That week is a week of unemployment for the individual;

(g) The individual is able to work and available for work within the meaning of the applicable State law: Provided, That an individual shall be deemed to meet this requirement if any injury caused by the major disaster is the reason for inability to work or engage in self-employment; or, in the case of an unemployed self-employed individual, the individual performs service or activities which are solely for the purpose of enabling the individual to resume self-employment;

(h) The individual has not refused a bona fide offer of employment in a suitable position, or refused without good cause to resume or commence suitable self-employment, if the employment or self-employment could have been undertaken in that week or in any prior week in the Disaster Assistance Period; and

(i) The individual is not eligible for compensation (as defined in § 625.2(d)) or for waiting period credit for such week under any other Federal or State law, except that an individual determined ineligible because of the receipt of disqualifying income shall be considered eligible for such compensation or waiting period credit. An individual shall be considered ineligible for compensation or waiting period credit (and thus potentially eligible for DUA) if the individual is under a disqualification for a cause that occurred prior to the individual's unemployment due to the disaster, or for any other reason is ineligible for compensation or waiting period credit as a direct result of the major disaster.

**20 C.F.R. § 625.12**

**§ 625.12 The applicable State for an individual**

(a) Applicable State. The applicable State for an individual shall be that State in which the individual's unemployment is the result of a major disaster.

(b) Limitation. DUA is payable to an individual only by an applicable State as determined pursuant to paragraph (a) of this section, and—

(1) Only pursuant to an Agreement entered into pursuant to the Act and this part, and with respect to weeks in which the Agreement is in effect; and

(2) Only with respect to weeks of unemployment that begin during a Disaster Assistance Period.