No. 23-1163

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

RACHEL CREAGER IRELAND, RAEVENE ADAMS, AND DARCEAL TOBEY,

on behalf of themselves and all other similarly situated individuals,

Plaintiffs-Appellants

v.

UNITED STATES OF AMERICA,

Defendant-Appellee

Appeal from the United States District Court for the Western District of Texas in 1:21-CV-1049-LY

Judge Lee Yeakel

# APPELLANTS' REPLY BRIEF

Joshua A. Segal
Leon Dayan
Bredhoff & Kaiser PLLC
805 15th Street NW, Suite 1000
Washington, DC 20005
(202) 842-2600
jsegal@bredhoff.com
ldayan@bredhoff.com

Christopher J. Williams
National Legal Advocacy Network
1 N LaSalle Street, Suite 1275
Chicago, IL 60602
(312) 795-9121
cwilliams@n-lan.org

Daniel M. Rosenthal
Ryan E. Griffin
Charlotte H. Schwartz
James & Hoffman, P.C.
1629 K Street NW, Suite 1050
Washington, DC 20006
Tel: (202) 496-0500
Fax: (202) 496-0555
dmrosenthal@jamhoff.com
regriffin@jamhoff.com
chschwartz@jamhoff.com

*Attorneys for Plaintiffs-Appellants*

May 15, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 3

I. The PUA statute gives rise to a Tucker Act claim because the plain text of Section 9021 (b) mandates payment by the Federal Government ........ 3

A. The question under the Tucker Act is whether there is a payment obligation, not how the obligation is administered ........ 3

B. The PUA statute mandates payment by the Federal Government ........ 6

1. The plain text of the PUA statute mandates payment by the Secretary to covered individuals ........ 6

2. Congress deliberately differentiated the PUA statute from related programs creating a voluntary grant program for states ........ 9

II. The Government's other arguments are unavailing ........ 14

A. The Government's practicability arguments are wrong on their own terms ........ 14

1. Cross-state administration was permitted and practicable ........ 14

2. Congress appropriated funds that could have been used for direct federal administration ........ 18

B. The Government's interpretation improperly elevates an administrative mechanism over the core substantive mandate of the statute ........ 19

C. Subsection (b)'s payment obligation is not limited by DUA regulations that conflict with the PUA statute ........ 21

D. The Government's interpretation conflicts with the PUA statute's legislative plan ........ 22

CONCLUSION ........ 24

CERTIFICATE OF COMPLIANCE ........ 26

# TABLE OF AUTHORITIES

## Cases

*Barnhart v. Peabody Coal Co.*, 537 U.S. 149 (2003)............................................20

*Bittner v. United States*, 143 S. Ct. 713 (2023) ................................................13, 14

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)........................................................7

*CFTC v. Schor*, 478 U.S. 833 (1986)......................................................................12

*Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330 (Fed. Cir. 2021).......2, 4, 18

*Crawford v. Walsh*, No. 21-2238, 2022 BL 114230 (D.D.C. March 31, 2022)........7

*Dep't of Homeland Security v. MacLean*, 574 U.S. 383 (2015).............................13

*Gallardo v. Marstiller*, 142 S. Ct. 1751 (2022) ......................................................13

*Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ...........................................................................................................16

*J.G.B. Enters., Inc. v. United States*, 497 F.3d 1259 (Fed. Cir. 2007) ......................4

*King v. Burwell*, 576 U.S. 473 (2015) .......................................................20, 23, 24

*Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308 (2020) ......................... ...........................................................................2, 3, 4, 5, 6, 7, 18

*N.Y. & Presbyterian Hosp. v. United States*, 881 F.3d 877 (Fed. Cir. 2018)............8

*Republic of Sudan v. Harrison*, 139 S. Ct. 1048 (2019)............................................7

*Russello v. United States*, 464 U.S. 16 (1983).......................................................14

*Salinas v. U.S. R.R. Ret. Bd.*, 141 S. Ct. 691 (2021)...............................................10

*United States v. Mitchell*, 463 U.S. 206 (1983) ..................................................8, 23

*United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003)..................2, 3

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326 (Fed. Cir. 2005) ..... ...........................................................................................................16

*Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457 (2001) .................................20

*Wooden v. United States*, 142 S. Ct. 1063 (2022) .................................................23

**Statutes**

15 U.S.C. § 9021
  15 U.S.C. § 9021(a)(3) .................................................................11, 23
  15 U.S.C. § 9021(b) ................................................................6, 7, 12, 13
  15 U.S.C. § 9021(c)(5)(A) ...............................................................9, 15
  15 U.S.C. § 9021(c)(5)(B)(i) ............................................................9, 15
  15 U.S.C. § 9021(d) .........................................................................6, 8
  15 U.S.C. § 9021(f) ....................................................................7, 15, 21

15 U.S.C. § 9023
  15 U.S.C. § 9023(a) ...................................................................1, 10, 11
  15 U.S.C. § 9023(b)(1) ..........................................................................1

15 U.S.C. § 9024
  15 U.S.C. § 9024(a) .......................................................................10,11
  15 U.S.C. § 9024(c)(1)(A) ....................................................................11

15 U.S.C. § 9025
  15 U.S.C. § 9025(a) .............................................................................10
  15 U.S.C. § 9025(a)(1) .........................................................................11
  15 U.S.C. § 9025(a)(2) .........................................................................11

15 U.S.C. § 9027
  15 U.S.C. § 9027(a) .............................................................................10
  15 U.S.C. § 9027(b)(1) .........................................................................11

15 U.S.C. § 9034
  15 U.S.C. § 9034(a) .............................................................................18
  15 U.S.C. § 9034(b)(1) .........................................................................19
  15 U.S.C. § 9034(b)(2) .........................................................................19

26 U.S.C. § 3304 ......................................................................................13

28 U.S.C. § 1491(a)(1) ...............................................................................3

28 U.S.C. § 1346(a)(2) ...............................................................................3

42 U.S.C. § 1103 ......................................................................................13

42 U.S.C. § 5177(a) ....................................................................................13

**Regulations**

20 C.F.R. § 602 ............................................................................................16

20 C.F.R. § 603 ............................................................................................16

20 C.F.R. § 603.6(b)(1)(v) ...........................................................................16

20 C.F.R. § 604 ............................................................................................16

20 C.F.R. § 625.4(a).....................................................................................22

20 C.F.R. § 625.4(b) ....................................................................................22

**Legislative Materials**

166 Cong. Rec. S2025 (daily ed. Mar. 25, 2020) (statement of Sen. Maria Cantwell)..........................................................................................24

166 Cong. Rec. S2056 (daily ed. Mar. 25, 2020) (statement of Sen. Susan Collins) ...........................................................................................23

**Other Authorities**

Greg Iacurci, *States Will Start Cutting Off Federal Unemployment Benefits This Week*, CNBC, https://www.cnbc.com/2021/06/07/states-will-be-ending-federal-unemployment-benefits-this-week.html (June 7, 2021) ..................12

Unemployment Insurance Program Letter 16-20 ..............................................9, 15

Under the Pandemic Unemployment Assistance (PUA) statute, the "*Secretary* [of Labor] *shall provide* to any covered individual unemployment benefit assistance." 15 U.S.C. § 9021(b) (emphasis added). The "Secretary shall provide" mandate of Section 9021 is unique among the several unemployment compensation programs created by the same statute: no other program provides that the Secretary shall provide assistance to individuals. Rather, in the other programs, Congress provided that "State agenc[ies] will make payments," but only if the state "desires" to participate, and only until the state "terminate[s]" its participation. *See, e.g.*, 15 U.S.C. § 9023(a), (b)(1). That language is absent from Section 9021.

The question for this Court is whether to give effect to the unique language of Section 9021, or instead to treat PUA as identical to the other unemployment compensation programs in the CARES Act. The Government argues for the latter. On its reading, the PUA program, like every other unemployment compensation program in the statute, merely makes funds available to states who choose, at their discretion, to provide benefits to their residents. But the Government largely ignores the "Secretary shall provide" language of Section 9021; provides no explanation of why Congress included that language in the PUA statute (and omitted it from every related statutory section); and disregards other critical elements of the statutory text, such as its uniform national definition of "covered

individual" and its provisions contemplating that states would not necessarily serve as the exclusive agent for payments to their residents.

Moreover, many of the Government's arguments are based on a misconception of the Tucker Act, the statute invoked by Plaintiffs here. The Tucker Act permits claims against the Federal Government where a statute can "'fairly be interpreted as mandating compensation by the Federal Government.'" *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1328 (2020) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)). Importantly, Tucker Act liability does not turn on a direct payment relationship between the Federal Government and the plaintiff, as this Court recently recognized in *Columbus Regional Hospital v. United States*, 990 F.3d 1330 (Fed. Cir. 2021). Likewise, Tucker Act liability does not depend on Congress appropriating funds for such direct payments, as the Supreme Court made clear in *Maine Community*.

Because Section 9021 can fairly be interpreted as mandating compensation to covered individuals, this Court should hold that Plaintiffs have stated a claim under the Tucker Act.

# ARGUMENT

## I. The PUA statute gives rise to a Tucker Act claim because the plain text of Section 9021(b) mandates payment by the Federal Government.

### A. The question under the Tucker Act is whether there is a payment obligation, not how the obligation is administered.

The Tucker Act waives sovereign immunity and creates a cause of action for claims against the United States for money damages. *See* 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2) (Little Tucker Act). To determine "whether a statutory claim falls within the Tucker Act's immunity waiver, [the Court] typically employ[s] a 'fair interpretation' test," meaning that a statute may form the basis of a Tucker Act claim if it can "fairly be interpreted as mandating compensation by the Federal Government." *Me. Cmty. Health Options*, 140 S. Ct. at 1328 (quotation marks omitted). "It is enough . . . that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages . . . . [A] fair inference will do." *White Mountain Apache Tribe,* 537 U.S. at 473. Statutory language mandating payment is enough to "create both a right and a remedy under the Tucker Act." *Me. Cmty. Health Options*, at 1329 (quotation marks omitted).

Under the Tucker Act, liability does not depend on a direct payment relationship between the plaintiff and the Federal Government. *Contra* Resp. Br.

11, 23. Indeed, this Court has frequently recognized Tucker Act claims in the absence of such a relationship.

This situation arises, for instance, where a Tucker Act claim is brought by a third-party beneficiary of a government contract. Act. *See J.G.B. Enters., Inc. v. United States*, 497 F.3d 1259, 1261 (Fed. Cir. 2007). This Court recently recognized a Tucker Act claim brought by a regional hospital in Indiana on the basis that it was a third-party beneficiary of a Disaster Unemployment Assistance (DUA) agreement between the Federal Emergency Management Agency (FEMA) and the state government. *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1335–36 (Fed. Cir. 2021). The agreement never provided for direct payment from FEMA to the hospital. Instead, the funds flowed through the state government, which acted as a "grantee for all grant assistance" provided to institutions, including the hospital. *Id.* at 1336. The route the payments took to get to the hospital simply had no bearing on the hospital's right to sue under the Tucker Act. Likewise, here, the relevant question is not what route the payments take to get to the claimant, but solely whether the statute can be "fairly interpreted" to require that payments be made to the claimant. *Me. Cmty. Health Options*, 140 S. Ct. at 1328.

Similarly, Tucker Act liability does not depend on whether Congress has appropriated money to fulfill a statutory payment obligation. In *Maine Community*,

Congress had not merely failed to appropriate funds, it had enacted a provision instructing that *no* available funds be used to satisfy the payment obligation at issue, and even that express language did not prevent recovery under the Tucker Act. *Id.* at 1317. As the Court noted, Congress is perfectly capable of making payments contingent on appropriations through express language, something it does all the time. *Id.* at 1322–23 & n.7. The absence of any such language demonstrates that the payment obligation is not dependent on any appropriation. *Id.*

Finally, Tucker Act liability does not require that Congress has set forth a detailed scheme for administering payments. *Contra* Resp. Br. 24–28. The Supreme Court has explained that Congress can "create an obligation directly by statute, without also providing details about how it must be satisfied." *Me. Cmty. Health Options*, 140 S. Ct. at 1320. For instance, in *Maine Community*, no one argued that the Government actually could have paid insurance companies despite Congress's prohibition on spending money for that purpose. Rather, the question was simply whether the statutory text establishes a payment mandate.

In short, this Court's inquiry under the Tucker Act focuses solely on whether the language of 15 U.S.C. § 9021 can fairly be interpreted as mandating payment by the Federal Government. As we show below, it can.

### B. The PUA statute mandates payment by the Federal Government.

#### 1. The plain text of the PUA statute mandates payment by the Secretary to covered individuals.

The PUA statute satisfies the fair interpretation standard based on its plain text.

Section 9021(b) requires that the Secretary "shall provide to any covered individual unemployment benefit assistance." 15 U.S.C. § 9021(b). Section 9021(a) defines covered individual as anyone in the United States unemployed due to COVID-19 and ineligible for state unemployment benefits, without reference to whether the person's home state has agreed to administer benefits. Section 9021(c) requires the Secretary to make PUA benefits available to covered individuals for all weeks of eligibility ending on or before September 6, 2021. And Section 9021(d) specifies the formula for calculating the amount of money a covered individual would receive under the program.

By expressly mandating that the Secretary "shall" provide specified monetary benefits to covered individuals, identifying those individuals, and mandating that the benefits "shall be available" until September 6, 2021, the double mandate of subsections (b) and (c) more than passes the "fair interpretation" test. *Me. Cmty. Health Options*, 140 S. Ct. at 1328. By "'commanding the payment of a specified amount of money by the United States,'" the statute authorizes "'a claim for damages in the defaulted amount.'" *Id.*

at 1329 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 923 (1988) (Scalia, J. dissenting)).

The Government gives at best cursory attention to the language of Section 9021(b). Under the Government's interpretation, it seems, the statute would mean the same thing if Section 9021(b) were deleted entirely. The Government further argues that the "only" payment obligation in the statute is the mandate under Section 9021(f)(2) to pay states that participate in administering the program. *See* Resp. Br. 11–12. But that reading ignores Section 9021(b). If the statute established a payment obligation only to states, there would be no need to include a separate subsection that squarely places the obligation on the Secretary to "provide . . . assistance" to "any covered individual." 15 U.S.C. § 9021(b).

In short, the Government fails to explain why, on its reading, Congress included Section 9021(b) at all. By reading Section 9021(b) out of the statute, the Government violates the well-settled rule against "'adopt[ing] an interpretation of a congressional enactment which renders superfluous another portion of that same law.'" *Me. Cmty. Health Options*, 140 S. at 1323 (quoting *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019)).[1]

---

[1] The Government cites an unpublished, out-of-circuit, district court decision to support its interpretation of the statute. *See* Resp. Br. 11 (citing *Crawford v. Walsh*, No. 21-2238, 2022 BL 114230 (D.D.C. March 31, 2022)). But that decision dismissed a handwritten pro se complaint without addressing, let alone rejecting,

When the Government does address Section 9021(b), it seems to suggest that the statute does not create a payment obligation because subsection (b) states that the Secretary "shall provide assistance," without explicitly using the word "pay" or "money" or "payment." Resp. Br. 11. But the "fair interpretation" test does not turn on the use of magic words. The "assistance" subsection (b) refers to is, unquestionably, money. *See* 15 U.S.C. § 9021(d). The fact that the statute refers to PUA benefits as "assistance" rather than "money" or "payments" is irrelevant. Indeed, the Supreme Court and this Court have recognized Tucker Act claims under statutes with *no* direct reference to "payments" or "money." *See United States v. Mitchell*, 463 U.S. 206, 225 (1983) (holding that a payment obligation was implied in statutes and regulation establishing a fiduciary obligation, despite the lack of any textual reference to payment); *N.Y. & Presbyterian Hosp. v. United States*, 881 F.3d 877, 882 (Fed. Cir. 2018) (holding that a statute providing that a party "shall be indemnified" is money-mandating).

While largely ignoring subsection (b), the Government points to language in subsection (c) referencing states' administration of PUA benefits. But those references do not suggest that the payment obligation of subsection (b) is contingent on the existence of an agreement with the specific state in which a

---

any of the arguments we raise here. This Court should therefore afford it no persuasive weight.

covered individual lives. To the contrary, subsection (c) contemplates that a state other than an individual's state of residence could administer PUA benefits. *See* 15 U.S.C. §§ 9021(c)(5)(A) (giving covered individuals the right to appeal decisions regarding PUA "made by the State agency *of any of the States*"), (B)(i) (providing that such appeals "shall be carried out *by the applicable State that made the determination*" (emphases added). Indeed, in Department of Labor guidance regarding implementation of PUA, the Department itself recognized that states were permitted to "operate the PUA program on behalf of other states." Unemployment Insurance Program Letter 16-20, at 5.

Thus, subsection (c) confirms that the payment obligation of subsection (b) is not contingent on whether the recipient's home state has agreed to administer the program. The Government fails to address Subsections (c)(5)(A) or (c)(B)(i) in its brief, just as it fails to meaningfully address other aspects of the text that are inconsistent with its interpretation, such as the mandate of Subsection (b).

2. **Congress deliberately differentiated the PUA statute from related programs creating a voluntary grant program for states.**

The mandatory nature of the Secretary's obligation to provide PUA is confirmed by the stark differences between Section 9021 and the other unemployment compensation programs in the CARES Act. The Government trivializes these distinctions, mischaracterizing them as "minor semantic differences." Resp. Br. 21. But the differences between the programs are

substantial and structural. By minimizing them, the Government violates the commonsense rule of interpretation that materially different statutory language carries materially different meaning—a rule that is especially strong when applied to provisions contained not merely within the same statute, but also within the same organic act. *Salinas v. U.S. R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021).

Here, there are four critical differences between the statutory text of the PUA provisions and that of the other unemployment compensation programs that Congress enacted simultaneously as part of the CARES Act, none of which the Government even attempts to reconcile with its interpretation of the statute.

First, in *all* of the related CARES Act programs, Congress provided that the programs were subject to each state's "desire" to participate. The statutory language enacting each of those programs provides that "[a]ny state which *desires* to do so may enter into, and participate in, an agreement under this section with the Secretary." *See* 15 U.S.C. § 9023(a) (emphasis added); 15 U.S.C. § 9025(a) (same); 15 U.S.C. § 9024(a) (same); 15 U.S.C. § 9027(a) (same). The PUA section, by contrast, contains no such language. This difference indicates that the PUA program was not subject to states' whims about whether to participate.

Second, *none* of the related CARES Act programs include anything close to the requirement that the "Secretary shall" pay benefits to "covered individuals." Yet, Congress included precisely that language in Section 9021. Indeed, as

explained *supra* at 7, to interpret PUA as operating in the same way as these other programs requires reading Section 9021(b) out of the statute entirely.

Third, in *none* of the related CARES Act programs did Congress include detailed eligibility requirements. Rather, those provisions incorporate by reference eligibility criteria that are set by the states. *See* 15 U.S.C. §§ 9023(b)(1), 9024(c)(1)(A), 9025(a)(2), 9027(b)(1). By contrast, in Section 9021, Congress established comprehensive eligibility criteria, thereby establishing a nationally uniform system. *See* 15 U.S.C. § 9021(a)(3). The Government contends that this difference is irrelevant because it does not directly address whether the Secretary was obligated to provide PUA benefits to covered individuals. On the contrary, the eligibility criteria of Section 9021 reflect Congress's choice that states would not have authority to decide eligibility. This is a fundamental feature of the PUA program, which was designed to fill gaps in preexisting state programs. And it is squarely at odds with the federal government's suggestion that it was bound to defer to Texas's decision that PUA benefits would no longer be paid to Texans.

Fourth, in *all* of the related CARES Act programs, Congress expressly provided that states could terminate benefits. 15 U.S.C. §§ 9023(a), 9024(a); 9025(a)(1). The PUA statute does not contemplate such termination. *See* 15 U.S.C. § 9021. To be clear, Plaintiffs do not argue that Congress' omission of an express termination provision means that states were prohibited from withdrawing

from agreements to administer the PUA benefits. Thus, the Government's invocation of the Tenth Amendment is beside the point. Rather, the absence of termination language confirms that Congress did not view state termination as significant to the statutory scheme, given that the Secretary must provide assistance to "*any* covered individual," 15 U.S.C. § 9021(b) (emphasis added), regardless of state participation. Whereas the other CARES Act programs terminated upon state withdrawal, PUA was designed to continue regardless of a state's participation until the deadline set by the statute.[2]

Furthermore, the PUA statute is distinct from other, related unemployment compensation statutes. Unlike the statute creating the Disaster Unemployment Assistance (DUA) program, a similar pre-existing program, it does not merely "authorize" the executive branch to provide benefits to individuals whose state has

---

[2] The Government says that because DOL issued informal guidance saying that PUA payments would end upon state termination, and Congress did not address that guidance when it amended the CARES ACT, this Court should infer that Congress agreed with that guidance. Resp. Br. 18. But the case law the Government cites pertains to formally promulgated regulations with the force of law, not informal guidance. *See CFTC v. Schor*, 478 U.S. 833, 837 (1986). And even if later-in-time inaction from a subsequent Congress related to informal guidance can ever be relevant, at the time of the amendments in March 2021, no state had withdrawn from the program, meaning that Congress would have had no reason to address this guidance. *See* Appx11 ¶ 6; Greg Iacurci, *States Will Start Cutting Off Federal Unemployment Benefits This Week*, CNBC, https://www.cnbc.com/2021/06/07/states-will-be-ending-federal-unemployment-benefits-this-week.html (June 7, 2021) (noting that the first states to opt out of CARES Act programs were doing as of June 12, 2021).

made a request. 42 U.S.C. § 5177(a). Instead, the PUA statute requires that the Secretary "shall provide to any covered individual unemployment benefit assistance," without any reference to any state requests. 15 U.S.C. § 9021(b). Nor does the PUA statute create a mechanism for states to apply for additional funding for their unemployment programs, unlike the general federal unemployment compensation program. *See* 42 U.S.C. § 1103; 26 U.S.C. § 3304.

The Government attempts to minimize these significant differences by pointing to similarities between the CARES Act's programs, arguing that because they are similar in some ways, this Court should ignore the differences between them. Resp. Br. 19–20. But the Supreme Court rejected a similar argument made by the Government in *Bittner v. United States*, 143 S. Ct. 713, 720 (2023). There, the Government argued that because Congress had explicitly authorized certain penalties for one type of violation of the Bank Secrecy Act, the Court should "infer that Congress meant to do so for" other "analogous" violations. *Id*. But as the Court held, "that line of reasoning cuts against the government," because "[w]hen Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Id.* (citing *Dep't of Homeland Security v. MacLean*, 574 U.S. 383, 391 (2015); *Gallardo v. Marstiller*, 142 S. Ct. 1751, 1759 (2022)).

Congress knew how to create a program that operated in the manner the Government describes. When "Congress wished" to tie the provision of benefits to a state's desire to participate in a program, "it knew exactly how to do so." *See Bittner*, 142 S. Ct. at 720. It did so in the other CARES Act unemployment programs, and in other related unemployment compensation statutes, but not in the PUA statute. This Court should not "ascribe this difference to a simple mistake in draftsmanship," *Russello v. United States*, 464 U.S. 16, 23 (1983), as the Government insists. Instead, it should reject the Government's invitation to ignore Congress's deliberate choice to differentiate the PUA statute from related statutes enacting unemployment programs.

## II. The Government's other arguments are unavailing.

### C. The Government's practicability arguments are wrong on their own terms.

The Government devotes significant attention to two arguments concerning the practicability of administering the PUA program: the details of cross-state administration and the alleged lack of appropriations for direct administration by the Federal Government. As explained above, practicability arguments have at most marginal relevance to the key question in this case: whether the PUA statute mandates payment by the Federal Government. But even if the Government's arguments were relevant, they are wrong on their own terms.

**1. Cross-state administration was permitted and practicable.**

The Government is wrong to suggest that the statute barred any method of administration aside from a state issuing payments to its own residents. *See* Resp. Br. 22. Through several provisions, the statute contemplates that the Federal Government might work with a state to provide benefits to residents of another state that is unable or unwilling to administer the program.

First, the statute references the possibility that some states might lack an adequate system for distributing benefits. *See* 15 U.S.C. § 9021(f). Despite that express recognition, nothing in the statute suggests that residents of those states would be deprived of benefits due to their states' incapacity. Second, the statute gives covered individuals the right to appeal decisions regarding PUA "made by the State agency *of any of the states*," and provides that such appeals "shall be carried out *by the applicable state that made the determination*." 15 U.S.C. §§ 9021(c)(5)(A), (B)(i) (emphases added). If a covered individual could only receive PUA benefits from their own state of residence, that language would be unnecessary. Notably, the Government does not contest this point. Nor could it credibly do so, given DOL's guidance recognizing that states could operate the program on behalf of other states. Unemployment Insurance Program Letter 16-20 at 5.

Nor has the Government shown that cross-state administration would be impracticable. First, the Government ignores the fact that a covered individual would have documentation showing whether their application for unemployment assistance had been rejected by their state or cut off after a certain number of weeks, thus obviating the need for "extensive coordination" with that individual's state government. *See* Resp. Br. 24. Next, the Government contends that state unemployment agencies are somehow incapable of reading other states' statutes, *id.* at 25, but that argument lacks any support, especially in light of the fact that these same agency personnel were tasked with implementing the various CARES Act unemployment programs as well as numerous pre-existing federal regulations that apply to state unemployment programs. *See, e.g.*, 20 C.F.R. §§ 602–604.

The Government also says that 20 C.F.R. § 603.6(b)(1)(v) does not require disclosure of information to DOL "in its capacity as administrator of the unemployment insurance program."[3] *See* Resp. Br. 26–27. But the Government

---

[3] Defendant's contention that Plaintiffs' forfeited this argument is wrong. *See* Resp. Br. 26. Our opening brief invoked the regulatory disclosure requirement in support of an argument that was squarely presented to the district court: that cross-state administration of PUA was not merely contemplated by the statute but also practicable. *See* Pls'. Opp. to Mot. to Dismiss at 14, No. 21-cv-01409, Dkt. 18 (W.D. Tex., March 15, 2022). "[I]t is the claim or issue that must be pressed before the trial court, not the underlying arguments in support of that claim or issue." *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1338 n. 11 (Fed. Cir. 2005) (citing *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001)).

does not contest that the regulation requires disclosure of relevant information to the federal government in some "capacity." While the Government complains that the Secretary would have to request that information, it offers no reason why the Secretary could not make such a request in this circumstance. *Id*. at 27. In other words, the Government concedes that the regulation gave the Secretary the necessary tools to collect information that would facilitate cross-state administration. The Secretary merely had to use them.

Finally, the Government dismisses the idea that any other state would be interested in administering PUA benefits to Texans, *see* Resp. Br. 24, but ignores the significant financial incentive the statute provided: by requiring the federal government to pay for 100 percent of the assistance *and* the administrative expenses, the statute gave other states the opportunity to hire more of their own residents to implement the program, all on the federal government's dime. It is not difficult to imagine why a state would find that appealing—especially in the midst of an unprecedented unemployment crisis.

To be clear, Plaintiffs point to the availability of cross-state administration for the limited purpose of correcting the district court's mistaken view that the statute "does not include a mechanism for the Secretary to pay out benefits under the Act in the absence of an agreement with the relevant state." APPX37. The availability of such a mechanism further confirms that the PUA's payment

obligation is to covered individuals, not their states, and is not contingent on the existence of an agreement with their state government. Plaintiffs are not required to make any factual allegations in order to correct this mistaken view of the statute. *Contra* Resp. Br. 24.[4]

**2. Congress appropriated funds that could have been used for direct federal administration.**

The Government also contends that a lack of appropriations for federal administration of the PUA program weighs against recovery under the Tucker Act. Resp. Br. 16. As shown above, however, that fact is irrelevant under Supreme Court precedent. *Supra* at 3–5. In any event, Congress did appropriate funds the Secretary could have used to set up a mechanism for paying PUA benefits directly to individuals. In 15 U.S.C. § 9034(a), Congress appropriated $2 billion to the Secretary to use for three purposes, including "promot[ing] equitable access" to the program and "timely payment of benefits." The appropriation further specifies that those funds could be used "for Federal administrative costs" and for "systemwide

---

[4] Plaintiffs' discussion of this alternative administrative mechanism, as part of their statutory interpretation argument, does not somehow transform Plaintiffs' theory of liability into a claim under the Administrative Procedure Act (APA). *See* Resp. Br. 23. Like the insurers in *Maine Community*, Plaintiffs "do not ask for prospective, nonmonetary relief to clarify future obligations; they seek specific sums already calculated, past due, and designed to compensate" for past harms. *Me. Cmty. Health*, 140 S. Ct. at 1330–31; *Columbus Reg'l Hosp.*, 990 F.3d at 1352. A Tucker Act claim, not an APA suit, is the appropriate vehicle for recovering such sums. *Id.* Similarly, because Plaintiffs do not allege that Texas's withdrawal was unlawful, Plaintiffs could not bring their claim against Texas. *Contra* Resp. Br. 23.

infrastructure investment and development" related to those purposes. 15 U.S.C. § 9034(b)(1)–(2). The Government merely states in a conclusory manner that this appropriation could not be used to administer the program directly. Resp. Br. 28 n. 2. But ensuring that covered individuals continue to receive PUA benefits regardless of their state government's desire to participate in the program "promote[s] equitable access" to the program. 15 U.S.C. § 9034(a). Doing so also ensures "timely payment of benefits" to those individuals. *Id.* The Government offers no reason why this appropriation could not have been used to fulfill its payment obligation through direct federal administration of the program.

Again, Plaintiffs do not need to prove that the Government actually could have paid benefits to them in the wake of Texas's withdrawal. If that were the test, then the insurers in *Maine Community* would have failed to state a claim, since the agency there was indisputably barred from paying them. Nevertheless, the Government's interpretation of 15 U.S.C. § 9034(a) is incorrect.

### D. The Government's interpretation improperly elevates an administrative mechanism over the core substantive mandate of the statute.

While largely ignoring subsection (b), *see supra* at 7, the Government characterizes subsection (f) as the core provision of the act. *See* Resp. Br. 15. That characterization is not tenable. Subsection (f) describes a mechanism for delivery of PUA benefits—that is, the *procedure* by which the substantive obligation of the

statute is carried out. It does not authorize the underlying payments, does not identify who is eligible for those payments, does not set the amount of payment that is due, and does not establish how long the program will run. Subsection (f) is, on its face, a procedural, ancillary provision.

The Supreme Court has held that such provisions cannot be read to limit the core, substantive obligations of a statute. In *King v. Burwell*, the Supreme Court treated a provision defining how to calculate tax credits as an "'ancillary provision'" that could not "'alter the fundamental details of a regulatory scheme.'" 576 U.S. 473, 497 (2015) (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)). Reading the calculation provision literally appeared to limit the credits to those who resided in states who had agreed to participate in setting up state health care exchanges. Nonetheless, the Court reasoned that because the tax credits were one of the Affordable Care Act's "key reforms," the calculation provision could not limit the availability of the credits to participating states. *Id.* at 485. If a provision defining how to calculate a benefit is an "ancillary provision," a provision describing the mechanics of delivering a benefit, as in the PUA statute, must also be an ancillary provision. *Id.* at 497.

Furthermore, in *Barnhart,* the Supreme Court held that a procedural provision that appeared *in the exact same sentence* as the substantive provision of a statute did not limit the substantive provision. *Barnhart v. Peabody Coal Co.*, 537

U.S. 149, 152 (2003). In that case, the Court dealt with a provision stating that the Social Security Commissioner "shall, before October 1, 1993, assign each coal industry retiree who is an eligible beneficiary to a signatory operator." *Id.* The Court rejected the coal companies' argument that the Commissioner lacked authority to assign retirees after the deadline. *Id.* at 157. Even where Congress includes a substantive and procedural provision in the same sentence, the Supreme Court held that Congress would need to "sa[y] more" to make the substantive obligation contingent on compliance with the procedural provision. *Id.* at 163.

Subsection (f) does not say anything about making the Secretary's obligation to provide PUA to a covered individual contingent on maintaining an agreement with their state. *See* 15 U.S.C. § 9021(f). There is nothing in the statute explicitly stating that covered individuals lose their right to benefits when a state no longer desires to participate in the program. If Congress had wanted the Secretary's payment obligation to cease completely in the event the government failed to maintain an agreement with a state, it would have said so expressly. This Court should not rewrite the statute to include such a limitation.

### E. Subsection (b)'s payment obligation is not limited by DUA regulations that conflict with the PUA statute.

The Government also points to subsection (h), a provision which partially incorporates by reference the DUA's implementing regulations. *See* Resp. Br. 28–29. The Government relies in particular on a regulation providing that an

individual can only receive DUA benefits if "the applicable State for the individual has entered into an Agreement which is in effect with respect to that week," a provision addressing "eligibility requirements for Disaster Unemployment Assistance." 20 C.F.R. § 625.4(b). But the PUA program's eligibility criteria are laid out exhaustively in the definition of "covered individual" in subsection (a) of the statute. By adding eligibility criteria that are not in the PUA statute, this DUA regulation conflicts with the statute and therefore does not apply.

Notably, this is not the only eligibility criterion that the DUA regulation enumerates. For example, the DUA regulations also require that a recipient's week of unemployment "begins during a Disaster Assistance period." 20 C.F.R. § 625.4(a). And yet no one contends that any of the other DUA-specific eligibility criteria in the regulations apply to the PUA program. For the same reason that a covered individual's week of unemployment need not "begin[] during a Disaster Assistance period," that individual need not reside in a state with an active agreement to administer the PUA program in order to receive PUA benefits.

In short, Plaintiffs' claim must succeed or fail based on the text of Section 9021, not the DUA regulations.

### F. The Government's interpretation conflicts with the PUA statute's legislative plan.

The Supreme Court has made clear that Congress's legislative plan or purpose in passing a statute is an appropriate source for confirming the proper

interpretation of its text. *See Wooden v. United States*, 142 S. Ct. 1063, 1072 (2022). Far from "irrelevant," *see* Resp. Br. 29, the Supreme Court has specifically held that the fact that a damages remedy "furthers the purposes" of a statute weighs in favor of finding that the statute creates a payment obligation. *Mitchell*, 463 U.S. at 226–27. Not only is it appropriate for this Court to consider the PUA statute's purpose, but the Supreme Court has held that courts should avoid interpretations that are *plainly inconsistent* with Congress's plan in passing a statute. *King*, 576 U.S. at 498. Because the Government's interpretation is inconsistent with Congress's plan in enacting the PUA program, this Court should reject it.

Congress's plan in enacting the PUA program is plain from its text and the text of the other CARES Act programs. It is the only CARES Act program that delivers benefits to those who were otherwise not entitled to any unemployment compensation. It did so by defining its eligibility criteria in a uniform manner, regardless of state residence—and thus regardless of any state government's judgment as to who should receive these benefits. *See* 15 U.S.C. § 9021(a)(3).

In order to mitigate the impending "unemployment tsunami" the nation faced at the onset of the pandemic, 166 Cong. Rec. S2056 (daily ed. Mar. 25, 2020) (statement of Sen. Susan Collins), Congress enacted the PUA program to ensure that everyone who needed it had access to unemployment compensation, not just those whom the states had traditionally judged as deserving of such

assistance. *See id.* S2025 (statement of Sen. Maria Cantwell) (highlighting the need for a program that covered "those who are part of a gig economy who many not have been covered in the past"). The PUA statute furthered that purpose by requiring the Secretary to provide benefits to all covered individuals, rather than leaving it up to states to decide whether and when they would receive PUA assistance.

Tellingly, the Government does not even attempt to reconcile its interpretation of the statute with the PUA's legislative plan. *See* Resp. Br. 29–30. And that's because it is irreconcilable. The whole point of the PUA program was to make up for the deficiencies in states' unemployment programs. Giving states a veto over the availability of PUA merely recreates the very problem—workers slipping through the cracks of the existing patchwork of state unemployment insurance programs as COVID was shutting down the economy—that Congress designed the act to avoid. *See King*, 576 U.S. at 492 (rejecting interpretation of statute that would "likely create the very" problem "that Congress designed the Act to avoid").

## CONCLUSION

The Government urges affirmance on the basis that the PUA never required the Secretary to provide PUA benefits to covered individuals. The plain text of the statute forecloses that argument. For the reasons set forth in Plaintiffs' opening

brief and this reply brief, this Court should reverse the district court's dismissal and remand for further proceedings.

Dated: May 15, 2023

Respectfully submitted,

*/s/ Daniel M. Rosenthal*
Daniel M. Rosenthal
Ryan E. Griffin
Charlotte H. Schwartz
James & Hoffman, P.C.
1629 K Street NW, Suite 1050
Washington, DC 20006
Tel: (202) 496-0500
Fax: (202) 496-0555
dmrosenthal@jamhoff.com
regriffin@jamhoff.com
chschwartz@jamhoff.com

Joshua A. Segal
Leon Dayan
Bredhoff & Kaiser PLLC
805 15th Street NW, Suite 1000
Washington, DC 20005
jsegal@bredhoff.com
ldayan@bredhoff.com

Christopher J. Williams
National Legal Advocacy Network
1 N LaSalle Street, Suite 1275
Chicago, IL 60602
(312) 795-9121
cwilliams@n-lan.org

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 5,740 words according to the word-count function in Microsoft Word.

Date: May 15, 2023

*/s/ Daniel M. Rosenthal*
Daniel M. Rosenthal