# United States Court of Appeals for the Federal Circuit

---

**RACHEL CREAGER IRELAND, RAEVENE ADAMS, DARCEAL TOBEY, ON BEHALF OF THEMSELVES AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1163

---

Appeal from the United States District Court for the Western District of Texas in No. 1:21-cv-01049-LY, Judge Lee Yeakel.

---

Decided: May 16, 2024

---

CHARLOTTE SCHWARTZ, James & Hoffman, P.C., Washington, DC, argued for plaintiffs-appellants. Also represented by RYAN EDWARD GRIFFIN, DANIEL M. ROSENTHAL; LEON DAYAN, JOSHUA A. SEGAL, Bredhoff & Kaiser, PLLC, Washington, DC; CHRISTOPHER J. WILLIAMS, National Legal Advocacy Network, Chicago, IL.

STEVEN A. MYERS, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC,

argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, MICHAEL S. RAAB.

JIM DAVY, All Rise Trial & Appellate, Philadelphia, PA, for amicus curiae Unemployed Workers United.

---

Before LOURIE, LINN, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

This appeal is about whether Pandemic Unemployment Assistance remains available to a group of Texans after the Texas governor informed the Department of Labor that Texas would withdraw from its agreement with the Secretary of Labor to participate in the PUA program.

Plaintiffs appeal the decision of the United States District Court for the Western District of Texas granting the Federal Government's motion to dismiss for failure to state a claim. Appellants allege that the Federal Government violated the mandate in PUA that the Secretary of Labor "shall provide . . . assistance" to "any covered individual." 15 U.S.C. § 9021(b). We affirm because PUA does not require the Secretary to pay PUA benefits to individual citizens; rather, the Secretary must provide assistance through agreements with the states.

## BACKGROUND

### I

In March 2020, at the beginning of the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). The CARES Act created several temporary unemployment benefit programs, including Pandemic Unemployment Assistance (PUA), 15 U.S.C. § 9021; Federal Pandemic Unemployment Compensation, 15 U.S.C. § 9023; and Pandemic Emergency

Unemployment Compensation, 15 U.S.C. § 9025. This appeal concerns PUA.

PUA provided up to 79 weeks of benefits to individuals who were unemployed or otherwise unable to work for various reasons relating to the COVID-19 pandemic and who were not otherwise eligible for state unemployment insurance benefits. *See* 15 U.S.C. § 9021(a)(3). This covered, for instance, independent contractors, freelancers, individuals without sufficient work history to qualify for state unemployment benefits, and individuals who qualified for, but had exhausted all rights to, regular unemployment compensation.

Under PUA, "covered individual":

> (A) means an individual who—
>
> (i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title.

*Id.* § 9021(a)(3)(A)(i). To receive benefits, a "covered individual" must self-certify an inability to otherwise work due to COVID-19, *see id.* § 9021(a)(3)(A)(ii), and provide:

> documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment not later than 21 days after the later of the date on which the individual submits an application for pandemic unemployment assistance under this section or the date on which an individual is directed by the State Agency to submit such documentation in accordance with section 625.6(e) of title 20, Code of Federal Regulations, or any successor thereto . . . .

*Id.* § 9021(a)(3)(A)(iii). For covered individuals that provide the requisite documentation, "[a]ssistance for unemployment as a result of COVID-19" is available:

> Subject to subsection (c), the Secretary shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially unemployed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation (as that term is defined in section 85(b) of title 26) or waiting period credit.

*Id.* § 9021(b). To get the benefit assistance from the Secretary of Labor to covered individuals, PUA contemplates agreements with states that provide funds to the states for administration through existing state agencies:

> (f) Agreements with States
>
> (1) In general
>
> The Secretary shall provide the assistance authorized under subsection (b) through agreements with States which, in the judgment of the Secretary, have an adequate system for administering such assistance through existing State agencies, including procedures for identity verification or validation and for timely payment, to the extent reasonable and practicable.
>
> (2) Payments to States
>
> There shall be paid to each State which has entered into an agreement under this subsection an amount equal to 100 percent of—
>
> (A) the total amount of assistance provided by the State pursuant to such agreement; and

> (B) any additional administrative expenses incurred by the State by reason of such agreement (as determined by the Secretary), including any administrative expenses necessary to facilitate processing of applications for assistance under this section online or by telephone rather than in-person and expenses related to identity verification or validation and timely and accurate payment.
>
> (3) Terms of payments
>
> Sums payable to any State by reason of such State's having an agreement under this subsection shall be payable, either in advance or by way of reimbursement (as determined by the Secretary), in such amounts as the Secretary estimates the State will be entitled to receive under this subsection for each calendar month, reduced or increased, as the case may be, by any amount by which the Secretary finds that his estimates for any prior calendar month were greater or less than the amounts which should have been paid to the State. Such estimates may be made on the basis of such statistical, sampling, or other method as may be agreed upon by the Secretary and the State agency of the State involved.

*Id.* § 9021(f). With respect to implementation, PUA also incorporates the regulations governing Disaster Unemployment Assistance (DUA) under the Stafford Act:

> Except as otherwise provided in this section or to the extent there is a conflict between this section and part 625 of title 20, Code of Federal Regulations, such part 625 shall apply to this section . . . .

*Id.* § 9021(h).

## II

Following enactment of the CARES Act, Texas entered into an agreement with the Department of Labor to pay PUA benefits to Texas residents. However, after extending the program's expiration date twice, the Texas governor informed the Department of Labor that it would withdraw from the PUA agreement in June 2021.

Plaintiffs are each Texas residents. And each alleges that after Texas withdrew from the PUA program, Texas ceased paying the PUA benefits for which he or she had previously been eligible.

Plaintiffs then filed a complaint under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), in November 2021. In June 2022, the magistrate judge recommended that the case be dismissed. Magistrate Judge Howell explained that "[t]he plain language of the CARES Act states that the payment of benefits under the Act is predicated on the existence of an agreement with a state" because "[t]he states are responsible for 'provid[ing] [the assistance] . . . pursuant to such agreement,' and then are reimbursed by the Secretary." Appx[1] 37 (quoting 15 U.S.C. § 9021(f)(2)). Plaintiffs argued that "nothing in the CARES Act permitted states to withdraw from the program," but Magistrate Judge Howell determined that "the CARES Act does not include a mechanism for the Secretary to pay out benefits under the Act in the absence of an agreement with the relevant state." *Id.* The magistrate judge reasoned that "Congress did not appropriate funds for the Secretary to provide benefits in the absence of state action," which "shows Congress intended for the funds to solely be administered by the states." *Id.* Continuing, he explained that "Congress's failure to identify an alternative payment method supports

---

[1] "Appx" refers to the appendix that the Appellants filed concurrently with their brief.

a plain reading of the statute that participation by the states is required for receipt of benefits under the CARES Act." Appx 38–39. Magistrate Judge Howell further explained that "[t]he DUA regulations made applicable to the PUA through 15 U.S.C. § 9021(g)" confirmed this conclusion because "benefits are payable 'only by an applicable State . . . and . . . [o]nly pursuant to an Agreement' with the state." Appx 39 (citing 20 C.F.R. § 625.12(b)(1)).

The district court entered an order adopting the report and recommendation "for substantially the reasons stated therein" and dismissed Plaintiffs' case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Ireland v. United States*, No. 1:21-CV-1049-LY, 2022 WL 16846747, at *1 (W.D. Tex. Sept. 6, 2022). The district court determined that the "magistrate judge properly construed the [CARES] Act, finding that nothing in the Act allows the United States Department of Labor, which administers the Act, to bypass the states and pay benefits directly to citizens when states opt out." *Id.*

Plaintiffs appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(2).

## DISCUSSION

We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) according to the law of the regional circuit. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007). Here, that is the Fifth Circuit, which "review[s] de novo the district court's dismissal of Plaintiffs' complaint." *United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 158–59 (5th Cir. 2019). "We accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to Plaintiffs" to "evaluate whether the factual allegations, together with all reasonable inferences, state a plausible claim to relief." *Id.* at 159.

"In statutory construction, we begin with the language of the statute." *Kingdomware Techs. v. United States*, 579 U.S. 162, 171 (2016) (internal quotation marks omitted). But "'we are not guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990) (quoting *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)). If the statute provides a clear answer, the inquiry ends there. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). "Beyond the statute's text, [the traditional tools of statutory construction] include the statute's structure, canons of statutory construction, and legislative history." *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998).

We must address whether 15 U.S.C. § 9021 requires the Secretary to provide unemployment benefit assistance directly to any covered individuals in the absence of a state agreement. We conclude the Secretary has no obligation to pay PUA benefits to individuals in the absence of an agreement with the state. Read in its entirety, the plain language of § 9021 is dispositive: the "Secretary *shall* provide to any covered individual unemployment benefit assistance," and "[t]he Secretary *shall* provide the assistance authorized under subsection (b) *through agreements with States*." 15 U.S.C. § 9021(b), (f)(1) (emphases added). For the reasons set forth below, Plaintiffs have failed to state a claim under the Little Tucker Act.

On appeal, Plaintiffs set forth three main arguments: (1) subsections 9021(a), (b), and (c) require the Secretary to ensure payment of benefits to eligible persons in the absence of a state agreement, notwithstanding the language of § 9021(f); (2) the statute's incorporation of certain DUA regulations does not limit the payment mandate; and (3) Congress made PUA different from related CARES Act programs because PUA, unlike the other CARES Act programs, does not require agreement with the states. We address each in turn.

I

First, Plaintiffs argue that, read together, subsections 9021(a), (b), and (c) require the Secretary to ensure payment of benefits to every eligible person, irrespective of state agreement and participation, and that § 9021(f) does not limit the payment mandate. Starting with § 9021(b), Plaintiffs contend that this subsection creates a payment obligation between the "Secretary" and "any covered individual" because "shall" is a mandatory term. 15 U.S.C. § 9021(b). "Section 9021(b) pairs the mandatory term 'shall' with the expansive phrase 'any covered individual,'" which Plaintiffs argue is "materially identical" to the statute at issue in *SAS Institute*, where "the Supreme Court held . . . the combination of 'shall' and 'any' creates a 'directive [that] is both mandatory and comprehensive.'" Appellants' Br. 17, 18 (first quoting 15 U.S.C. § 9021(b), then quoting *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018)).

Consistent with a "comprehensive" mandate, Plaintiffs point to the definition of "covered individual" in § 9021(a) and argue that "the express terms of subsection (a)(3)(A)" coupled with "the absence of any pertinent exclusion in subsection (a)(3)(B) confirm that the statute's payment obligation is not conditional on any state agreement." Appellants' Br. 19. Section 9021(a)(3)(A) defines "covered individual" to include anyone in the United States unemployed due to COVID-19 and ineligible for state unemployment benefits. *See* 15 U.S.C. § 9021(a)(3). And § 9021(a)(3)(B) contains certain exclusions, such as teleworking individuals. *See id.* § 9021(a)(3)(B). Plaintiffs note "nowhere in th[is] subsection, or elsewhere in the statute, did Congress exclude individuals whose state has declined to administer benefits." Appellants' Br. 19. Therefore, Plaintiffs argue, "[w]here Congress explicitly enumerates certain exceptions to a general requirement, additional exceptions are not to be implied, in the absence of a contrary legislative intent." Appellants' Br. 19

(internal quotations omitted) (quoting *Allied Tube & Conduit Corp. v. United States*, 898 F.2d 780, 784 (Fed. Cir. 1990)). Last, Plaintiffs argue that § 9021(c) bolsters their position because "[n]either subsection [§ 9021](c) nor any other provision of the statute provides for early termination of benefits based on state decisions about participation." Appellants' Br. 19. Rather, like subsections 9021(a) and (b), Plaintiffs broadly read § 9021(c) to require that "the assistance authorized under subsection (b) shall be available to a covered individual" up until "September 6, 2021," irrespective of state agreement. 15 U.S.C. § 9021(c); *see* Appellants' Br. 19.

We are not persuaded. Although the language of subsections 9021(a), (b), and (c) appear to provide a broad mandate, when each subsection of the PUA statute is read together, i.e., "'the whole law'" is read together, *Dole*, 494 U.S. at 35 (quoting *Massachusetts*, 490 U.S. at 115), it creates no obligation to provide PUA benefits directly to individuals living in states that lack active agreements to administer PUA benefits. The plain language of § 9021(b) does not create a mandatory payment obligation between the Secretary and "any covered individual" because § 9021(f)—Agreements with States—is clear: "The Secretary shall provide the assistance authorized under subsection (b) through agreements with States." 15 U.S.C. § 9021(f)(1). When subsections (b) and (f) are read together, it is difficult to ignore § 9021(f)(1)'s clear instruction. Subsection (f) expressly refers to subsection (b) and specifies that the mandate in subsection (b) requires state participation. The assistance mandated by subsection (b) "shall" be provided "through agreements with States." *Id.* Given this express reference to subsection (b), we see no merit to Plaintiffs' contention that subsection (f) is an "ancillary procedural provision[]" that "do[es] not limit the core substantive obligations of [the] statute." Appellants' Br. 26. It is the opposite. Subsection (f) also provides a core substantive obligation—agreements with the states.

The entirety of § 9021(f) supports an interpretation where the states play a central role in administering the PUA benefits. For instance, beyond subsection (f)(1), § 9021(f)(2)—Payments to States—authorizes the Secretary to make payments, i.e., the funds for unemployment benefit assistance, only to states. *See* 15 U.S.C. § 9021(f)(2) ("There shall be paid to each State which has entered into an agreement under this subsection . . . ."). And § 9021(f)(3)—Terms of Payments—provides that the payments to states may be made "either in advance or by way of reimbursement." *Id.* § 9021(f)(3). We agree with the Government that had Congress meant to authorize payments directly to individuals, it "knew how to say so." *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 216 (2018). For example, when Congress intended an unemployment program to be administered by the Federal Government, it has made that intention clear. *See, e.g.*, 5 U.S.C. § 8503(a) (Unemployment Compensation for Federal Employees).

Subsections 9021(a), (c), (d), (g), and (h) also contain language that suggests an agreement with the states is required to administer PUA benefits to covered individuals. The PUA statute expressly refers to state involvement and relies on existing state infrastructure to administer PUA benefits. Under § 9021(a)(3)(A)(iii), a "covered individual" must provide documentation of eligibility to "the State Agency." 15 U.S.C. § 9021(a)(3)(A)(iii). Under § 9021(c)—which § 9021(b) is subject to—"[a]s a condition of continued eligibility for assistance under this section," a covered individual must submit "a recertification to the State for each week after the individual's 1st week of eligibility that certifies that the individual remains" eligible for the program. *Id.* § 9021(c)(6). Subsection (c) also indicates that "the State agency" is responsible for the "determination or redetermination regarding the rights to pandemic unemployment assistance," *id.* § 9021(c)(5)(A), and that "the applicable State" will handle "[a]ll levels of appeal" regarding those determinations, *id.* § 9021(c)(5)(B). Further,

should a covered individual receive an overpayment, "the State shall require such individuals to repay the amounts of such pandemic unemployment assistance to the State agency," subject to limited waiver authority. *Id.* § 9021(d)(4).

Under § 9021(g), "[f]unds in the extended unemployment compensation account . . . shall be used to make payments to States pursuant to subsection (f)(2)(A)." *Id.* § 9021(g)(1)(A); *see also id.* § 9021(g)(2)(A). And under § 9021(h), Congress incorporated 20 C.F.R. § 625, which relates to DUA under the Stafford Act. Under those regulations, disaster unemployment assistance "is payable to an individual only by an applicable State" and "[o]nly pursuant to an Agreement entered into pursuant to the Act and this part." 20 C.F.R. § 625.12(b)(1); *accord id.* § 625.4(b) (assistance is available only if "[t]he applicable State for the individual has entered into an Agreement which is in effect with respect to that week"). We agree with the district court that "in the absence of an agreement between the State of Texas and the Secretary, the regulations support that Plaintiffs are not eligible to receive PUA payments" because "the DUA regulations that permit the payment of DUA benefits only where the applicable state has signed an agreement with the Secretary also apply to the PUA program." Appx 39. Thus, it is clear the statute indicates throughout that the pandemic unemployment assistance is to be provided through agreements with states—the only entities the Secretary is authorized to make payments to. *See* 15 U.S.C. § 9021(f)(1), (2).

II

Next, we turn to Plaintiffs' argument that "[§ 9021](h) does not explicitly or implicitly limit the unconditional mandate of [§ 9021](b)" because the DUA "regulation conflicts with the PUA statute and does not apply." Appellants' Br. 37; 15 U.S.C. § 9021(h) (applying the DUA regulations to PUA except "to the extent there is a conflict

between this section and part 625 of title 20"). To reach this conclusion, Plaintiffs contrast 20 C.F.R. § 625.4(b) with 15 U.S.C. § 9021(b). They argue that the DUA regulation and PUA statute conflict because the DUA regulation requires the "applicable State for the individual [to have] entered into an Agreement which is in effect with respect to that week [of unemployment]," 20 C.F.R. § 625.4(b), whereas the PUA statute requires the Secretary to provide benefits to "any covered individual," 15 U.S.C. § 9021(b), without reference to any state agreement. There is no such conflict.

To start, Plaintiffs' comparison of the DUA regulation and PUA statute is amiss. As discussed above, subsections 9021(b) and (f) must be read together, and when read together, they establish that the "Secretary shall provide the assistance authorized under subsection (b) through agreements with States." 15 U.S.C. § 9021(f)(1). This is like the language in the Stafford Act. *See* 42 U.S.C. § 5177(a) ("The President is directed to provide such assistance through agreements with States . . . ."). And this language is consistent with the DUA regulation. *See* 20 C.F.R. § 625.4(b) ("An individual shall be eligible to receive a payment of DUA . . . if: . . . (b) The applicable State for the individual has entered into an Agreement . . . ."). Thus, there is no conflict, and the DUA regulations are applicable to the PUA statute. It follows, as the Federal Government correctly notes, "that payments by the United States may be made only to states, and that only states may make payments to individuals." Appellee's Br. 29.

## III

Last, we address Plaintiffs' statutory context argument—that Congress differentiated PUA from four related CARES Act programs in that PUA, unlike the other CARES Act programs, generally does not *require* agreements with states. Plaintiffs urge us to "give effect to the distinctive language Congress used to create PUA" because

where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Appellants' Br. 20 (quoting *Salinas v. U.S. R.R. Ret. Bd.*, 592 U.S. 188, 196–97 (2021)). Plaintiffs assert that PUA differs in "three critical ways" from other CARES Act programs. None, however, supports the reading that Plaintiffs insist on: "that the Secretary's obligation to provide PUA is not contingent on state participation." Appellants' Br. 21.

First, Plaintiffs contend "PUA is the only program not expressly subject to each state's 'desire[]' to participate." Appellants' Br. 21. Plaintiffs note that, unlike the PUA statute, other CARES Act programs "expressly provide that states may 'terminate' such participation at their discretion." Appellants' Br. 20–21 (citing 15 U.S.C. §§ 9023(a) & (b), 9024(a), 9025(a), 9027(a)). But this distinction overlooks § 9021(h), which incorporates the DUA regulation under the Stafford Act that contemplates termination of any agreement. *See* 20 C.F.R. § 625.12(b)(1) (authorizing payment by an applicable state "[o]nly . . . with respect to weeks in which the Agreement is in effect").

Second, Plaintiffs assert "PUA is the only program that directly charges the Secretary with providing assistance to 'individual[s].'" Appellants' Br. 21 (citing 15 U.S.C. § 9021(b)). Whereas, in Plaintiffs' view, "other programs only require the Federal Government to reimburse states for payments voluntarily made by those states." Appellants' Br. 21–22 (citing 15 U.S.C. §§ 9023(d)(1)(A) (requiring that the Federal Government "shall . . . pa[y] to each State" the amount of increased benefits), 9025(c)(1) (same), 9024(c)(1) (same), 9027(c)(1) (same)). However, as we note above, the PUA statute does not direct the Secretary to make payments directly to individuals; it provides payments "shall" be made "to each State which has entered into an agreement under this subsection." 15 U.S.C. § 9021(f)(2). Further, contrary to Plaintiffs' assertion, the

other CARES Act statutes contain similar language to the PUA statute with respect to "Payments to States." *Compare id.* § 9023(d), *with id.* § 9021(f)(2). *See also id.* §§ 9023(d), 9024(c), 9025(c), 9027(c). And like PUA, the other CARES Act statutes are structured such that funds flow from the Secretary to the states, which in turn provide PUA benefits to qualified individuals. *See, e.g.*, *id.* § 9023(d).

Third, Plaintiffs argue that "PUA is the only program that sets forth its own Congressionally-determined eligibility criteria through its definition of 'covered individual' in subsection (a)." Appellants' Br. 22. To Plaintiffs, this is unlike "the four other CARES Act programs," where eligibility is set by the states and each program "enhance[s] benefits for existing state unemployment programs." Appellants' Br. 22. PUA eligibility "is available to anyone who is unable to work due to Covid-19 and is not eligible for regular unemployment compensation." Appellants' Br. 22. *Compare* 15 U.S.C. §§ 9023(b)(1), 9024(c)(1)(A), 9025(a)(2), and 9027(b)(1), *with id.* § 9021(a)(3). But this distinction misses the mark because it does not address the separate question before us—whether the Secretary had an obligation to pay PUA benefits to individuals without state participation. It is true that § 9021(a) sets forth eligibility criteria for PUA benefits, but eligibility criteria bear no relation to the Secretary's purported obligation to provide PUA benefits. As such, we afford this distinction little weight and fail to see how it supports Plaintiffs' view that the Secretary's obligation to provide PUA is not contingent on state participation.

## CONCLUSION

We have considered Plaintiffs' remaining arguments and find them unpersuasive. For the reasons above, we affirm the district court's decision granting the Federal Government's motion to dismiss for failure to state a claim.

**AFFIRMED**